**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL WILKINS and KENNETH MILLS, on behalf of himself and others similarly situated, | |
| Plaintiff, | No. 1:14-cv-190 |
| v. | |
| HSBC BANK NEVADA, N.A. and HSBC CARD SERVICES, INC., | |
| Defendants. | |

**PLAINTIFFS' AMENDED MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF THE FACTS ................................................................ 2

    A. Procedural Background.................................................................... 2

        1. The *Mills* Action .............................................................. 2

        2. The *Mills* Classwide Discovery ...................................... 2

        3. The *Wilkins* Action ........................................................... 4

        4. The Dismissal of *Mills* and the Amended Complaint in *Wilkins*........................................................................... 4

        5. The Parties' Mediation..................................................... 5

    B. The Proposed Settlement ................................................................ 5

        1. The Settlement Class......................................................... 5

        2. Monetary Relief for Settlement Class Members............................ 6

        3. *Cy Pres* Distributions ...................................................... 7

        4. Class Release .................................................................... 7

        5. Class Representative Service Award ............................... 7

        6. Attorneys' Fees and Costs ................................................ 8

        7. Administration and Notice ................................................ 8

III. ARGUMENT................................................................................................ 9

    A. The Settlement Approval Process................................................... 9

    B. The Settlement is Within the "Range of Reasonableness" for Preliminary Approval................................................................... 12

        1. The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits............................................... 12

            a. The Monetary Amount offered in Settlement................. 12

            b. The Strength of Plaintiffs' Case...................................... 13

        2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive ................................................................. 16

        3. There is Currently No Opposition to the Settlement .................. 16

        4. Class Counsel Strongly Endorse the Settlement.......................... 16

        5. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval................................. 17

    C. Provisional Certification of the Settlement Class is Appropriate ........... 17

        1. The Rule 23(a) Requirements are Satisfied ................... 18

        2. The Rule 23(b)(3) Requirements are Satisfied ............................ 19

**TABLE OF CONTENTS**
(continued)

**Page**

    D.    The Proposed Notice Program is the Best Notice Practicable ................ 20

IV.    CONCLUSION ................................................................................................. 21

## TABLE OF AUTHORITIES

**Page**

### CASES

*Adams v. AllianceOne Receivables Mgmt. Inc.,*
No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal.) ................................................................. 13

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ..................................... 15

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)................................................................................................................... 19

*American Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219 (N.D. Ill. July 26, 2011) ......................... 10, 11

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980), overruled
on other grounds by *Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ........................................................................................ 10, 11, 13

*Arthur v. Sallie Mae, Inc.,*
No. 10-cv-132413, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) ................ 14

*Chapman v. First Index, Inc.*,
No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556 (N.D. Ill. March 4, 2014) .............................. 14

*G.M. Sign, Inc. v. Brinks Manufacturing Company*,
No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084 (N.D. Ill. March 4, 2014) .......................... 15, 18

*G.M. Sign, Inc. v. Finish Thompson, Inc*.,
No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009)......................... 18, 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig*.,
270 F.R.D. 330 (N.D. Ill. 2010)................................................................................................ 12

*In re Mexico Money Transfer Litig.,*
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ..................................................................................... 17

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ............................................................................................. 10, 11

*Kessler v. Am. Resorts International's Holiday Network, Ltd*.,
Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450 (N.D. Ill. Nov. 14, 2007)......... 11

*Kramer v. Autobytel*,
No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012)......................... 13

*Malta v. Fed. Home Loan Mortg. Corp.,*
No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013)............................... 13

*McCabe v. Crawford & Co.,*
210 F.R.D. 631 (N.D. Ill. 2002)............................................................................................... 18

*McKinnie v. JP Morgan Chase Bank, N.A.,*
678 F. Supp. 2d 806 (E.D. Wis. 2009)...................................................................................... 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).................................................................................................................. 20

## **TABLE OF AUTHORITIES**
### **(continued)**

**Page**

*Murray v. New Cingular Wireless Servs.*,
    232 F.R.D. 295 (N.D. Ill. 2005)...........................................................................19

*Palmer v. Sprint Nextel Corp.*,
    No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash.) ..............................................13

*Parker v. Risk Mgmt. Alternatives, Inc.*,
    206 F.R.D. 211 (N.D. Ill. 2002)...........................................................................18

*Phillips Randolph Enters., LLC v. Rice Fields*,
    No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) .................15

*Redman v. Radioshack Corp.*,
    No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880 (N.D. Ill. Feb. 7, 2014)................11

*Sadowski v. Med1 Online, LLC*,
    No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 27, 2008) ..............19

*Savanna Group, Inc. v. Trynex, Inc.*,
    No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013)..................15

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ................................................................................12

### **STATUTES**

47 U.S.C. § 227(b)(1)(A)................................................................................................1

### **TREATISES**

4 *Newberg on Class Actions* (4th ed. 2002)
    § 11.25 ..................................................................................................................10

4 *Newberg on Class Actions*
    § 11.41 (4th ed. 2002) ..........................................................................................10

Manual for Compl. Lit.
    § 21.632 ..........................................................................................................12, 18

Manual for Compl. Lit.
    § 21.633 ................................................................................................................18

*Manual for Compl. Lit.*,
    § 21.312 ................................................................................................................20

*Manual for Complex Litigation* (Fourth) (2004)
    § 13.14 ..................................................................................................................12

*Manual for Complex Litigation* (Fourth) (2004)
    § 21.63 ..................................................................................................................10

### **REGULATIONS**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
    1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL
    65485 (F.C.C.) ......................................................................................................14

## I.      __INTRODUCTION__

Plaintiffs Michael Wilkins and Kenneth Mills ("Plaintiffs") respectfully move the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiffs and HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A. and HSBC Card Services Inc. (together, "HSBC"). The proposed Settlement would resolve all claims in the above-entitled action. Plaintiffs allege that HSBC called Plaintiffs and Class Members on their cell phones through the use of automatic telephone dialing systems or by using an artificial or prerecorded voice without Plaintiffs' or Class Members' prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).

The Settlement requires HSBC to pay $39,975,000 into a settlement fund ("Fund"). Eligible Class Members who file qualified claims will receive a *pro rata* cash payment from this Fund. No amount of the Fund will revert back to HSBC.

This action involves sharply opposing positions on many issues, including the following critical issue: The parties disagree on whether the TCPA allows prior express consent for calls to a cell phone to be given at any time after origination of a credit relationship. Plaintiffs assert, based on certain rulings from the Federal Communications Commission (the "FCC"), that consent may be given only at the time the line of credit was established. HSBC believes that Plaintiffs' construction of the rulings is incorrect. In HSBC's view, the FCC could not have intended this construction in the context of credit relationships that last for many years. HSBC instead believes that the FCC rulings state that prior express consent can be given at any point in time during a credit relationship.

Although Plaintiff Mills only recently joined this case with the filing of the First Amended Complaint on March 7, 2014, Plaintiff Mills and his counsel have extensively litigated this matter for over two years and have engaged in discovery and evaluation of Plaintiffs' claims. In fact, Plaintiff Mills' counsel had drafted a motion for class certification, but refrained from filing it only so that the parties could explore the possibility of settlement in a mediation. The parties participated in a formal mediation session before the Honorable Edward A. Infante (Ret.)

of JAMS.  The Settlement came about only after Judge Infante made a mediator's proposal, which the parties carefully considered and accepted.

With this motion, Plaintiffs seek preliminary approval of the Settlement and provisional certification of a nationwide class for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard.  The proposed Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law.

## II.    STATEMENT OF THE FACTS

### A.    Procedural Background

#### 1.    The *Mills* Action

On July 30, 2012, Plaintiff Kenneth Mills filed a class action complaint against HSBC in the United States District Court, Northern District of California, Case No. 12-cv-04010-JST. Mr. Mills alleged that HSBC made several prerecorded calls using an automatic dialing system to his cell phone.  *Id.*, Dkt. No. 1, ¶ 19.  Plaintiff Mills further alleged that he did not provide his cell phone number to HSBC on his credit card application, or otherwise provide HSBC with consent to make the calls.  *Id.*, Dkt. No. 1, ¶¶ 14, 25.

#### 2.    The *Mills* Classwide Discovery

The parties have engaged in discovery and resolved a series of disputes through motion practice and stipulation following extensive meet-and-confer efforts.  On January 25, 2013, Plaintiff Mills served first sets of requests for production of documents and interrogatories.  This classwide discovery sought the following information: (1) HSBC's policies and practices for making autodialed and/or prerecorded calls to cell phones, including how HSBC obtains consent to make such calls; (2) call data that would reflect the identities of persons to whom HSBC made autodialed and/or prerecorded calls to cell phones; (3) data showing whether HSBC obtained consent to make the calls to cell phones; and (4) information sought to discern whether HSBC "knowingly" or "willfully" violated the TCPA.  The parties subsequently engaged in hard-fought

- 2 -

meet-and-confers regarding the discovery, but came to an impasse.[1]

On June 6, 2013, Plaintiff Mills moved to compel discovery through the joint discovery dispute letter process required by the *Mills* court. Magistrate Judge Joseph P. Spero required lead counsel for the parties to meet and confer in person in his chambers to resolve their disputes. Only after that meet and confer session did the parties reach an agreement for the production of classwide discovery responsive to each of Plaintiff Mills' requests. Following this lengthy process, HSBC served supplemental responses to interrogatories and produced thousands of pages of documents.[2]

Discovery efforts were complicated by the fact that, as of May 1, 2012, the credit card portfolio at issue, along with the underlying infrastructure, was sold in its entirety to non-party Capital One Financial Corporation ("Capital One"). Because HSBC did not possess data and documents (or access to employees) that resided with Capital One after the sale, retrieving responsive documents from Capital One required additional time. The parties agreed to extend the class certification deadline to November 8, 2013, to permit full production.[3]

On October 24, 2013—just two weeks before the class certification deadline—the parties agreed to mediate this lawsuit before the Honorable Edward A. Infante (Ret.) of JAMS. Judge Infante has successfully helped resolve several proposed TCPA class actions involving Plaintiffs' counsel and Defendants' counsel. At the time the parties agreed to mediation, Plaintiff Mills' counsel had already drafted a motion for class certification.[4]

Prior to the parties' mediation, HSBC provided call data showing the number of unique cell phone numbers HSBC called during the class period. On November 15, 2013, Plaintiff served interrogatories aimed at confirming the number of Class Members and determining the number of Class Members for whom HSBC possesses contact information. Plaintiffs also took a

---

[1] Declaration of Jonathan D. Selbin in Support of Amended Motion for Preliminary Approval of Settlement ("Selbin Decl.") ¶ 11.

[2] *Id.*, ¶ 12.

[3] *Id.*, ¶ 13.

[4] Selbin Decl., ¶ 14; Declaration of Honorable Edward A. Infante (Ret.) in Support of Class Action Settlement ("Infante Decl."), ¶¶ 2-4.

30(b)(6) deposition confirming the information provided in the interrogatories on June 3, 2014.[5]

### 3.  The *Wilkins* Action

On January 10, 2014, Plaintiff Michael Wilkins filed the above-entitled action against HSBC.  Like Plaintiff Mills, Plaintiff Wilkins alleged that HSBC made several prerecorded calls using an automatic dialing system to his cell phone.  Dkt. No. 1, ¶¶ 16-17.  Plaintiff Wilkins further alleged that he did not provide his cell phone number to HSBC on his credit card application, or otherwise provide HSBC with consent to make the calls.  Dkt. No. 1, ¶¶ 24.

### 4.  The Dismissal of *Mills* and the Amended Complaint in *Wilkins*

To permit mediation, the *Mills* court extended the class certification deadline to March 14, 2014, but warned the parties that it would be "very unlikely to continue that date."  *Mills*, Dkt. No. 71.  Two months after that order, the *Wilkins* case was filed and assigned to Your Honor.  At that time, a similar TCPA action against Capital One was (and is currently) pending before Your Honor, entitled *In re Capital One Telephone Consumer Protection Act Litigation,* Master Dkt. No. 12-cv-10064, MDL No. 2416 (N.D. Ill.) (Holderman, J.) ("*Capital One* Action").  Because Capital One possesses all of the data relevant to this action, and because certain additional data necessary to confirm the adequacy of the settlement resided with Capital One and could not be accessed prior to the class certification deadline set in the *Mills* action, on March 6, 2014, Plaintiff Mills voluntarily dismissed his case pending in the Northern District of California.  *Mills*, Dkt. No. 73.  The next day, on March 7, 2014, an Amended Complaint was filed in this action adding Plaintiff Mills as a class representative.  Dkt. No. 27.  Prior to Plaintiff Mills' dismissal, the parties agreed that all discovery exchanged in the *Mills* action could be used in this action.  The parties also entered into a tolling agreement under which HSBC agreed to waive any statute of limitations defense to any claims stemming from any calls placed to Plaintiffs or any putative class members on or after May 24, 2008.[6]

---

[5] Selbin Decl., ¶ 15.
[6] *Id.*, ¶¶ 16-17.

### 5.    The Parties' Mediation

The parties participated in a full-day, formal mediation session before Judge Infante on January 14, 2014.  Prior to the mediation, the parties submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the strengths of their cases.  The parties discussed their relative views of the law and the facts and potential relief for the proposed Class.  Counsel exchanged a series of counterproposals on key aspects of the Settlement, including monetary relief for the Class, notice to the Class and the meaning and interpretation of the eligibility requirements.  At all times, the parties' settlement negotiations were highly adversarial, non-collusive, and at arm's length.  The parties agreed to a Settlement only after the January 14, 2014 mediation concluded and Judge Infante made a mediator's proposal.[7]

HSBC has provided Class Counsel with confirmatory discovery, including a 30(b)(6) deposition, to confirm the material information provided to Class Counsel during settlement negotiations, to confirm the class size, and to ensure compliance with the terms of the settlement.  This discovery was designed to ensure that the terms of the Settlement are fair, reasonable, and adequate.[8]

The Settlement Agreement is a result of these arms-length negotiations and investigative efforts.

### B.    The Proposed Settlement

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as Exhibit A.[9]  The following summarizes the Agreement's terms:

### 1.    The Settlement Class

The Settlement Class is defined as follows:

> All persons within the United States to whom, on or after May 31, 2008 through May 1, 2012, a non-emergency telephone call was

---

[7] Selbin Decl., ¶¶ 18-20; Infante Decl., ¶¶ 3-8.

[8] Selbin Decl., ¶ 21.

[9] Class Counsel are aware of, and took to heart, Your Honor's suggested changes to the proposed preliminary settlement approval order made during the June 17, 2014 hearing in the *Capital One* Action.  The parties have now modified the terms of the settlement agreement in this action to be consistent with Your Honor's guidance.

> attempted by defendant HSBC Card Services Inc., or any other entity on behalf of defendant HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A., to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice. Excluded from the Settlement Class are HSBC and any affiliate or subsidiary of HSBC, along with any employees thereof, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt out of the Settlement Class.

Agreement § II.X. HSBC's responses to the confirmatory discovery show that HSBC made call attempts to an estimated 10,191,936 unique cell phone numbers.[10]

## 2. <u>Monetary Relief for Settlement Class Members</u>[11]

The Settlement requires HSBC to create a Settlement Fund of $39,975,000. Agreement §§ II.W, III.C. Out of this Fund, eligible Settlement Class Members who file a qualified claim will receive a Cash Award in the form of a cash payment. Agreement § III.F. The amount of each Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims. *Id.* No amount of the Settlement Fund will revert to HSBC. Agreement § III.C. While it is not possible to predict the precise amount of the Cash Awards until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, estimate awards in the range of $20 to $40 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration. Checks for Cash Awards will be valid for 180 days from the date of the check. Agreement § III.F.5.

In order to exercise the right to obtain the relief outlined above, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Settlement Website, by telephone, or by mail. *Id.* Class Members will have 90 days following the dissemination of Class Notice—*i.e.* 105 days from the Preliminary Approval Order—to submit their claim forms. Agreement §§ II.D. Class Members who wish to opt-out of or object to the Settlement will have 60 days following the dissemination of Class Notice to do so.

---

[10] Selbin Decl., ¶ 22.

[11] Because HSBC ceased its calling practices entirely when it sold the credit card portfolio at issue to non-party Capital One, the Settlement does not provide for prospective relief.

Agreement §§ III.L.1; III.M.2.

In the event that the combined amounts of any settlement payment checks to Class Members that remain uncashed for more than 180 days after the date on the checks exceed $50,000, a second *pro rata* distribution will be made to all Class Members who made valid and timely claims.  Agreement § III.G.

### 3. *Cy Pres* Distributions

In the event that the combined amounts of any settlement payment checks to Class Members that remain uncashed for more than 180 days is equal or less than $50,000, the money will be distributed *cy pres* to the Equal Justice Works ("EJW") to fund fellowships designed to protect consumers against unfair debt collection practices.  Agreement § III.F.5, III.G.  None of the attorneys among Class Counsel have any relationship with EJW.[12]  If, for any reason, the Parties or the Court determine that EJW is not an appropriate *cy pres* recipient, the Parties shall agree on a replacement recipient of such monies, subject to Court approval.  Agreement § III.G.

### 4. Class Release

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case.  Specifically, they will release all claims "that arise out of or relate" to the "use of an 'automatic telephone dialing system' or an 'artificial or prerecorded voice' to make 'calls' to a cellular telephone." Agreement § III.R.

### 5. Class Representative Service Award

Prior to the Final Approval hearing, the Class Representatives will ask the Court to award them service awards for the time and effort they have personally invested in this Action.  As part of the Settlement, HSBC agrees not to object to such incentive payments to be paid to the Plaintiffs from the Settlement Fund provided they do not exceed $10,000 in the aggregate or $5,000 for each Class Representative, subject to Court approval.  Agreement § III.H.

---

[12] Selbin Decl., ¶ 24.

6. **Attorneys' Fees and Costs**

Also prior to the Final Approval hearing, Class Counsel will apply to the Court for an award of attorneys' fees and costs. HSBC will not contest Class Counsel's application to this Court for payment of the costs incurred by Class Counsel in litigating this action, or attorneys' fees of not more than 30 percent of the Settlement Fund. Agreement § III.I. As will be addressed in Class Counsel's motion for attorneys' fees, Seventh Circuit courts commonly award higher percentages of settlement common funds as attorneys' fees, and it is appropriate to compensate Class Counsel in this amount for the work they have performed in procuring a settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *Id*.

7. **Administration and Notice**

All costs of notice and claims administration will be paid from the Settlement Fund. Agreement § II.Z. The parties have agreed that Garden City Group will be the Claims Administrator, subject to approval by the Court. Agreement § II.E. The Claims Administrator will be responsible for the following duties: (1) issuing Class Notice and claim forms; (2) setting up and maintaining the settlement website and toll-free number; (3) responding to Class Member inquiries regarding the claims administration process; (4) approving or rejecting claims; and (5) calculating and issuing settlement payments. Agreement §§ II.AA, III.F, III.K, III.P. HSBC has agreed to cooperate with the Claims Administrator to ensure that it has all of the information it needs to perform these tasks. Agreement § III.P.

Within fifteen (15) days of entry of the Preliminary Approval Order, the Claims Administrator will issue the Class Notice (Exhibit B to the Agreement) via mail or email to all Class Members for whom HSBC possesses contact information. Agreement § III.K. Notice will be delivered by mail for all Class Members whose emails are returned as undeliverable.

Agreement § III.K.3. Skip tracing will performed for all returned mail. *Id.* The confirmatory discovery to date shows that HSBC has approximately 8,346,748 unique mailing addresses and 7,577,922 unique email address for the approximately 10,191,936 Class Members.[13] Thus, direct notice via mail or email will be provided to approximately 77-78% of Class Members, assuming a 4-5% undeliverable rate.

In addition, the Claims Administrator will conduct the Court-approved publication notice program. Agreement § III.K.4. The Claims Administrator will also establish and maintain a Settlement Website. Agreement § III.K.5. The Settlement Website will provide for online submission of claims and will also include general information such as the Settlement Agreement; the Website Notice; the Preliminary Approval Order; a downloadable Claim Form for anyone wanting to print a hard copy of and mail in the Claim Form; and, when filed, the Motion for Attorneys' Fees and the Final Approval Order. Agreement § II.AA.

The Claims Administrator will calculate the proportionate recoveries of qualified claimants and issue checks to Class Members who submitted valid and timely claims within 30 days after entry of final judgment approving the settlement and the appeals period has run. Agreement § III.F.5.

## III. ARGUMENT

### A. The Settlement Approval Process

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, 'there is an overriding public interest in favor of settlement.' Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

---

[13] Selbin Decl., ¶ 22.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at \*32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary

approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval stage. *See, e.g., American Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed "a more summary version" of the final fairness inquiry at the preliminary approval stage); *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014) (citing *Isby*, 75 F.3d at 1199). In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of this Settlement will allow all Class Members to receive

notice of the proposed Settlement's terms and the date and time of the final Settlement approval hearing, at which Class Members may voice approval of or opposition to the Settlement, and at which the parties and Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at § 13.14, § 21.632.

**B.      The Settlement is Within the "Range of Reasonableness" for Preliminary Approval**

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

**1.      The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

**a.      The Monetary Amount offered in Settlement**

The Settlement requires HSBC to pay $39,975,000 into a Settlement Fund, out of which all eligible Class Members will receive their *pro rata* share of cash payments. The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to Class Members—no amount of the Settlement Fund will return to HSBC. Thus, the Settlement is good result for Class Members, particularly because TCPA damages are purely statutory damages in that Class Members have not suffered any out-of-pocket losses or other economic harm.

Class Counsel acknowledge that the $39,975,000 fund does not constitute the full measure of statutory damages potentially available to the Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like

settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after arm's length negotiations presided by an experienced mediator and former judge, and via a mediator's proposal made after the mediation had concluded. Further, the Settlement compares favorably to other TCPA class actions settlements. Indeed, courts have approved other TCPA class action settlements involving similarly large punitive classes that achieved much smaller *pro rata* monetary recoveries.[14] Moreover, as discussed further below, aggregate statutory awards have been viewed with skepticism, particularly where, as here, class members incurred zero actual damages or out-of-pocket losses. The key here is that the Settlement provides class members with real monetary relief, despite the fact that this is a purely statutory damages case in which class members incurred nominal economic damages or whose actual damages (such as stemming from the invasion of their privacy) are difficult or impossible to quantify.[15]

### b. The Strength of Plaintiffs' Case

Plaintiffs continue to believe that their claims against HSBC have merit and that they could make a compelling case if their claims were tried. Nevertheless, Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

---

[14] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal.) (attached as Exhibits B & C to Selbin Decl.) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash.) (attached as Exhibits D & E to Selbin Decl.) (approving $5.5 million settlement to benefit 18.1 million class members).

[15] To the extent the Court determines that it would like additional information regarding the value of the relief provided, Class Counsel will provide such information prior to final approval.

First, the Parties have competing interpretations of what constitutes "prior express consent" under the TCPA based on the FCC's January 4, 2008 declaratory ruling, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter "Declaratory Ruling"). The Declaratory Ruling is the FCC's official interpretation of the governing provisions of the TCPA. The FCC's Declaratory Ruling addresses the meaning of "prior express consent" and states that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Plaintiffs maintain that Paragraph 10 requires that the cell phone number be "provided during the transaction that resulted in the debt owed," *i.e.* during the "origination" of the credit or banking relationship. HSBC, however, interprets the term "transaction" broadly to mean any time during the multi-year life of the relationship. Based on this interpretation, HSBC maintains that some or all of the Class Members gave it prior express consent to contact them at their cell phone numbers. If the Court found that the FCC's Declaratory Ruling and/or the TCPA permits "prior express consent" to be given: (1) any time after origination on documents such as correspondence, updated information forms, forbearance requests, and the like, and/or (2) verbally, the amount of recoverable damages could be reduced significantly or eliminated altogether. *See, e.g., Arthur v. Sallie Mae, Inc.,* No. 10-cv-132413, 2012 U.S. Dist. LEXIS 132413, at *4 (W.D. Wash. Sept. 17, 2012) (granting final approval of TCPA settlement "in part because of the novelty of central issues").

Second, while Plaintiffs continue to believe that class certification would be achievable, HSBC consistently argued that class certification would be inappropriate due to the question of whether Class Members consented to the calls at issue. If the Court were to accept HSBC's interpretation of "prior express consent" under the statute, identifying which class members consented and in what manner could be difficult. And, "[c]ourts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability

grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc*., No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing cases). For example, in *Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *49 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any particular class member consented to the faxes at issue, whereas in *G.M. Sign, Inc. v. Brinks Manufacturing Company*, No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084, at *7-10 (N.D. Ill. March 4, 2014), the court declined to certify a class, finding that the defendant offered evidence illustrating that consent could not be shown with common proof. If HSBC were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiffs to pursue their individual claims. Indeed, Plaintiffs were only two weeks away from filing a class certification brief at the time they agreed to mediation.

Third, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there is a risk of losing a jury trial. And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal.

The Settlement provides substantial relief to Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Class Members would face in litigation.

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in extensive discovery efforts, continued litigation would involve significant motions practice, including Plaintiffs' motion for class certification. In addition, HSBC might bring a motion for summary judgment. The parties might also engage experts to analyze HBSC's and its vendors' call data. It would likely be more than a year before the case went to trial. And, any judgment in favor of Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. There is Currently No Opposition to the Settlement

All parties favor settlement. But because notice has not yet been sent to the class, this factor cannot be fully evaluated prior to the final fairness hearing.

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiffs strongly endorse this Settlement.[16] Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases);[17] (2) Class Counsel engaged in formal and informal discovery and exhaustively evaluated the claims in the context of settlement negotiations;[18] and (3) the Settlement was

---

[16] Selbin Decl. ¶ 25.

[17] *Id.*, ¶¶ 2-9.

[18] *Id.*, ¶¶ 10-15, 21.

reached at arm's length through negotiations by experienced counsel, after a full-day mediation before an experienced mediator and former judge, and after the parties accepted the mediator's proposal.[19]  *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator. . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  This factor therefore weighs in favor of preliminary approval.

> ### 5.     The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

The Settlement was informed by Class Counsel's thorough litigation and analysis of the factual and legal issues involved.  The parties agreed to mediation on the very eve of class certification.[20]  Through the mediation process, HSBC also voluntarily provided Class Counsel with, and Class Counsel reviewed, the call record data and other information necessary to confirm that the Settlement is fair, reasonable, and adequate.[21]

The parties participated in a full-day mediation on January 14, 2014 before the Honorable Edward A. Infante (Ret.) of JAMS.  Class Counsel continually advocated for a larger fund for the Class, while Defendants wanted a smaller fund.  The case settled only after the parties accepted a mediator's proposal.  Thereafter, the parties spent numerous hours negotiating the final settlement terms and drafting the Settlement Agreement.[22]

Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through the exchange of both informal and formal discovery and participated in lengthy arm's length negotiations.

> ### C.     Provisional Certification of the Settlement Class is Appropriate

---

[19] *Id.*, ¶¶ 18-20.

[20] *Id.,* ¶ 14.

[21] *Id.*, ¶ 15.

[22] Selbin Decl., ¶¶ 18-20; Infante Decl., ¶¶ 4-8.

For settlement purposes, Plaintiffs respectfully request that the Court provisionally certify the Class defined in the Agreement. Agreement § II.X. Provisional certification for settlement purposes permits notice of the proposed Settlement to issue to inform Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. HSBC waives its right to challenge class certification solely for purposes of this Settlement. For the reasons set forth below, provisional certification is appropriate under Federal Rule of Civil Procedure Rule 23.

### 1. The Rule 23(a) Requirements are Satisfied

The numerosity requirement of Rule 23(a) is satisfied because the Class combined consists of approximately 10,191,936 million people throughout the United States, and joinder of all such persons is impracticable. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on HSBC's common practice of using an automated dialing system to call Class Members on their cell phones. *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages."). The typicality requirement is satisfied because Plaintiffs' TCPA claims, which are based on HSBC's systematic use of automated calls to cell phones, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. The adequacy

of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at \*15-16. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See id.*

### 2. The Rule 23(b)(3) Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Settlement Class members in a single adjudication. Common issues predominate here because the claims of the class members arise from HSBC's alleged common practice of using an automated dialing system to contact consumers on their cell phones without their consent. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, at \*13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [] faxes.").

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). And, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 U.S. Dist. LEXIS 41766, at \*14 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'"). For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### D.     <u>The Proposed Notice Program is the Best Notice Practicable</u>

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice attached as Exhibits B-D to the Agreement satisfy all of the criteria above. The Notice Plan provides for direct, individual notice via either email or mail (Agreement §§ III.K.2, III.K.3) to approximately 77-78% of Class Members, assuming a 4-5%

undeliverable rate.[23] And, skip tracing will be performed for returned mail notices. Agreement § III.K.3. Also, notice will be provided to Class Members online through the Settlement Website. Agreement § III.K.5.

In addition, the parties have agreed to a Publication Notice program that extends the reach from 77-78% to 84-85% of Class Members.[24] This program includes the following: (1) an advertisement in *People* magazine; (2) an advertisement in *USA Today*; (3) and targeted internet banner advertisements with a link to the Settlement Website on various websites through the Xaxis online digital networks, creating an estimated 18,000,000 impressions.[25] In the process of agreeing to this plan, the parties solicited the advice of an expert to analyze the target audience of Class Members at whom this plan is directed. Using that analysis, the expert devised a program specifically targeted to Class Members. Because the resulting program is more precise, the proposed notice program will reach the same percentage of Class Members using fewer internet impressions than the program originally proposed by Plaintiffs.[26]

Because the proposed notice program includes direct and publication notice for a combined reach of 84-85%, it satisfies due process and is the best notice practicable here.

## IV.  **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court do the following: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiffs as class representatives; (3) appoint Class Counsel; and (4) name Garden City Group as the Settlement Administrator to administer the proposed Notice and Claims Program.

---

[23] Selbin Decl., ¶ 20; Amended Declaration of Lael Dowd Regarding Notice Program ("Dowd Decl."), ¶ 8.
[24] Selbin Decl., ¶ 23; Dowd Decl. ¶ 13.
[25] Selbin Decl., ¶ 23; Dowd Decl. ¶¶ 9-12.
[26] Selbin Decl., ¶ 23.

Dated: July 1, 2014

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Jonathan D. Selbin*
    Jonathan D. Selbin

Jonathan D. Selbin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hutchinson
Nicole D. Sugnet
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Matthew R. Wilson
Michael Joseph Boyle, Jr.
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, IL 60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Beth E. Terrell
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 40
Seattle, WA 98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiffs and the Proposed Class*

1182984.1

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement (the "Agreement" or the "Settlement") is entered into by and between Michael Wilkins and Kenneth Mills (together, "Plaintiffs"), for themselves and a Settlement Class (as defined below), and HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A. and HSBC Card Services Inc. (together, "HSBC"), in the action entitled Michael Wilkins and Kenneth Mills v. HSBC Bank Nevada, N.A. and HSBC Card Services Inc., United States District Court for the Northern District of Illinois (the "Court"), Case No. 14-cv-190 (the "Action").

### I.        RECITALS

The following recitals are material terms of this Agreement, and all defined terms used in the recitals shall have the meaning provided in Section II, below, except as otherwise defined in the Agreement.  This Agreement is made with reference to and in contemplation of the following facts and circumstances:

A.        The original Complaint in the Action was filed on January 10, 2014, and the Amended Complaint was filed on March 7, 2014.

B.        The Amended Complaint contains allegations, on behalf of Plaintiffs and an alleged class, that HSBC violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., by placing calls to cellular telephones through the use of an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the Plaintiffs and the putative class members.

C.        HSBC vigorously denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability and denies all material allegations in the Amended Complaint.  HSBC desires to settle the Action on the terms set forth herein solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing these proceedings.

D.        Plaintiffs and Class Counsel have investigated the facts and law underlying the claims asserted in the Action.  Class Counsel also have engaged in numerous discussions with HSBC regarding those claims and conducted confirmatory discovery.

E.      This Agreement resulted from and is the product of a mediation, meetings and negotiation.  Class Counsel and HSBC's Counsel have engaged in good faith, arm's length negotiations concerning the possible settlement of the Action including, without limitation, by participating in mediation before the Honorable Edward A. Infante (Ret.) of JAMS.  HSBC and the Plaintiffs submitted detailed mediation submissions to Judge Infante, setting forth their respective views as to the strengths of their cases.  The mediation and subsequent negotiations resulted in a settlement, as set forth in this Agreement.

F.      Based on the investigation, negotiation and confirmatory discovery described above and taking into account the sharply contested issues involved, the risks, uncertainty and cost of future prosecution of the Action, and the substantial benefits to be received pursuant to this Agreement, Class Counsel has concluded that a settlement with HSBC and the Released Parties on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class.

G.      The parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence against any party except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any party to this Agreement.  It is the parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

H.      This Agreement is intended by the parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

I.      This Agreement is subject to preliminary and final approval by the Court, as set forth herein.

J.      The parties agree that the Action was resolved in good faith, following arm's length bargaining presided over by a neutral and highly experienced mediator, and that the settlement reflected herein confers substantial benefits upon the parties and the Settlement Class.

2

II.     DEFINITIONS

A.      "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. §
1715(b).

B.      "Cash Award" means a cash payment to an Eligible Settlement Class Member,
pursuant to Section III.F.

C.      "Claim Form" means the claim form to be submitted by Settlement Class
Members, subject to approval by the Court, substantially in the form attached hereto as
Exhibit A.

D.      "Claim Period" means the period of time in which a Settlement Class Member
may submit a Claim Form, which must be properly completed so that a Settlement Class
Member is eligible to receive a Cash Award as part of the settlement.  The last day of the Claim
Period will be 90 days following the first date for dissemination of the Class Notice.

E.      "Claims Administrator" means the Garden City Group, Inc., subject to approval
by the Court.

F.      "Class Counsel" means Lieff Cabraser Heimann & Bernstein, LLP, Meyer Wilson
Co., LPA, Terrell Marshall Daudt & Willie PLLC, and Burke Law Offices, LLC.

G.      "Class Notice" means all types of notice that will be provided to the Settlement
Class pursuant to this Agreement, including E-mail Notice, Mail Notice, Website Notice,
Publication Notice and any additional notice that might be ordered by the Court.

H.      "Cy Pres Distribution" means monies that may be distributed from the Escrow
Account if any such monies remain in the Escrow Account after payment of Settlement Costs
and Cash Awards, pursuant to Section III.G.

I.      "Effective Date" means the date that is 5 days after the last of the following dates:
(1) the date of entry of the Final Approval Order; and (2) the date of final disposition of any
related appeals, and in the case of no appeal or review being filed, the date of expiration of the
applicable appellate period.

LA 51767168

J.      "Eligible Settlement Class Member" means a Settlement Class Member who timely submits a complete and accurate Claim Form to the Claims Administrator, pursuant to Section III.F.

K.      "E-mail Notice" means the notice that will be provided to certain persons in the Settlement Class pursuant to Section III.K.2, subject to approval by the Court, substantially in the form attached hereto as Exhibit B.  The E-mail Notice shall include Class Counsel's estimate that the amount of the Cash Award (while dependent upon the number of claims) may be within the range of $20 to $40.  The E-mail Notice shall direct recipients to the location of the Settlement Website and to the Toll-Free Settlement Hotline.

L.      "Escrow Account" means an interest-bearing account at Citibank, N.A. that will hold the Settlement Amount pending payment of Settlement Costs, Cash Awards and any Cy Pres Distribution.

M.      "FCC" means the Federal Communications Commission.

N.      "Final Approval Hearing" means the hearing at or after which the Court will make a final decision whether to approve the settlement set forth in this Agreement as fair, reasonable and adequate.

O.      "Final Approval Order" means the order to be submitted to the Court in connection with the Final Approval Hearing, substantially in the form attached hereto as Exhibit F.

P.      "HSBC's Counsel" means Stroock & Stroock & Lavan LLP.

Q.      "Mail Notice" means the notice that will be provided to certain persons in the Settlement Class pursuant to Section III.K.3, subject to approval by the Court, substantially in the form attached hereto as Exhibit B.  The Mail Notice shall include Class Counsel's estimate that the amount of the Cash Award (while dependent upon the number of claims) may be within the range of $20 to $40.  The Mail Notice shall direct recipients to the location of the Settlement Website and to the Toll-Free Settlement Hotline.

R.      "Preliminary Approval Hearing" means the hearing at or after which the Court will make a preliminary decision whether to approve the settlement set forth in this Agreement as fair, adequate and reasonable, and within the reasonable range of possible final approval.

S.      "Preliminary Approval Order" means the order to be submitted to the Court in connection with the Preliminary Approval Hearing, substantially in the form attached hereto as Exhibit E.

T.      "Publication Notice" means the notice of the settlement that will be published pursuant to Section III.K.4, subject to approval by the Court, substantially in the form attached hereto as Exhibit C.  The Publication Notice shall include Class Counsel's estimate that the amount of the Cash Award (while dependent upon the number of claims) may be within the range of $20 to $40.  The Publication Notice shall direct recipients to the location of the Settlement Website and to the Toll-Free Settlement Hotline.

U.      "Released Claims" means the claims released in Section III.R.

V.      "Released Parties" means the parties released in Section III.R.

W.      "Settlement Amount" means the total sum of $39,975,000 to be paid by HSBC in connection with the settlement pursuant to Section III.C.

X.      "Settlement Class" means all persons within the United States to whom, on or after May 31, 2008 through May 1, 2012, a non-emergency telephone call was attempted by defendant HSBC Card Services Inc., or any other entity on behalf of defendant HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A., to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.  Excluded from the Settlement Class are HSBC and any affiliate or subsidiary of HSBC, along with any employees thereof, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt out of the Settlement Class.

Y.      "Settlement Class Member" means a person in the Settlement Class who does not opt out pursuant to Section III.L.

Z.      "Settlement Costs" means:  (1) any award of attorneys' fees and costs to Class

Counsel approved by the Court; (2) any incentive awards to Plaintiffs approved by the Court;

(3) all costs of printing and providing notice to persons in the Settlement Class (including, but

not limited to, costs for E-mail Notice, Mail Notice, Publication Notice, Website Notice, the

Settlement Website, the Toll-Free Settlement Hotline and any additional notice that might be

ordered by the Court); (4) all costs of administering the settlement, including, but not limited to,

the cost of printing and mailing Cash Awards, Claim Forms, the cost of maintaining a designated

post office box for receiving Claim Forms, the costs of maintaining a webpage to process Claim

Forms, the costs of maintaining the Toll-Free Settlement Hotline, the costs (including anticipated

or projected costs) of administering the settlement through completion, including the distribution

of Cy Pres funds, if any; and/or (5) the fees, expenses and all other costs of the Claims

Administrator.

AA.     "Settlement Website" means the website that the Claims Administrator will

establish as soon as practicable following Preliminary Approval, but prior to the commencement

of any Class Notice, as a means for persons in the Settlement Class to obtain notice of and

information about the settlement, through and including hyperlinked access to this Agreement,

the full length form of notice (the "Website Notice," which will be subject to approval by the

Court, substantially in the form attached hereto as Exhibit D), Claim Form, the Preliminary

Approval Order and such other documents as Class Counsel and HSBC's Counsel agree to post

or that the Court orders posted on the website.  These documents shall remain on the Settlement

Website at least until the date of the Final Approval Hearing and through the end of the Claim

Period.  The URL of the Settlement Website shall be mutually agreed upon by Class Counsel and

HSBC's Counsel.  The Settlement Website shall not include any advertising, and shall not bear

or include the HSBC logo or trademarks.  Ownership of the Settlement Website URL shall be

transferred to HSBC within 10 days of the date on which operation of the Settlement Website

ceases.

6

BB.    "Toll-Free Settlement Hotline" means a toll-free telephone number that the Claims Administrator will establish and operate prior to the commencement of any Class Notice, as a means for persons in the Settlement Class to submit a Claim.  The Claims Administrator shall not respond to any substantive questions about the Agreement; instead, any such questions shall be directed to Class Counsel.  The Toll-Free Settlement Hotline shall be deactivated by the Claims Administrator at 5:00 p.m. Central Standard Time on the last date of the Claim Period.

### III.    TERMS OF SETTLEMENT

A.    <u>Conditional Certification Of Settlement Class</u>.  HSBC disputes that a litigation class would be manageable and further denies that a litigation class properly could be certified on the claims asserted in the Action.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, HSBC does not oppose the certification for <u>settlement purposes only</u> of the Settlement Class.  Preliminary certification of the Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor shall HSBC be precluded from challenging class certification in further proceedings in the Action or in any other action if the settlement is not finalized or finally approved.  If the settlement set forth in this Agreement is not finally approved by the Court for any reason whatsoever, the certification of the Settlement Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action or any other action.  No agreements made by or entered into by HSBC in connection with the settlement set forth in this Agreement may be used by Plaintiffs, any person in the Settlement Class or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other action.

B.    If the settlement set forth in this Agreement is not presented for approval, is not finalized for any reason, or does not become effective for any reason, the parties shall be returned to the status quo ante as of the time that the Action was initiated, for all litigation purposes, as if no settlement had been negotiated or entered into.  In addition, should this Agreement not be approved, finalized or not become effective for any reason, including HSBC's

right to terminate the Agreement pursuant to Section III.L.4, below, and regardless of fault, all monies paid by HSBC pursuant to Section III.C., below, but not yet spent, shall be refunded to HSBC with any and all accrued interest within 15 days of the event that prevents the Agreement from becoming effective.

        C.    <u>Settlement Consideration</u>. Pursuant to this Agreement, as full and complete consideration for the settlement, within fifteen (15) days following the Court's entry of the Preliminary Approval Order, HSBC will pay the Settlement Amount into the Escrow Account. HSBC shall not, under any circumstances, be obligated to pay any amounts in addition to the Settlement Amount in connection with this settlement. Also, except as otherwise provided herein, including in Section III.B., no portion of the Settlement Amount in the Escrow Account shall revert to HSBC.

        D.    <u>Payment Of Amounts From Escrow Account</u>. All Cash Awards, Settlement Costs and any Cy Pres Distribution shall be paid out of the Settlement Amount in the Escrow Account. The Settlement Amount in the Escrow Account shall first be reduced by the Settlement Costs prior to making any Cash Awards to Eligible Settlement Class Members pursuant to Section III.F.

        E.    <u>Authority To Withdraw Funds For Settlement Costs</u>. With the written consent of HSBC, Class Counsel shall have the authority to withdraw from the Escrow Account all funds necessary to pay: (1) the Settlement Costs; (2) Cash Awards; and (3) any Cy Pres Distribution.

        F.    <u>Claims For Cash Awards</u>.

        1.    <u>Cash Awards</u>. Cash Awards shall be made to Eligible Settlement Class Members on a claims-made basis only.

        2.    <u>Conditions For Claiming Cash Awards</u>. To make a claim for a Cash Award, a Settlement Class Member must submit to the Claims Administrator a valid and timely Claim Form. The Claim Form may be submitted to the Claims Administrator by mail to a designated post office box or via the Settlement Website. Settlement Class Members may also submit the information required on a Claim Form (as set forth below) verbally through the Toll-

8

Free Settlement Hotline.  The Claims Administrator will have no obligation to honor any Claim Form or information not submitted by mail to the designated post office box, via the Settlement Website or through the Toll-Free Settlement Hotline.

To be valid, the Claim Form must contain substantially all of the information set forth in Exhibit A hereto, including:  (i) the Settlement Class Member's full name; (ii) confirmation under penalty of perjury that, on or after May 31, 2008 through May 1, 2012, one or more non-emergency telephone calls from HSBC or an entity calling on its behalf was directed to the Settlement Class Member's cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice; (iii) for mailed Claim Forms, the Settlement Class Member's signature; (iv) for Claim Forms submitted via the Settlement Website, the Settlement Class Member's electronic signature; and (v) for information submitted via the Toll-Free Settlement Hotline, the Settlement Class Member's affirmation that the information provided is true and correct.  The parties hereby agree to ensure that the Claims Administrator is able to provide a record of a Settlement Class Member's affirmation for those Claims submitted via the Toll-Free Settlement Hotline.  Only one valid Claim Form will be honored per Settlement Class Member, regardless of the number of calls directed to the Settlement Class Member, the number of cellular telephone numbers the Settlement Class Member was called on and/or the number of accounts or extensions of credit held at any time.

3.  <u>Time To Submit A Claim For A Cash Award</u>.  In order to be deemed timely, Claim Forms and all required information must be submitted via the Settlement Website, the Toll-Free Settlement Hotline or by mail by the last date of the Claim Period, which will be specified in the Claim Form.  Claim Forms submitted by mail must be postmarked by that date. The Claims Administrator will have no obligation to honor any Claim Form or information submitted via the Settlement Website or the Toll-Free Settlement Hotline or postmarked after the end of the Claim Period, even if such Claim Form or information otherwise would be valid.  If a Settlement Class Member timely submits a Claim Form or information, but fails to fully and accurately complete it or provide the necessary information set forth in Section III.F.2, above,

9

the Claim Form will be invalid.  The Claims Administrator will send the Settlement Class Member notice of the defect in the Claim Form or information.  The Settlement Class Member shall be permitted to re-submit a new Claim Form or provide additional information but, to be valid, the new Claim Form and information must be completed fully and accurately and submitted to the Claims Administrator via the Settlement Website, the Toll-Free Settlement Hotline or by mail by the last date of the Claim Period.  Claim Forms re-submitted by mail must be postmarked by that date.

        4.      <u>Calculation of Cash Awards</u>.  Each Eligible Settlement Class Member will be entitled to receive a Cash Award.  The amount of the Cash Award shall be determined by dividing the amount of the Settlement Amount in the Escrow Account remaining following payment of all Settlement Costs by the number of Eligible Settlement Class Members.

        5.      <u>Distribution Of Cash Awards</u>.  Within 30 days after the Effective Date, Cash Awards shall be mailed by the Claims Administrator to Eligible Settlement Class Members. The Claims Administrator shall mail, by first class mail, a check to each Eligible Settlement Class Member.  No skip tracing or re-mailing of returned mail will be required.  Checks will be valid for 180 days from the date on the check.  The amounts of any checks that remain uncashed more than 180 days after the date on the check will be paid out as Cy Pres Distribution pursuant to Section III.G.

    G.      <u>Cy Pres</u>.

        1.      <u>Cy Pres Distribution</u>.  Any money equal to or less than $50,000  remaining in the Escrow Account after payment of the Settlement Costs and payment of Cash Awards to Eligible Settlement Class Members, including any amounts resulting from checks that remain uncashed more than 180 days after the date on the check, will comprise the Cy Pres Distribution. If $50,001 or more remains in the Escrow Account after payment of the Settlement Costs and payment of Cash Awards to Eligible Settlement Class Members, the remaining amount shall be distributed on a pro-rata basis to each Eligible Settlement Class Member who cashed the initial Cash Award.

10

2.      Timing and Selection Procedures.  The Cy Pres Distribution, if any, shall be made 365 days after the Effective Date.  Plaintiffs and HSBC agree that the recipient of the Cy Pres Distribution shall be Equal Justice Works ("EJW"), subject to approval by the Court.  If, for any reason, the parties determine that EJW is no longer an appropriate recipient, or the parties no longer agree that EJW is an appropriate recipient, or the Court determines that EJW is not or is no longer an appropriate recipient, the parties shall agree on a replacement recipient(s) of such monies, which must be a non-profit charitable organization or organizations, subject to Court approval.

H.      Incentive Awards.  HSBC will not object to incentive awards to Plaintiffs so long as they do not exceed $5,000 for each of them, subject to Court approval.  Such incentive awards shall be paid out of the Escrow Account within five (5) days of the Effective Date.  Court approval of the incentive awards, or their amount, will not be a condition of the settlement.  In addition, no interest will accrue on such amounts at any time.

I.      Attorneys' Fees And Costs.  Plaintiffs shall move the Court for an award of attorneys' fees and costs.  HSBC shall not object to such a motion so long as the amount requested is not more than $11,992,500, which is 30% of the Settlement Amount.  Class Counsel shall receive payment of the fees and costs awarded by the Court out of the Escrow Account by no later than the Effective Date.  Court approval of attorneys' fees and costs, or their amount, will not be a condition of the settlement.  In addition, no interest will accrue on such amounts at any time.

J.      Preliminary Approval.  Plaintiffs will move the Court for entry of the Preliminary Approval Order, which shall specifically include provisions that:  (1) preliminarily approve the settlement reflected herein as fair, adequate and reasonable, and within the reasonable range of possible final approval; (2) conditionally certify the Settlement Class for settlement purposes only and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only; (3) approve the form of Class Notice and find that the notice program set forth herein constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Settlement

11

Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (4) direct that notice be provided to the Settlement Class, in accordance with this Agreement, within 15 days following entry of the Preliminary Approval Order; (5) establish a procedure for Settlement Class Members to object to the settlement or exclude themselves from the Settlement Class, and set a date following entry of the Preliminary Approval Order, after which no one shall be allowed to object to the settlement or exclude himself or herself from the Settlement Class or seek to intervene in the Action; (6) approve the Claim Form and the claims submission process described herein; (7) pending final determination of whether the settlement should be approved, bar all persons in the Settlement Class, directly, on a representative basis or in any other capacity from commencing or prosecuting against any of the Released Parties any action, arbitration or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims; (8) pending final determination of whether the settlement should be approved, stay all proceedings in the Action, except those related to the effectuation of the settlement; and (9) schedule a Final Approval Hearing.

      K.    <u>Class Notice</u>.

      1.    <u>Timing of Class Notice</u>.  To facilitate the notice and claims administration process HSBC shall by no later than July 2, 2014, provide to the Claims Administrator, in an electronically searchable and readable format, a Notice Database which includes the names, last known email addresses, last known mailing addresses, and cellular telephone  numbers called for all known Class Members.  Notice shall be provided to the Settlement Class within 15 days following entry of the Preliminary Approval Order.

      2.    <u>E-mail Notice</u>.  Subject to approval by the Court, the Claims Administrator will provide E-mail Notice in the form attached hereto as Exhibit B to persons in the Settlement Class, to the extent their email addresses are reflected in reasonably available computerized account records maintained by HSBC in the ordinary course of business.

      3.    <u>Mail Notice</u>.  Subject to approval by the Court, to the extent the Claims Administrator is unable to provide notice via E-mail Notice, the Claims Administrator will

provide Mail Notice in the form attached hereto as Exhibit B to persons in the Settlement Class to the extent their mailing addresses are reflected in reasonably available computerized account records maintained by HSBC in the ordinary course of business. Skip tracing shall be performed by the Claims Administrator for all Mail Notice; all reasonable costs of such skip tracing will be considered Settlement Costs and be deducted from the Settlement Amount in the Escrow Account prior to payment of Cash Awards.

4. <u>Publication Notice</u>. Subject to approval by the Court, the Claims Administrator will publish a notice of the settlement, substantially in the form attached hereto as Exhibit C. For all Class Members for whom HSBC does not possess contact information, the Parties will consult with the Claims Administrator to design a publication notice program, which the Parties believe will fully satisfy the requirements of due process. The publication notice program is subject to agreement by the Parties and, provided an agreement is reached, will be submitted to the Court for approval before entry of the Preliminary Approval Order.

5. <u>Settlement Website</u>. The Claims Administrator will establish and maintain the Settlement Website. The Settlement Website shall contain a link to the Website Notice and provide for online submission of Claim Forms. The Settlement Website will become active after entry of the Preliminary Approval Order and shall remain active at least until the date of the Final Approval Hearing. The Claims Administrator also will provide a hard copy of the Website Notice to a person in the Settlement Class by mail or e-mail upon request.

6. <u>CAFA Notice</u>. HSBC shall be responsible for timely compliance with all CAFA notice requirements.

L. <u>Opt-Out Right/Termination</u>.

1. <u>Deadline</u>. Persons in the Settlement Class will possess the right to opt out by sending a written request containing all of the information described in Paragraph 2 of this Section III.L, below, to the Claims Administrator at a designated post office box. To be valid, opt out requests must be postmarked not later than 60 days following the date for dissemination of the Class Notice.

13

2. <u>Opt Out Requests</u>. Opt out requests must: (a) be signed; (b) include the full name, address, telephone number and account number(s) of the person(s) requesting exclusion (except that persons in the Settlement Class who do not currently have and have not previously had some banking, lending or other relationship with HSBC, shall not be required to include an account number); and (c) include the following statement: "I/we request to be excluded from the class settlement in <u>Wilkins v. HSBC Bank Nevada, N.A.</u>, N.D. Ill., Case No. 14-cv-190." No opt out request will be valid unless all of the information described above is included. For any person in the Settlement Class who has more than one account, the opt out request must specify each separate account. No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may exclude any other person in the Settlement Class from the Settlement Class.

3. <u>Delivery To Court</u>. The Claims Administrator will retain a copy of all opt out requests. Not later than 10 days before the Final Approval Hearing, the Claims Administrator shall file under seal with the Court a declaration that lists all of the opt-outs received.

4. <u>Cap On Opt-Outs</u>. If 500 or more persons in the Settlement Class opt out of the Settlement Class, then HSBC, in its sole discretion, will have the right to terminate the settlement and this Agreement. In the event that the settlement is terminated pursuant to this Paragraph, the parties will be returned to the status quo ante as if no settlement had been negotiated or entered into.

M. <u>Objections To The Settlement</u>.

1. <u>Right To Object</u>. A Settlement Class Member may appear at the Final Approval Hearing to argue that the proposed settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and/or the incentive awards to the Plaintiffs only if the Settlement Class Member complies with the requirements set forth below.

14

2.      Deadline.  In order to be heard, the Settlement Class Member must make any objection in writing and file it with the Court not later than 60 days following the date for dissemination of the Class Notice.  In order to be heard, the objection must also be mailed to each of the following, postmarked not later than the last day to file the objection:  (a) Class Counsel – Daniel M. Hutchinson, Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111; and (b) HSBC's Counsel – Lisa M. Simonetti, Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, CA 90067.

3.      Content Of Objection.  For an objection to be considered by the Court, the objection must set forth:

(a)      the name and case number of the Action;

(b)      the objector's full name, address and telephone number;

(c)      an explanation of the basis upon which the objector claims to be a Settlement Class Member;

(d)      all grounds for the objection, accompanied by any legal support for the objection known to the objector or his or her counsel;

(e)      the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection;

(f)      the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

(g)      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

(h)      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

(i)      the objector's signature (an attorney's signature is not sufficient).

N.      Confirmatory Discovery.  HSBC has provided confirmatory discovery in connection with this Agreement.  If approval of the settlement is denied, all confirmatory

15

discovery will be subject to Rule 408 of the Federal Rules of Evidence and will not be admissible for any litigation purpose.

      O.    <u>Final Approval</u>.  Following the provision of Class Notice and expiration of the time for submission of Claim Forms, opt outs and objections, Plaintiffs shall promptly request that the Court enter the Final Approval Order, which shall specifically include provisions that: (1) finally approve the settlement as fair, reasonable and adequate and in the best interests of the Settlement Class; (2) find that the Class Notice as given was the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (3) approve the Claim Form; (4) finally certify the Settlement Class; (5) confirm that Plaintiffs and the Settlement Class Members have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting or continuing any of the Released Claims against the Released Parties; and (6) dismiss the Action with prejudice, subject to the Court's retaining jurisdiction over the enforcement of the terms of this Agreement.

      P.    <u>Administration Of The Settlement</u>.  Subject to Court approval, the settlement administration process, including provision of Class Notice and calculation and distribution of Cash Awards, will be conducted by the Claims Administrator.  HSBC will reasonably cooperate in the Class Notice and administration process by providing the Claims Administrator, on a confidential basis, with access to the names, e-mail addresses and mailing addresses of persons in the Settlement Class (if available and as reflected in reasonably available computerized account records of HSBC maintained in the ordinary course of business) to the extent required to administer the settlement.

      Q.    <u>Dismissal</u>.  Upon entry of the Final Approval Order, the Action shall be dismissed with prejudice as to Plaintiffs and all Settlement Class Members.

      R.    <u>Releases</u>.  The Releases set forth in this Paragraph shall become effective on the Effective Date:

Plaintiffs and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and any authorized users of their accounts fully release and forever discharge HSBC, and each and all of its present, former and future direct and indirect parent companies, affiliates, subsidiaries, agents, independent contractors, successors, predecessors-in-interest, and all of their respective prior, current and future officers, directors, employees, attorneys, shareholders, agents, independent contractors, and assigns (collectively, the "Released Parties"), from any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of the Final Approval Order: (a) that arise out of or are related in any way to the use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" to make "calls" to a cellular telephone (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., relevant regulatory or administrative promulgations and case law, and expressly including voice and text messages) by or on behalf of any of the Released Parties including, but not limited to, claims under or for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and any other statutory or common law claim arising from the use of automatic telephone dialing systems or an artificial or prerecorded voice, including any claim under or for violation of federal or state unfair and deceptive practices statutes, violations of any federal or state debt collection practices acts (including but not limited to, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.), invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppel; or (b) that arise out of or relate in any way to the administration of the settlement (collectively, the "Released Claims").

1.      Without limiting the foregoing, the Released Claims specifically extend to claims that the Plaintiffs and the Settlement Class Members do not know or suspect to exist in their favor at the time that the Agreement, and the releases contained therein, becomes effective. This Paragraph constitutes a waiver of, without limitation as to any other applicable law, section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

2.      Plaintiffs and the Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.  In connection with such waivers and relinquishment, Plaintiffs and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the settlement, but that it is their intention to release fully, finally and forever all Released Claims with respect to the Released Parties, and in furtherance of such intention, the releases of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

S.      <u>Debt Obligations Unaffected By Agreement</u>.  The Agreement and any payment hereunder shall not affect debts owed by Plaintiffs or Settlement Class Members to HSBC and/or its affiliates, subsidiaries or assigns, and Plaintiffs and all Settlement Class Members will remain fully obligated on any and all such debts.

T.      <u>Stay/Bar Of Other Proceedings</u>.  All proceedings in the Action will be stayed following entry of the Preliminary Approval Order, except as may be necessary to implement the settlement or comply with the terms of the Agreement.  Pending determination of whether the Agreement should be granted final approval, the parties in the Action agree not to pursue any claims or defenses otherwise available to them, and no person in the Settlement Class, either directly, on a representative basis or in any other capacity, will commence or prosecute against any of the Released Parties any action or proceeding asserting any of the Released Claims.  The proposed order submitted with a motion for preliminary approval will contain an injunction enjoining the commencement or prosecution of Released Claims by persons in the Settlement Class or persons purporting to act on their behalf pending final approval of the Agreement.  The Agreement will be conditioned upon the entry of such an injunction.

18

U.      Return Of Produced Documents.  It is agreed that, within 30 days after the Effective Date, the originals and all copies of all documents produced in the Action shall be returned to the producing party or destroyed.

V.      No Publicity Beyond Notice Procedures.  Neither Class Counsel nor Plaintiffs will issue press releases regarding the settlement unless HSBC agrees to such press releases in advance, which agreement shall not be unreasonably withheld.  Neither Class Counsel nor Plaintiffs will make a statement of any kind to any third party regarding the settlement, with the exception of communications with the Claims Administrator.  The parties may make public statements to the Court as necessary to obtain preliminary or final approval of the settlement. This provision shall not prohibit Class Counsel from communicating with any person either in or seeking admission to the Settlement Class regarding the Action or the Agreement; provided, however, that Class Counsel will not disclose information that is not a part of the public record. This provision shall not prohibit Class Counsel from noting the fact of this settlement on their respective websites and in filings with courts in support of their appointment as class counsel in other matters.  Plaintiffs and Class Counsel shall refrain from disparaging any of the Released Parties or taking any action designed or reasonably foreseeable to cause harm to the public perception of any of the Released Parties regarding any issue related in any way to the Action or the settlement.

W.      General Matters.

1.      No Admission Of Liability.  It is expressly declared that the Released Parties deny any liability and are settling to avoid the cost, risk, uncertainty and inconvenience of litigation.

2.      Evidentiary Preclusion.  Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Released Parties in any civil,

19

criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or may be deemed to be a waiver of HSBC's right to seek to enforce any arbitration provision in other cases or against persons in the Settlement Class who opt out of the settlement. In addition, neither the fact of, nor any documents relating to, HSBC's withdrawal from the settlement, any failure of the Court to approve the settlement and/or any objections or interventions may be used as evidence for any purpose whatsoever. The Released Parties may file this Agreement and/or the judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

3. <u>Parties Authorized To Enter Into Settlement Agreement</u>. The individual(s) executing this Agreement on behalf of a party represent and warrant that he or she is fully authorized to execute this Agreement on such party's behalf and to carry out the obligations provided for therein. Each person executing the Agreement on behalf of a party covenants, warrants and represents that he or she is and has been fully authorized to do so by such party. Each party represents and warrants that he, she or it intends to be bound fully by the terms of this Agreement.

4. <u>Time Periods</u>. The time periods and dates described in this Agreement with respect to the giving of Class Notice and hearings will be subject to Court approval and modification by the Court.

5. <u>No Construction Against Drafter</u>. This Agreement is deemed to have been drafted by all parties, and any rule that a document shall be interpreted against the drafter will not apply to this Agreement.

6. <u>Agreement Binding on Successors in Interest</u>. This Agreement is binding on and shall inure to the benefit of the respective heirs, successors and assigns of the parties.

LA 51767168

7.     Signatures.  The parties and their counsel may sign separate copies of this Agreement, which together will constitute one agreement.  In addition, signatures sent in pdf format by email or by facsimile constitute sufficient execution of this Agreement.

8.     Execution in Counterparts.  This Agreement is effective upon its execution by all parties.  The parties may execute this Agreement in counterparts.  Each counterpart shall be deemed to be an original, and the execution of counterparts shall have the same force and effect as if all parties had signed the same instrument.

9.     Entire Agreement.  This Agreement contains the entire agreement between the parties and supersedes all prior understandings, agreements or writings regarding the subject matter of this Agreement.  This Agreement may be amended or modified only by a written instrument signed by all parties or their successors in interest or their duly authorized representatives.

X.     Miscellaneous Provisions.

1.     Each and every Exhibit to this Agreement is incorporated herein by this reference as though fully set forth herein.

2.     The waiver by one party of any breach of this Agreement by any other party shall not be deemed a waiver, by that party or by any other party, of any other prior or subsequent breach of this Agreement.

3.     Each party to this Agreement warrants that he, she or it is acting upon his, her or its independent judgment and upon the advice of his, her or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party.

4.     This Agreement has been carefully read by each of the parties, or their responsible officers thereof, and its contents are known and understood by each of the parties. This Agreement is signed freely by each party executing it.

21

5.      No party to this Agreement has heretofore assigned, transferred or granted, or purported to assign, transfer or grant, any of the claims, demands or cause or causes of action disposed of by this Agreement.

6.      In the event any one or more of the provisions contained in this Agreement shall for any reason be held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalid, illegal or unenforceable provision shall be ineffective but shall not in any way invalidate or otherwise affect any other provision.

7.      The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed, dated as of June 30 2014.

PLAINTIFF MICHAEL WILKINS

Michael Wilkins

PLAINTIFF KENNETH MILLS

_____
Kenneth Mills

DEFENDANT HSBC FINANCE
CORPORATION, successor by merger to HSBC
BANK NEVADA, N.A.

By: _____

Its: _____

22

5.     No party to this Agreement has heretofore assigned, transferred or granted, or purported to assign, transfer or grant, any of the claims, demands or cause or causes of action disposed of by this Agreement.

6.     In the event any one or more of the provisions contained in this Agreement shall for any reason be held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalid, illegal or unenforceable provision shall be ineffective but shall not in any way invalidate or otherwise affect any other provision.

7.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed, dated as of June 25, 2014.

PLAINTIFF MICHAEL WILKINS


_____
Michael Wilkins

PLAINTIFF KENNETH MILLS


_____
Kenneth Mills

DEFENDANT HSBC FINANCE
CORPORATION, successor by merger to HSBC
BANK NEVADA, N.A.

By: _____

Its: Executive Vice President

DEFENDANT HSBC CARD SERVICES INC.

By: _Mike Reeves_____

Its: Chief Financial Officer and Executive Vice President

APPROVED AS TO FORM AND CONTENT:

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
                    Jonathan D. Selbin
                    Attorneys For Plaintiffs

Dated: June ___, 2014

MEYER WILSON CO., LPA

By: _____
                    Matthew R. Wilson
                    Attorneys For Plaintiffs

Dated: June ___, 2014

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: _____
                    Beth E. Terrell
                    Attorneys For Plaintiffs

Dated: June ___, 2014

BURKE LAW OFFICES

23

LA 51773165

DEFENDANT HSBC CARD SERVICES INC.


By: _____


Its: _____


APPROVED AS TO FORM AND CONTENT:


LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
                Jonathan D. Selbin
                Attorneys For Plaintiffs


Dated: July 1, 2014


MEYER WILSON CO., LPA


By: _____
                Matthew R. Wilson
                Attorneys For Plaintiffs


Dated: July 1, 2014


TERRELL MARSHALL DAUDT & WILLIE PLLC


By: _____
                Beth E. Terrell
                Attorneys For Plaintiffs


Dated: July 1, 2014

BURKE LAW OFFICES

LA 51767168

DEFENDANT HSBC CARD SERVICES INC.

By: _____

Its: _____

APPROVED AS TO FORM AND CONTENT:

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
                Jonathan D. Selbin
                Attorneys For Plaintiffs

Dated: June ___, 2014

MEYER WILSON CO., LPA

By: _____
                Matthew R. Wilson
                Attorneys For Plaintiffs

Dated: June 30, 2014

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: _____
                Beth E. Terrell
                Attorneys For Plaintiffs

Dated: June ___, 2014

BURKE LAW OFFICES

DEFENDANT HSBC CARD SERVICES INC.


By: _____


Its: _____


APPROVED AS TO FORM AND CONTENT:


LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By: _____
                   Jonathan D. Selbin
                   Attorneys For Plaintiffs



Dated: June __, 2014


MEYER WILSON CO., LPA


By: _____
                   Matthew R. Wilson
                   Attorneys For Plaintiffs



Dated: July 1, 2014

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:        *Beth Terrell*
_____
                   Beth E. Terrell
                   Attorneys For Plaintiffs

23

By: _____

       Alexander H. Burke

       Attorneys For Plaintiffs


Dated: June __, 2014

STROOCK & STROOCK & LAVAN LLP


By: _____

       Lisa M. Simonetti

       Attorneys for Defendants


Dated: June __, 2014

**Error! Unknown document property name.**

By: _____
            Alexander H. Burke
          Attorneys For Plaintiffs

Dated: June ___, 2014

STROOCK & STROOCK & LAVAN LLP

By: _____
            Lisa M. Simonetti
         Attorneys for Defendants

Dated: June 24, 2014

LA 51773165

# <u>Exhibit A</u>

***Wilkins and Mills v. HSBC Bank Nevada, N.A., et al.,* U.S.D.C.,
Northern District of Illinois, Case No. 14-cv-190**

[_____] Settlement Administrator               Toll Free Number: x-xxx-xxx-xxxx
PO Box [_____]                              Website: www._____.com
[_____]

<<mail id>>
<<Name1>>
<<Name2>>
<<Address1>>
<<Address2>>
<<City>><<State>><<Zip>>

## CLAIM FORM BY MAIL

**TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE
ALL OF THE INFORMATION BELOW AND YOU MUST SIGN THIS CLAIM FORM.**

**YOUR CLAIM FORM MUST BE POSTMARKED BY _____, 2014.**

1. **CLAIMANT INFORMATION:**

_____  _____  _____
FIRST NAME                    MIDDLE NAME       LAST NAME

_____
ADDRESS 1

_____
ADDRESS 2

_____  _____  _____ - _____
CITY                                        STATE     ZIP         (optional)

2. **AFFIRMATION:**

By signing below, I declare, under penalty of perjury of the laws of the United States, that, on or after May 31, 2008 through May 1, 2012, I received one or more non-emergency automated telephone calls from HSBC Card Services Inc. (or any other entity on behalf of HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A.) to my cellular telephone.

Signature: _____

Name (please print): _____

Date: _____

## QUESTIONS? VISIT [Internet URL] OR CALL [_____].

***Wilkins and Mills v. HSBC Bank Nevada, N.A., et al.*, U.S.D.C.,**
**Northern District of Illinois, Case No. 14-cv-190**

[_____] Settlement Administrator      **Toll Free Number: x-xxx-xxx-xxxx**
PO Box [_____]      **Website: www._____.com**
[_____]

<<mail id>>
<<Name1>>
<<Name2>>
<<Address1>>
<<Address2>>
<<City>><<State>><<Zip>>

## ELECTRONIC CLAIM FORM

**TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE
<u>ALL</u> OF THE INFORMATION BELOW AND YOU MUST ELECTRONICALLY <u>SIGN</u> THIS CLAIM FORM.**

**YOUR CLAIM FORM MUST BE <u>SUBMITTED ON OR BEFORE</u> _____, 2014.**

**1. <u>CLAIMANT INFORMATION:</u>**

_____  _____  _____
FIRST NAME      MIDDLE NAME      LAST NAME

_____
ADDRESS 1

_____
ADDRESS 2

_____  _____  _____ - _____
CITY              STATE      ZIP      (optional)

**2. <u>AFFIRMATION:</u>**

By signing below, I declare, under penalty of perjury of the laws of the United States, that, on or after May 31, 2008 through May 1, 2012, I received one or more non-emergency automated telephone calls from HSBC Card Services Inc. (or any other entity on behalf of HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A.) to my cellular telephone.

Signature: _____

Name (please print): _____

Date: _____

### QUESTIONS? VISIT [Internet URL] OR CALL [_____].

# **<u>Exhibit B</u>**

*Michael Wilkins and Kenneth Mills v. HSBC Bank Nevada, N.A. and HSBC Card Services Inc.*,
United States District Court for the Northern District of Illinois, Case No. 14-cv-190

**HSBC's records indicate that you may be a member of a class in this action, which has been settled. You are a member of that settlement class because HSBC Card Services Inc., or any other entity acting on behalf of HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A. (collectively "HSBC"), placed an automated call to your cellular telephone number at some time between May 31, 2008 and May 1, 2012.**

**The purpose of this Notice is to inform settlement class members of the terms of the settlement and important deadlines relating to the settlement, as summarized below and described more fully on the Settlement Website: www._____.com. You may also call the Toll-Free Settlement Hotline, 800-***-****.**

Plaintiffs claim that HSBC violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., by placing calls, either itself or through an entity calling on its behalf, to cellular telephones between May 31, 2008, and May 1, 2012, through the use of an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent. HSBC denies these allegations and denies any claim of wrongdoing. The Court has not ruled on the merits of Plaintiffs' claims or HSBC's defenses.

## TERMS OF THE SETTLEMENT

HSBC has agreed to pay $39,975,000.00 into a Settlement Fund, which will pay for the cost of notice and administration of the settlement, settlement class members' claims and attorneys' fees and incentive awards for the named plaintiffs, if approved by the Court. Class Counsel estimate that a settlement class member who submits a valid claim form ("Claim Form") may receive a cash award in the range of $20 to $40.

## DEADLINES UNDER THE SETTLEMENT

- **In order to receive benefits under the settlement, you must submit a valid Claim Form by no later than [DATE XX, 2014].** The Claim Form may be obtained on the Settlement Website, www._____.com, or by calling 1-XXX-XXX-XXXX. You have several options as to the manner of submitting this form, which are explained on the Settlement Website.
- **To exclude yourself from the settlement, submit a written exclusion request postmarked on or before [DATE]** to the Claims Administrator at [address]. To be valid, the written exclusion request must contain specific information that is described through the Settlement Website, www._____.com. If you do not submit a valid and timely exclusion request, you will be bound by the terms of the settlement and you will give up your right to sue regarding automated calls to your cell phone by HSBC or any other entity calling on its behalf.
- **To object to or comment on the settlement or Class Counsel's Fee and Cost Request ("Fee Request"), you must file an objection with the Court and send the objection to counsel postmarked by [DATE XX, 2014]** at the addresses listed on the Settlement Website, _____. **Class Counsel is requesting attorneys' fees of $11,992,500 out of the Settlement Fund. Class Counsel's Fee Request and documents in support of it will be available for viewing on the Settlement Website by [DATE].** Anyone who objects to the settlement may ask to appear at the final approval hearing, described below. If your objection is valid and submitted on time, the Court will consider it whether or not you appear at the hearing.
- If you do nothing, you will not receive any monetary award and you will lose the right to sue regarding automated calls to your cell phone by HSBC or any other entity calling on its behalf.
- **The Final Approval Hearing will take place on [DATE] at [TIME]** in Courtroom 1801 at the U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Chicago, Illinois 60604.

**Complete details about your rights and options are available on the Settlement Website, www._____.com. If you have further questions, you can call the Toll-Free Settlement Hotline, 800-***-****. Do not call the Court, HSBC or HSBC's counsel.**

# <u>Exhibit C</u>

**If you received an automated call from HSBC Card Services Inc., or an entity calling on behalf of HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A. (collectively "HSBC"), from May 31, 2008 through May 1, 2012, you may be entitled to receive benefits from a class action settlement. This Court-authorized Notice describes your rights and gives information about the proposed settlement in *Michael Wilkins and Kenneth Mills v. HSBC Bank Nevada, N.A. and HSBC Card Services Inc.,* U.S. District Court for the Northern District of Illinois, *Case No. 14-cv-190*.**

**The purpose of this Notice is to inform Class Members of the terms of the settlement and important deadlines relating to the settlement, as summarized below and described more fully on the Settlement Website:** www._____.com. **You may also call the Toll-Free Settlement Hotline: 800-***-****.**

## WHAT IS THE LAWSUIT ABOUT?

Plaintiffs claim that HSBC violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., by placing calls, either itself or through an entity calling on its behalf, to cellular telephones between May 31, 2008, and May 1, 2012, through the use of an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent. HSBC denies these allegations and denies any claim of wrongdoing. The Court has not ruled on the merits of Plaintiffs' claims or HSBC's defenses.

## WHO IS A CLASS MEMBER?

You may be a settlement class member if HSBC, or an entity acting on its behalf, placed an automated call to your cellular telephone number at some time between May 31, 2008 and May 1, 2012.

## TERMS OF THE SETTLEMENT

HSBC has agreed to pay $39,975,000.00 into an escrow account (the "Settlement Fund"), which will pay for Class Members' claims and also for attorneys' fees and incentive awards for the named plaintiffs, if approved by the Court. Class Counsel estimate that a Class Member who submits a valid claim form ("Claim Form") may receive a cash award in the range of $20 to $40.

## DEADLINES UNDER THE SETTLEMENT

- **In order to receive benefits under the settlement, you must submit a valid Claim Form by no later than [DATE XX, 2014].** The Claim Form may be obtained on the Settlement Website, www._____.com, or by calling the Toll-Free Settlement Hotline, 800-***-****. You have several options as to the manner of submitting this form, which are explained on the Settlement Website.

- **To exclude yourself from the settlement, submit a written exclusion request postmarked on or before [DATE]** to the Claims Administrator at [address]. To be valid, the written exclusion request must contain specific information that is described through the Settlement Website, www._____.com. If you do not submit a valid and timely exclusion request, you will be bound by the terms of the settlement and you will give up your right to sue regarding automated calls to your cell phone by HSBC or any other entity calling on its behalf.

- **To object to or comment on the settlement or Class Counsel's Fee and Cost Request ("Fee Request"), you must file an objection with the Court and send the objection to counsel postmarked by [DATE XX, 2014]** at the addresses listed on the Settlement Website, _____. To be valid, objections must contain specific information that is described through the Settlement Website, www._____.com. **Class Counsel is requesting attorneys' fees of $11,992,500 out of the Settlement Fund. Class Counsel's Fee Request and documents in support of it will be available for viewing on the Settlement Website by [DATE].** Anyone who objects to the settlement may ask to appear at the Final Approval Hearing, described below. If your objection is valid and submitted on time, the Court will consider it whether or not you appear at the hearing.

- If you do nothing, you will not receive any monetary award and you will lose the right to sue regarding automated calls to your cell phone by HSBC or any other entity calling on its behalf.
- **The Final Approval Hearing will take place on [DATE] at [TIME]** in Courtroom 1801 at the U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Chicago, Illinois 60604.

**Complete details about your rights and options are available on the Settlement Website, www._____.com.  If you have further questions, you can call the Toll-Free Settlement Hotline, 800-***-****.  Do not call the Court, HSBC or HSBC's counsel.**

# **Exhibit D**

*Michael Wilkins and Kenneth Mills v. HSBC Bank Nevada, N.A. and HSBC Card Services Inc.,*
**United States District Court for the Northern District of Illinois,**
**Case No. 14-cv-190**

# If automated calls were directed to your cell phone by HSBC Card Services Inc., or any other entity acting on behalf of HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A. (collectively "HSBC"), from May 31, 2008 to May 1, 2012, you may be entitled to benefits under a class action settlement.

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

- **A settlement will provide $39,975,000.00 (the "Settlement Fund") to fully settle and release claims of persons to whom calls were placed on their cell phones by HSBC, or an entity calling on behalf of HSBC, using an automatic telephone dialing system or prerecorded or artificial voice during the time period set forth above.**

- **Plaintiffs allege that certain of these calls violated the federal Telephone Consumer Protection Act (the "TCPA").  HSBC denies plaintiffs' allegations and denies any wrongdoing whatsoever.  The Court has not ruled on the merits of plaintiffs' claims or HSBC's defenses.  By entering into the settlement, HSBC has not conceded the truth or validity of any of the claims against it.**

- **The Settlement Fund shall be used to pay all amounts related to the settlement, including awards to settlement class members who submit a valid and timely claim, attorneys' fees and costs for plaintiffs' counsel, any incentive awards for plaintiffs and the costs of administering the settlement.  If there are any amounts remaining in the Settlement Fund after the administration is concluded, that money will be redistributed to settlement class members or distributed to a charity, Equal Justice Works.**

- **Your legal rights are affected whether you act or don't act.  Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM FORM | If you submit a valid claim form by [DATE], you will receive a payment and will give up your rights to sue HSBC and/or any other entities on a released claim. |

| EXCLUDE YOURSELF FROM THE CASE | This is the only option that allows you to sue HSBC, other entities calling on its behalf and/or other released parties on your own regarding the legal claims in this case, but you will not receive a payment from the settlement.  The deadline for excluding yourself is [DATE]. |
| OBJECT TO THE SETTLEMENT | Write to the Court about why you do not like the settlement.  The deadline for objecting is [DATE]. |
| DO NOTHING | If you do nothing, you will not receive any monetary award and you will lose the right to sue regarding automated calls to your cell phone made by HSBC or any other entity calling on its behalf. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved.  Please be patient.

# BASIC INFORMATION

## 1.  Why is this a class action?

In a class action, one or more people called Class Representatives (here, plaintiffs Michael Wilkins and Kenneth Mills ("Plaintiffs")) sue on behalf of people who allegedly have similar claims.  This group is called a class and the persons included are called class members.  One court resolves the issues for all of the class members, except for those who exclude themselves from the class.  Here, the Court has certified a class action for settlement purposes only.  The Honorable James F. Holderman is in charge of this action.

## 2.  Why is there a settlement?

Plaintiffs claim that HSBC violated the TCPA by placing calls, either itself or through entities calling on its behalf, to cellular telephones between May 31, 2008, and May 1, 2012, through the use of an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent.  HSBC denies these allegations and denies any claim of wrongdoing. The Court did not decide in favor of Plaintiffs or HSBC.  Instead, both sides agreed to this settlement.  That way, they avoid the risk and cost of a trial, and the settlement class members will receive compensation.  Plaintiffs and their attorneys ("Class Counsel") think the settlement is best for all persons in the settlement class.

# Who Is In The Settlement Class?

**3.  How do I know if I am a part of the settlement class?**

The Court has certified a class action for settlement purposes only.  The class (the "Settlement Class") is defined as:

> All persons within the United States to whom, on or after May 31, 2008 through May 1, 2012, a non-emergency telephone call was attempted by defendant HSBC Card Services Inc., or any other entity on behalf of defendant HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A., to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.  Excluded from the Settlement Class are HSBC and any affiliate or subsidiary of HSBC, along with any employees thereof, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt out of the Settlement Class.

"Settlement Class Member" is defined as any person in the Settlement Class who does not opt out of the settlement.  If you are still not sure whether you are included, you can visit www._____.com, you may write the settlement administrator at _____ or you may call 1-800-***-**** (toll-free) for more information.

# THE LAWYERS REPRESENTING YOU

**4.  Do I have lawyers in this case?**

The Court has appointed the law firms of Lieff Cabraser Heimann & Bernstein, LLP, Meyer Wilson Co., LPA, Burke Law Offices, LLC and Terrell Marshall Daudt & Willie PLLC, to represent you and the other Settlement Class Members as Class Counsel.  You will not be personally charged by these lawyers.

**5.  How will Class Counsel be paid?**

Class Counsel will ask the Court to approve payment of $11,992,500, which is 30% of the Settlement Fund to them for attorneys' fees and expenses.  Class Counsel also will ask the Court to approve payment of $5,000 each to Michael Wilkins and to Kenneth Mills for their services as Class Representatives.  The Court may award less than these amounts.  HSBC has agreed not to oppose these requests.

# The Settlement Benefits

**6.  What does the settlement provide?**

Settlement Class Members may receive a cash payment by submitting a valid claim form.

**7.  How much will my payment be?**

Your share of the Settlement Fund will depend on the number of valid claim forms that Settlement Class Members send in. Class Counsel estimates that the amount of the cash award (while dependent upon the number of claims) may be within the range of $20 to $40.

| 8. What am I giving up to stay in the Class? |
|---|

Unless you exclude yourself from the settlement, you will be part of the Settlement Class, and you will be bound by the release of claims in the settlement. This means that, if the settlement is approved, you cannot sue, continue to sue or be part of any other lawsuit against HSBC or any other entities on a released claim. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the claim form or do nothing, you will agree to release HSBC and any other entities calling on its behalf from any and all claims that arise from the calls at issue in this action.

# How To Apply For A Payment

| 9. How can I get a payment? |
|---|

To qualify for a payment, you must send in a claim form or submit the required information through the Toll-Free Settlement Hotline. You may get a claim form on the Settlement Website, www._____.com, or by calling the Toll-Free Settlement Hotline, 800-***-****. **Read the instructions carefully, fill out the form completely and accurately, sign it and submit it**. To be valid, the claim form must be completed fully and accurately and submitted timely. A claim form may be submitted by mail to the Claims Administrator at: [insert address], via the Settlement Website or you may submit the required information through the Toll-Free Settlement Hotline. If you are submitting your claim via the Settlement Website or Toll-Free Settlement Hotline, it must be submitted no later than [DATE]. If you are mailing your claim form to the Claims Administrator, it must be postmarked by that date.

# When Will I Receive My Settlement Benefit?

| 10. When would I receive what I ask for? |
|---|

The Court will hold a hearing on [DATE] to decide whether to approve the settlement. If the Court approves the settlement, after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a claim form will be informed of the progress of the settlement through information posted at www._____.com. Please be patient.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

| 11. How do I get out of the settlement? |
|---|

If you want to keep the right to sue or continue to sue HSBC or other entities that may have been involved in the calls that are the subject of the action, then you must take steps to get out of the Settlement Class. This is called excluding yourself from, or opting out of, the Settlement Class.

To exclude yourself from the settlement, you must send a letter by mail that: (a) is signed by you; (b) includes your full name, address, telephone number and your account number(s) (except that persons in the Settlement Class who do not currently have and have not previously had some banking, lending or other relationship with HSBC, shall not be required to include an account number); and (c) includes the following statement: "I/we request to be excluded from the class settlement in <u>Michael Wilkins and Kenneth Mills v. HSBC Bank Nevada, N.A. and HSBC Card Services Inc.</u>, Case No. 14-cv-190." No request for exclusion will be valid unless all of the information described above is included. No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may exclude any other person in the Settlement Class from the Settlement Class. **To be valid, you must mail your exclusion request postmarked no later than [DATE] to the claims administrator at [insert address].**

## 12. If I do not exclude myself, can I sue HSBC for the same thing later?

No. If you do not exclude yourself, you give up any right to sue (or continue to sue) HSBC or any released parties for the claims that this settlement resolves.

## 13. If I exclude myself, can I get money from this settlement?

No. If you ask to be excluded, you will not be able to submit a revocation request, you will not be able to submit a claim for a settlement payment and you cannot object to the settlement.

# OBJECTING TO THE SETTLEMENT

## 14. How do I tell the Court that I do not agree with the settlement?

If you are in the Settlement Class, you can object to the settlement or any part of the settlement that you think the Court should reject, and the Court will consider your views.

To object, you must make your objection in writing stating that you object to the settlement in <u>Wilkins v. HSBC Bank Nevada, N.A., et al</u>. In order to be considered by the Court, the written objection must set forth: (a) the name and case number of this action; (b) your full name, address and telephone number; (c) an explanation of the basis upon which you claim to be a Settlement Class Member; (d) all grounds for the objection, accompanied by any legal support for the objection known to you or your counsel; (e) the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (f) the identity of all counsel representing the objector who will appear at the final approval hearing; (g) a list of all persons who will be called to testify at the final approval hearing in support of the objection; (h) a statement confirming whether you intend to personally appear and/or testify at the final approval hearing; and (i) your signature (an attorney's signature is not sufficient).

**In order to be valid, objections must be both filed with the Court and mailed to the attorneys listed below, no later than [DATE].**

For Plaintiffs:

Daniel M. Hutchinson, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery St., 29th Floor
San Francisco, CA 94111

For HSBC:

Lisa M. Simonetti, Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East
Los Angeles, CA 90067-3086

### 15. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself means that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# If You Do Nothing

### 16. What happens if I do nothing at all?

If you do nothing, you will remain a member of the Settlement Class and you will give up your rights to sue HSBC; however, you will not receive any benefits under the settlement.

# The Court's Final Approval Hearing

### 17. When and where will the Court decide whether to approve the settlement?

The Court will hold a final approval hearing at [TIME] on [DATE] at the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, in Courtroom 1801. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are valid objections that comply with the requirements in Question 14 above, the Court also will consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel and Plaintiffs.

### 18. Do I have to come to the hearing?

No. Class Counsel will appear on behalf of the Settlement Class. But, you are welcome to come, or have your own lawyer appear, at your own expense.

### 19. May I speak at the hearing?

You may ask the Court for permission to speak at the final approval hearing, but only in connection with an objection that you have timely submitted to the Court according to the procedure set forth in Question 14 above. To speak at the final approval hearing, you must also file a document stating your "Notice of Intention to Appear in Michael Wilkins and Kenneth Mills v. HSBC Bank Nevada, N.A. and HSBC Card Services Inc." Be sure to include your name, address, telephone number and your signature. Your Notice of Intention to Appear must

be filed no later than [DATE] and be sent to all addresses in Question 14. You cannot speak at the hearing if you exclude yourself from the settlement.

# GETTING MORE INFORMATION

| **20. Is this the entire settlement?** |
| --- |

No. This notice is only a summary of the proposed settlement. More details are in a settlement agreement. You can get a copy of the settlement agreement by visiting the Settlement Website, www._____.com, or you can write to the address below or call the Toll-Free Settlement Hotline, 800-***-****.

| **21. How do I get more information?** |
| --- |

You can call the Toll-Free Settlement Hotline, 800-***-****; write to the Claims Administrator at _____; or review the settlement agreement.

**DO NOT CALL OR WRITE TO THE COURT, THE CLERK OF THE COURT, HSBC OR HSBC'S COUNSEL ABOUT THE SETTLEMENT. ALSO, TELEPHONE REPRESENTATIVES WHO ANSWER CALLS MADE TO THE TOLL FREE NUMBER ARE NOT AUTHORIZED TO CHANGE THE TERMS OF THE SETTLEMENT OR THIS NOTICE.**

DATE: <u>MONTH 00, 0000</u>.

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL WILKINS and KENNETH
MILLS, on behalf of himself and others
similarly situated,

                Plaintiffs,

     v.

HSBC BANK NEVADA, N.A. and HSBC
CARD SERVICES, INC.,

                Defendants.

NO. 1:14-cv-00190 JFH-MV

<u>DEMAND FOR JURY TRIAL</u>

**<u>[PROPOSED] ORDER  (1) CONDITIONALLY CERTIFYING A SETTLEMENT
CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT,
(3) APPROVING NOTICE PLAN, AND (4) SETTING FINAL APPROVAL HEARING</u>**

This matter came before the Court on plaintiffs' motion for preliminary approval of the proposed class action settlement (the "Settlement") of the case entitled <u>Michael Wilkins and Kenneth Mills v. HSBC Bank Nevada, N.A. and HSBC Card Services Inc.</u>, United States District Court for the Northern District of Illinois Case No. 14-cv-190 (the "Action"). The Action was brought by plaintiffs Michael Wilkins and Kenneth Mills ("Class Plaintiffs" or "Class Representatives"), individually and on behalf of all others similarly situated against defendants HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A., and HSBC Card Services Inc. (together, "HSBC" or "Defendants" and, together with Class Plaintiffs, the "Parties"). Based on this Court's review of the Parties' Settlement Agreement and Release (the "Agreement" or "Settlement Agreement"), Class Plaintiffs' Motion for Preliminary Approval of Settlement, and the arguments of counsel, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:

1. <u>Settlement Terms</u>. Unless otherwise defined herein, all terms in this Order shall have the meanings ascribed to them in the Agreement.

2. <u>Jurisdiction</u>. The Court has jurisdiction over the subject matter of the Action, the Parties, and all persons in the Settlement Class.

3. <u>Scope of Settlement</u>. The Agreement resolves all claims alleged in the Class Action Complaint filed in the Northern District of Illinois on January 10, 2014, as amended on March 7, 2014. *See* Dkts. 1, 27.

4. <u>Preliminary Approval of Proposed Settlement Agreement</u>. The Court has conducted a preliminary evaluation of the Settlement as set forth in the Agreement for fairness, adequacy, and reasonableness. Based on this preliminary evaluation, the Court finds that:
(a) the Agreement is fair, reasonable, and adequate, and within the range of possible approval;

- 2 -

(b) the Agreement has been negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case; and (c) with respect to the forms of notice of the material terms of the Agreement to person in the Settlement Class for their consideration and reaction (Exs. B, C, and D to the Agreement), that notice is appropriate and warranted.  Therefore, the Court grants preliminary approval of the Settlement.

5. <u>Class Certification for Settlement Purposes Only</u>. The Court, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, conditionally certifies, for purposes of this Settlement only, the following Settlement Class:

> All persons within the United States to whom, on or after May 31, 2008 through May 1, 2012, a non-emergency telephone call was attempted by defendant HSBC Card Services, Inc., or any other entity on behalf of defendant HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A., to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.  Excluded from the Settlement Class are HSBC and any affiliate or subsidiary of HSBC, along with any employees thereof, and any entities in which any of such companies have a controlling interest, and all persons who validly opt out of the Settlement Class.

6. In connection with this conditional certification, the Court makes the following preliminary findings:

(a) The Settlement Class appears to be so numerous that joinder of all members is impracticable;

(b) There appear to be questions of law or fact common to the Settlement Class for purposes of determining whether the Settlement should be approved;

(c) Class Plaintiffs' claims appear to be typical of the claims being resolved through the Settlement;

(d) Class Plaintiffs appear to be capable of fairly and adequately protecting the interests of all members of the Settlement Class in connection with the Settlement;

(e)     For purposes of determining whether the Settlement Agreement is fair, reasonable, and adequate, common questions of law and fact appear to predominate over questions affecting only individual persons in the Settlement Class.  Accordingly, the Settlement Class appears to be sufficiently cohesive to warrant settlement by representation; and

(f)     For purposes of settlement, certification of the Settlement Class appears to be superior to other available methods for the fair and efficient settlement of the claims of the Settlement Class.

7.      <u>Class Representatives</u>.  The Court appoints Class Plaintiffs to act as representatives of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

8.      <u>Class Counsel</u>.  The Court appoints Lieff, Cabraser, Heimann & Bernstein, LLP, Meyer Wilson Co., LPA, Terrell Marshall Daudt & Willie PLLC, and Burke Law Offices, LLC as Class Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9.      <u>Final Approval Hearing</u>.  At 9:00 a.m. on November 11, 2014, in courtroom 1801 of the Everett McKinley Dirksen Building, United States Courthouse, 219 Dearborn Street, Chicago, Illinois, or at such other date and time later set by Court Order, this Court will hold a Final Approval Hearing on the fairness, adequacy, and reasonableness of the Agreement and to determine whether (a) final approval of the Settlement embodied by the Agreement should be granted, and (b) Class Counsel's application for attorneys' fees and expenses, and incentive awards to Class Plaintiffs should be granted, and in what amount.  No later than September 5, 2014, Class Plaintiffs must file papers in support of Class Counsel's application for attorneys' fees and expenses and the incentive awards to the Class Representatives.  No later than October 28, 2014, which is fourteen (14) days prior to the Final Approval Hearing,

- 4 -

Class Plaintiffs must file papers in support of final approval of the Settlement and respond to any written objections. Defendants may (but are not required to) file papers in support of final approval of the Settlement, so long as they do so no later than October 28, 2014.

      10.    <u>Settlement Claims Administrator</u>. Garden City Group ("GCG") is hereby appointed as Claims Administrator and shall be required to perform all the duties of the Claims Administrator as set forth in the Agreement and this Order.

      11.    <u>Class Notice</u>. The Court approves the proposed plan for giving notice to the Settlement Class directly (using e-mail and post cards), through publication via an online and print media campaign, and through the establishment of a Settlement Website, as more fully described in Plaintiffs' Motion ("Notice Plan"). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances. The Court hereby directs the Parties and the Claims Administrator to complete all aspects of the Notice Plan no later than August 6, 2014 ("Settlement Notice Date").

      12.    The Claims Administrator will file with the Court by no later than October 28, 2014, which is fourteen (14) days prior to the Final Approval Hearing, proof that notice was provided in accordance with the Agreement and this Order.

      13.    <u>Objection and Op-Out Deadline</u>. Persons in the Settlement Class who wish to either object to the Settlement or request to opt out must do so by October 6, 2014, which is sixty (60) calendar days after the Settlement Notice Date (adjusted for the weekend). Persons in the Settlement Class may not both object and opt out. If a person both requests to opt out and objects, the request to opt out will control.

14. <u>Exclusion from the Settlement Class</u>.  To request to opt out, a person in the Settlement Class must follow the directions in the Class Notice and send a compliant request to the Claims Administrator at the address designated in the Class Notice by the opt-out deadline. In the exclusion request, the person must (a) state the full name(s), address(es), telephone number(s) and account number(s) of the person or persons requesting exclusion and (b) include the following statement:  "I/we request to be excluded from the class settlement in Wilkins v. HSBC Bank Nevada, N.A., N.D. Ill., Case No. 14-cv-190."  Persons in the Settlement Class who do not currently have and have not previously had some banking, lending or other relationship with HSBC are not required to include an account number.  No exclusion request will be valid unless all of the information described above is included.  No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may exclude any other person from the Settlement Class.

15. The Claims Administrator will retain a copy of all opt-out requests.  Not later than ten days before the Final Approval Hearing, the Claims Administrator will file under seal with the Court a declaration that lists all of the opt-out requests received.

16. If a timely and valid opt-out request is made by a person in the Settlement Class, then the Agreement and any determinations and judgments concerning it will not bind the excluded person.

17. All Settlement Class Members will be bound by all determinations and judgments concerning the Agreement.

18. <u>Objections to the Settlement</u>.  To object to the Settlement, Settlement Class Members must follow the directions in the Class Notice and file a written objection with the Court by the objection deadline.  Settlement Class Members also must mail the objection by

- 6 -

the objection deadline to each of the following: (a) Class Counsel – Daniel M. Hutchinson, Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111; and (b) HSBC's Counsel – Lisa M. Simonetti, Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, CA 90067.  In the written objection, the Settlement Class Member must state (a) the name and case number of the Action; (b) the objector's full name, address, and telephone number; (c) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (d) all grounds for the objection, accompanied by any legal support for the objection known to the objector or his or her counsel; (e) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (f) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature.  The Court will not consider an objection unless the objection includes all of the information set forth above.

19.	Any Settlement Class Member who fails to comply with Paragraph 18 (and as detailed in the Class Notice) will not be permitted to object to the Agreement at the Final Approval Hearing, will be foreclosed from seeking any review of the Agreement by appeal or other means, will be deemed to have waived his, her, or its objections, and will be forever barred from making any objections in the Action or any other related action or proceeding.  All Settlement Class Members will be bound by all determinations and judgments in the Action, whether favorable or unfavorable to the Settlement Class.

20.    Stay of Other Proceedings.  Pending the final determination of whether the Settlement should be approved, all pre-trial proceedings and briefing schedules in the Action are stayed.  If the Settlement is terminated or final approval does not for any reason occur, the stay will be immediately terminated.

21.    Pending the final determination of whether the Settlement should be approved, the Class Representatives and all persons in the Settlement Class are hereby stayed and enjoined from commencing, pursuing, maintaining, enforcing, or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties.  Such injunction will remain in force until the Court enters the Final Approval Order or until such time as the Parties notify the Court that the Settlement has been terminated.  Nothing herein will prevent any person in the Settlement Class, or any person actually or purportedly acting on behalf of any such person (s), from taking any actions to stay or dismiss any Released Claim(s).  This injunction is necessary to protect and effectuate the Agreement, this Preliminary Approval Order, and the Court's flexibility and authority to effectuate the Agreement and to enter judgment when appropriate, and is ordered in aid of this Court's jurisdiction and to protect its judgments.  This injunction does not apply to any person who requests to opt out pursuant to Paragraphs 13 and 14 of this Order.

22.    If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings in connection with the Settlement will be without prejudice to the right of Defendants or the Class Representatives to assert any right or position that could have been asserted if the Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary.  In such an event, the Parties will return to the *status quo ante* in the Action and the certification of the Settlement Class will be

- 8 -

deemed vacated.  Should the final determination of whether the Settlement should be approved be withheld or not granted for any reason, or should the Agreement not become effective for any reason, the entire Settlement Amount, including any amounts advanced from the Settlement Amount in the Escrow Account for the costs of Class Notice and settlement administration but not yet spent, shall be returned to Defendants with all applicable interest. The certification of the Settlement Class for settlement purposes will not be considered as a factor in connection with any subsequent litigation of class certification issues.

23.　　No Admission of Liability.  The Agreement and any and all negotiations, documents, and discussions associated with it, including, but not limited to, confirmatory discovery, will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, or of any liability or wrongdoing by Defendants, or the truth of any of the claims.  Evidence relating to the Agreement will not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing, or enforcing the terms and conditions of the Agreement, this Order, and the Final Approval Order.

24.　　Reasonable Procedures to Effectuate the Settlement.  Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Agreement, including making, without further approval of the Court, minor changes to the form or content of the Class Notice and Claim Form and other exhibits that they jointly agree are reasonable and necessary.  The Court reserves the right to approve the Agreement with such modifications, if any, as may be agreed to by the Parties without further notice to the members of the Class.

25. <u>Schedule of Future Events</u>. Accordingly, the following are the deadlines by which certain events must occur:

| August 6, 2014 [15 calendar days after the date of this Order] | Deadline to Provide Class Notice |
|---|---|
| September 5, 2014 [30 days after the Settlement Notice Date] | Deadline for filing of Class Plaintiffs' Motion for Attorneys' Fees and Incentive Awards |
| October 6, 2014 [60 days after the Settlement Notice Date, adjusted for the weekend] | Deadline to file objections or submit requests for exclusion |
| October 28, 2014 [14 days before the Final Approval Hearing] | Deadline for Parties to File the Following: (1) List of persons who Made Timely and Proper Requests for Exclusion; (2) Proof of Class Notice; and (3) Motion and Memorandum in Support of Final Approval, including responses to any Objections. |
| November 4, 2014 [90 days after the Settlement Notice Date] | Deadline for Settlement Class Members to Submit a Claim Form |
| November 11, 2014 at 9:00 a.m. | Final Approval Hearing |

SO ORDERED.

Dated:_____          _____
                                       Hon. James F. Holderman
                                       United States District Court Judge

# **Exhibit F**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| MICHAEL WILKINS and KENNETH MILLS, on behalf of himself and others similarly situated, | |
| Plaintiff, | |
| v. | No. 1:14-cv-190 |
| HSBC BANK NEVADA, N.A. and HSBC CARD SERVICES, INC., | |
| Defendants. | |

## [PROPOSED] FINAL ORDER OF DISMISSAL

The Court having held a final approval hearing on _____, notice of the hearing having been duly given in accordance with this Court's Order (1) Preliminarily Approving Class Action Settlement, (2) Conditionally Certifying a Settlement Class, (3) Approving Notice Plan, and (4) Setting Final Approval Hearing (the "Preliminary Approval Order"), and having considered all matters submitted to it at the final approval hearing and otherwise, and finding no just reason for delay in entry of this final order and good cause appearing therefore,

It is hereby ORDERED AND DECREED as follows:

1.    The Agreement dated July 1, 2014, including its Exhibits (the "Agreement"), and the definition of words and terms contained therein are incorporated by reference and are used hereafter.  The terms and definitions of this Court's Preliminary Approval Order (Dkt. No. __) are also incorporated by reference in this Final Approval Order.

2.    This Court has jurisdiction over the subject matter of the Action and over the Parties, including all Settlement Class Members with respect to the Settlement Class certified for settlement purposes in this Court's Preliminary Approval Order, as follows:

SETTLEMENT CLASS:  All persons within the United States to whom, on or after May 31, 2008 through May 1, 2012, a non-emergency telephone call was attempted by defendant HSBC Card Services Inc., or any other entity on behalf of defendant HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A., to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.  Excluded from the Settlement Class are HSBC and any affiliate or subsidiary of HSBC, along with any employees thereof, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt out of the Settlement Class.

3.    The Court hereby finds that the Agreement is the product of arm's length settlement negotiations between Plaintiffs and HSBC.

4.    The Court hereby finds and concludes that Class Notice was disseminated to persons in the Settlement Class in accordance with the terms of the Agreement.

5.    The Court further finds and concludes that the Class Notice and claims submission procedures set forth in Section III.K and III.F of the Agreement fully satisfy Rule 23

[PROPOSED] FINAL ORDER OF DISMISSAL
Case No. 1:14-cv-190

of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided due and sufficient individual notice to all persons in the Settlement Class who could be identified through reasonable effort and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Agreement and this Final Approval Order.

6.      The Court hereby finally approves the Agreement and finds that the terms constitute, in all respects, a fair, reasonable and adequate settlement as to all Settlement Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure.

7.      This Court hereby dismisses this Action, with prejudice, without costs to any party, except as expressly provided for in the Agreement.

8.      On final approval of this settlement (including, without limitation, the exhaustion of any judicial review, or requests for judicial review, from this Final Approval Order), the Plaintiffs and each and every one of the Settlement Class Members unconditionally, fully and finally release and forever discharge the Released Parties from the Released Claims.  In addition, any rights of Plaintiffs and each and every one of the Settlement Class Members to the protections afforded under Section 1542 of the California Civil Code and/or any other similar, comparable or equivalent laws will be terminated.

9.      Plaintiffs and each and every Settlement Class Member, and any person actually or purportedly acting on behalf of Plaintiffs or any Settlement Class Member, are hereby permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral or other forum, against the Released Parties. This permanent bar and injunction is necessary to protect and effectuate the Agreement, this Final Approval Order and this Court's authority to effectuate the Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

[PROPOSED] FINAL ORDER OF DISMISSAL
Case No. 1:14-cv-190

10.    The Agreement (including, without limitation, its Exhibits), and any and all negotiations, documents and discussions associated with it, including, but not limited to, confirmatory discovery, shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, or of any liability or wrongdoing by HSBC, or of the truth of any of the claims asserted in the Action, and evidence relating to the Agreement shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, except for purposes of enforcing the terms and conditions of the Agreement, the Preliminary Approval Order and/or this Final Approval Order.  All confirmatory discovery provided by HSBC shall also be inadmissible in evidence for any purpose.

11.    If for any reason the Agreement is terminated or the Effective Date does not occur, the Agreement and all proceedings in connection with the Agreement shall be without prejudice to the right of HSBC or Plaintiffs to assert any right or position that could have been asserted if the Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary.  In such an event, the Parties shall return to the status quo ante in the Action and the certification of the Settlement Class shall be deemed vacated.  The certification of the Settlement Class for settlement purposes shall not be considered as a factor in connection with any subsequent litigation of class certification in this Action or any other action or proceeding.  In addition, in such an event, the Settlement Amount, including any monies advanced prior to final approval for settlement administration but not yet spent, shall be returned to HSBC with all applicable interest.

12.    In the event that any provision of the Agreement or this Final Approval Order is asserted by HSBC as a defense in whole or in part to any claim, or otherwise asserted (including, without limitation, as a basis for a stay) in any other suit, action or proceeding brought by a Settlement Class Member or any person actually or purportedly acting on behalf of any Settlement Class Member(s), that suit, action or other proceeding shall be immediately stayed

and enjoined until this Court or the court or tribunal in which the claim is pending has determined any issues related to such defense or assertion.  Solely for purposes of such suit, action or other proceeding, to the fullest extent they may effectively do so under applicable law, the Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum.  These provisions are necessary to protect the Agreement, this Final Approval Order and this Court's authority to effectuate the Agreement, and are ordered in aid of this Court's jurisdiction and to protect its judgment.

13.     By incorporating the Agreement and its terms herein, the Court determines that this Final Approval Order complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

14.     The Court approves Class Counsel's application for $11,992,500, which is 30% of the Settlement Amount, in attorneys' fees and costs, and incentive awards for plaintiffs in the amount of $5,000 per each of the two Class Representatives.


**IT IS SO ORDERED.**

Dated: _____          _____

                                                        The Honorable James F. Holderman

[PROPOSED] FINAL ORDER OF DISMISSAL
Case No. 1:14-cv-190

LA 51759235v1