**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL WILKINS and KENNETH MILLS, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>HSBC BANK NEVADA, N.A. and HSBC CARD SERVICES, INC.,<br><br>   Defendants. | No. 1:14-cv-190 |

**CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND FOR
SERVICE AWARDS TO THE CLASS REPRESENTATIVES**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1
II. BACKGROUND .................................................................................................. 1
    A. The Settlement. .......................................................................................... 1
    B. Class Counsel Undertook Considerable Risk in Prosecuting This Action. ......................................................................................................... 2
    C. The Quality And Amount Of Work Performed By Class counsel ............. 2
    D. Class counsel's Fee And Cost Request ...................................................... 4
III. THE SEVENTH CIRCUIT REQUIRES AN AWARD OF THE MARKET PRICE FOR LEGAL SERVICES IN COMMON FUND SETTLENTS ...................................................................................................... 5
IV. ARGUMENT ....................................................................................................... 6
    A. Class Counsel's Requested Fee Award Is Reasonable. ............................. 6
        1. 30% Of The Common Fund Is A Reasonable Market Price .......... 7
        2. The Requested Fee Reflects The Market Price For Legal Services. ......................................................................................... 10
            a. Class Counsel's Risk Of Nonpayment Supports the Requested Fee. ................................................................. 10
            b. The Quality Of Class Counsel's Performance Supports the Requested Fee. ............................................ 12
            c. The Amount Of Work Invested By Class counsel Supports The Requested Fee. ........................................... 13
            d. The Stakes Of The Case Support the Requested Fee. ....... 13
        3. The Named Plaintiffs' Service Awards Are Reasonable. ............. 14
V. CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Accounting Outsourcing, LLC. v Verizon Wireless,*
    2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) ............................................................... 8

*Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*,
    2012 U.S. Dist. LEXIS 25265
    (N.D. Ill. Feb. 28, 2012) ................................................................................................... 14

*Americana Art China, Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) ............................................................................................. 5

*Beesley v. Int'l Paper Co.,*
    2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) ..................................................... 8

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ........................................................................................................... 5

*City of Greenville v. Syngenta Crop Prot., Inc.,*
    904 F. Supp. 2d 902 (S.D. Ill. 2012) ................................................................................. 8

*Cooper v. IBM Pers. Pension Plan*,
    2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005) .................................................... 6

*Elkins v. Medco Health Solutions, Inc.,*
    2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) ................................................ 11

*George v. Kraft Foods Global, Inc.,*
    2012 U.S. Dist. LEXIS 166816 (N.D. Ill. June 26, 2012) ...................................... 6, 8, 14

*Greene v. DirecTV, Inc.,*
    2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) ................................................. 11

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................................................... 6

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    792 F. Supp. 2d 1028 (N.D. Ill. 2011) ............................................................................. 11

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................................................................ 6

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
    2011 U.S. Dist. LEXIS 157910 (N.D. Ill. Nov. 30, 2011) ......................................... 6, 7, 8

*In re Ready-Mixed Concrete Antitrust Litig.,*
    2009 U.S. Dist. LEXIS 132343 (S.D. Ind. Mar. 31, 2009) .......................................... 8, 13

*In re Sw. Airlines Voucher Litig.*,
 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Aug. 26, 2013) .............................................. 14

*In re Synthroid Mktg. Litig.*,
 264 F.3d 712 (7th Cir. 2001) ..................................................................................... 5, 10

*Jamison v. First Credit Servs.*,
 290 F.R.D. 92 (N.D. Ill. 2013) ......................................................................................... 11

*Kirchoff v. Flynn*,
 786 F. 2d 320 (7th Cir. 1986) ........................................................................................... 9

*Locklear Elec., Inc. v. Norma L. Lay*,
 No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010) ..................................................................... 8

*Mangone v. First USA Bank,*
 206 F.R.D. 222 (S.D. Ill. 2001) .................................................................................... 6, 9

*McDaniel v. Qwest Commc'ns. Corp.*,
 2011 U.S. Dist. LEXIS 154591 (N.D. Ill. Aug. 29, 2011) ................................................ 8

*Meyenburg v. Exxon Mobil Corp.*,
 2006 U.S. Dist. LEXIS 52962 (S.D. Ill. July 31, 2006) ................................................... 9

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001) .................................................... 9

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) ................................................ 11

*Schulte v. Fifth Third Bank*,
 805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................... 5, 8, 12, 14

*Silverman v. Motorola, Inc.*,
 2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012) ........................................ 6, 10, 13

*Sutton v. Bernard*,
 504 F.3d 688 (7th Cir. 2007) ..................................................................................... 5, 10

*Taubenfeld v. AON Corp.*,
 415 F.3d 597 (7th Cir. 2005) ....................................................................................... 7, 8

*Will v. Gen. Dynamics Corp.*,
 2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) ................................................ 9

*Williams v. Gen. Elec. Capital Auto Lease*,
 1995 U.S. Dist. LEXIS 19179 (N.D. Ill. Dec. 20, 1995) ................................................. 6

**I.     INTRODUCTION**

On July 25, 2014, this Court preliminarily approved a proposed $39,975,000 class action settlement between Plaintiffs, individually and on behalf of all others similarly situated, and Defendants HSBC Bank Nevada, N.A., and HSBC Bank Card Services, Inc. After two years of difficult and contested litigation,[1] Class counsel respectfully submit that the Settlement represents an excellent result for Class members. Class counsel respectfully move the Court for an award of attorneys' fees of $11,992,500, which represents 30% of the common fund, inclusive of costs. As detailed below, Class counsel's fee request is well within the reasonable market price for contingent legal fees in complex class litigation, and reasonable and appropriate given the attorneys' fees consistently awarded in similar cases. In addition, the fee request is reasonable in light of the risks presented by this case, the quality and amount of work performed by Class counsel, the high stakes presented, and the results achieved in this complex class action.

Class counsel also respectfully move the Court for an award of modest service awards to each of the two Named Plaintiffs in the amount of $5,000 each, for their work on behalf of the Class. Such awards are routine and proper.

**II.    BACKGROUND**

    **A.     The Settlement.**

The details of the Settlement are contained in the Agreement signed by the parties, a copy of which was attached as Exhibit A to Plaintiffs' Amended Memorandum in Support of Motion for Preliminary Approval (Dkt. No. 53). The Settlement requires HSBC to pay $39,975,000 into a common settlement fund for the benefit of Class members with 10,191,936 unique cell phone numbers. Agreement §§ II.W, III.C. Class counsel believe that this is the second-largest cash

---

[1] Notwithstanding the 2014 case number, this litigation originally commenced on July 20, 2012 in the Northern District of California in *Mills et al v. HSBC Bank Nevada, N.A. et al* (3:12-cv-04010-JST) and, as detailed in Plaintiffs' Amended Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement, Dkt. No. 53, involved contested litigation prior to resolution through this case.

sum paid by a defendant in the 22-year history of the TCPA.[2]  Because HSBC no longer owns the loan portfolios with respect to which the calls were made—i.e. it is no longer making collection calls on these loans—there is no injunctive relief component to this settlement.  On July 25, 2014, this Court entered a preliminary approval order finding that "the Agreement is fair, reasonable, and adequate, and within the range of possible approval." (*See* Dkt. No. 59, ¶4.)[3]

      **B.**      <u>**Class Counsel Undertook Considerable Risk in Prosecuting This Action**</u>.

Class counsel undertook representation of this matter on a pure contingency-fee basis; as a result, they shouldered the risk of expending substantial costs and time without any guarantee off recovery in the event of an adverse judgment.[4]  Litigating and resolving this matter has required Class counsel to expend time on this litigation and money that could have been spent on other matters.  (*See id.*)

      **C.**      <u>**The Quality And Amount Of Work Performed By Class counsel**</u>

The Settlement is the result of two years of hard-fought litigation.

Plaintiff Kenneth Mills originally filed a class action complaint against HSBC in the United States District Court, Northern District of California, Case No. 12-cv-04010-JST, on July 30, 2012.

---

[2] The Settlement obtained in *In re Capital One Telephone Consumer Protection Act Litigation,* Master Dkt. No. 12-cv-10064, MDL No. 2416 (N.D. Ill.), also pending before Your Honor and achieved by many of the same counsel representing the Plaintiffs and the Class here, is believed to be the largest cash Settlement ever obtained in a TCPA class action.

[3] As requested by the Court, Plaintiffs have analyzed in further detail the number of calls placed to Class members in a joint filing with HSBC, filed concurrently herewith.  (*See* Dkt. No. 59, ¶27.)

[4] Declaration of Jonathan D. Selbin in Support of Motion for Attorneys' Fees and Service Awards ("Selbin Decl."), ¶¶ 15-17; Selbin Decl. Ex. B: Co-counsels' Declarations (Declaration of Alexander H. Burke in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 11-12; Declaration of Abbas Kazerounian in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 12-14; Declaration of Douglas J. Campion in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 11-13; Declaration of James R. Schrier in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 8-10; Declaration of Joshua B. Swigart in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 10-12; Declaration of Beth E. Terrell in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 16-18; Declaration of Matthew R. Wilson in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 8-10.)

On Plaintiff Mills' behalf, Class counsel propounded written discovery requesting (1) HSBC's policies and practices for making autodialed and/or prerecorded calls to cell phones, including how HSBC obtains consent to make such calls; (2) call data that would reflect the identities of persons to whom HSBC made autodialed and/or prerecorded calls to cell phones; (3) data showing whether HSBC obtained consent to make the calls to cell phones; and (4) information relating to whether HSBC "knowingly" or "willfully" violated the TCPA. HSBC resisted providing much of the information that Plaintiff Mills requested. After a series of contentious meet-and-confers, the parties engaged in motion practice to resolve their ongoing discovery disputes, including through the joint discovery dispute letter process required by the *Mills* court. The parties reached an agreement for the production of class-wide discovery responsive to each of Plaintiff Mills' requests only after Magistrate Judge Joseph P. Spero required the parties to meet and confer in person in his chambers. Following this lengthy process, HSBC served supplemental discovery and produced thousands of pages of documents, which Class counsel reviewed.

Discovery efforts were particularly complicated because HSBC sold its credit card portfolio at issue, and the underlying infrastructure, to non-party Capital One Financial Corporation ("Capital One"). Because HSBC did not possess data and documents (or access to employees) that resided with Capital One after the sale, Class counsel were required to expend additional time and work coordinating with Capital One to retrieve responsive documents. Plaintiffs reluctantly agreed to extend the class certification deadlines to permit full production. Only two weeks before the class certification deadline, the parties agreed to mediate this lawsuit before the Honorable Edward A. Infante (Ret.) of JAMS. At the time the parties agreed to mediation, Plaintiff Mills' counsel had already drafted a motion for class certification.

The pre-mediation litigation was only the beginning of Class counsel's efforts. Prior to the parties' mediation, Class counsel obtained from HSBC a copy of the databases containing HSBC's call data. Class counsel analyzed these databases and also retained and worked with an expert in automated telephone dialing systems to further analyze the databases. (Selbin Decl. ¶

20.) Class counsel served additional interrogatories aimed at confirming the number of Class Members taking a 30(b)(6) deposition to confirm the accuracy of the data and information obtained.

The parties' settlement negotiations were highly adversarial, non-collusive, and at arm's length. The parties agreed to a Settlement only after the mediation concluded and Judge Infante made a mediator's proposal.

Even after executing the Settlement, Class counsel continued to work diligently on behalf of Class members. Class counsel have fielded hundreds of inquiries from Class members, answering any questions they have about the Settlement and assisting them in filing claims forms. (Selbin Decl. ¶ 26.) Class counsel anticipate that their work with Class members will continue through, and beyond, the final approval hearing.

### D. Class counsel's Fee And Cost Request

Pursuant to the Settlement Agreement, Class counsel seek a total award of attorneys' fees of $11,992,500, or 30% of the Settlement Fund of $39,975,000. Class counsel do not seek additional payment for any of their expenses on top of this requested award, but rather are seeking those expenses as part of the total amount requested. As a result, Class counsel seek attorneys' fees amounting to slightly less than 30% of the Settlement Fund.

Class counsel negotiated with HSBC to reach an agreed-upon fee amount that they regarded as reasonable based on, *inter alia*, the benefits achieved for the Class and applicable legal principles, and did so only *after* they reached agreement on the other key deal terms.[5] Like the Settlement itself, the parties agreed to the fee amount under the auspices and with the assistance of an experienced, well-respected former judge and mediator, Judge Edward A. Infante.[6] The fee amount is consistent with Plaintiff Mills' retainer agreement with Class

---

[5] Selbin Decl., ¶ 24.
[6] *Id.* ¶ 23.

counsel, in which Mr. Mills agreed that Class counsel may seek 33.33% to 40% of any common fund they obtain as fees.[7]

## III. THE SEVENTH CIRCUIT REQUIRES AN AWARD OF THE MARKET PRICE FOR LEGAL SERVICES IN COMMON FUND SETTLENTS

The Seventh Circuit has instructed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases). Compensation also depends "on the quality of [counsel's] performance, . . . in part on the amount of work necessary to resolve the litigation, and in part on . . . the stakes of the case." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 721).

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("Once a settlement has been reached in a class action, the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.")

In common fund cases, as opposed to cases analyzing fees under a fee-shifting provision, courts within the Seventh Circuit have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. S*ee, e.g.*, *Americana Art China, Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, as this Court has held, "[t]he approach favored in the Seventh

---

[7] Plaintiff Wilkins' attorney-client agreement simply states that Class counsel will recover their fees from the common fund, but does not mention a specific percentage.

Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09 C 7670; MDL 2103, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011) (Holderman, C.J.) (citing *Williams v. Gen. Elec. Capital Auto Lease*, No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179, at *29 (N.D. Ill. Dec. 20, 1995) (Lefkow, J.) (citations omitted)); *see also*, *e.g.*, *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477, at *14-15 (N.D. Ill. May 7, 2012) (same); *George v. Kraft Foods Global, Inc.,* Case Nos. 1:08-cv-3799; 1:07-cv-1713, 2012 U.S. Dist. LEXIS 166816, at *7 (N.D. Ill. June 26, 2012); *Cooper v. IBM Pers. Pension Plan*, Civ. No. 99-829, 2005 U.S. Dist. LEXIS 17071, at *12 (S.D. Ill. Aug. 16, 2005) (same).

The United States Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation to verify that the requested fees are not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms. *See, e.g., Mangone v. First USA Bank,* 206 F.R.D. 222, 226 (S.D. Ill. 2001).

## IV. ARGUMENT

### A. Class Counsel's Requested Fee Award Is Reasonable.

Class counsel's request for fees is reasonable because it represents the market price for the legal services provided by Class counsel. *See In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09 C 7670; MDL 2103, 2011 U.S. Dist. LEXIS 157910, at *19 (N.D. Ill. Nov. 30, 2011) (Holderman, C.J.); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568, 572 (7th Cir. 1992) ("It is not the function of judges in fee litigation to determine the equivalent of the medieval just price . . ." and counsel is "entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

### 1. 30% Of The Common Fund Is A Reasonable Market Price.

Both the Seventh Circuit and this Court have explicitly "recognized the appropriateness of relying on analogous class action settlements to determine the reasonableness of attorneys' fees." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *14-15 (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (internal quotations omitted).

Here, the requested 30% fee is *less than* the attorneys' fees consistently awarded in TCPA class litigation in this district, which is one-third of the fund.  (*See* Selbin Decl. Ex. C: *Gehrich v. Chase Bank, USA, N.A.*, No. 1:12-cv-05510 (N.D. Ill. Aug. 12, 2014) (preliminarily approving attorneys' fees and costs up to $11,000,000 (Feinerman, J.) ( Dkt. No. 117) (one-third of the Settlement Fund after subtracting the Dedicated Cy Pres Distribution); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear*, *Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (same); *Saf-T-Gard Int'l, Inc., v. Seiko Corp. of Am.*, No. 1:09-cv-00776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (same); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D.

Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).[8]

Class counsel's request for a 30% fee award (less than 30% when accounting for absorption of costs) is also ***less than*** the 33.33% reasonable market price consistently awarded in other common fund in non-TCPA cases within the Seventh Circuit. *See, e.g., Beesley v. Int'l Paper Co.,* No: 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037, at *7-10 (S.D. Ill. Jan. 31, 2014) (awarding $10,000,000 fee (and over $1.5 million in costs) constituting one-third of the total common fund); *City of Greenville v. Syngenta Crop Prot., Inc.,* 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving one-third fee of over $32 million and noting that "the market price for fee awards is the amount of court-awarded attorneys' fees in comparable cases.") (citing *Taubenfeld,* 415 F.3d at 599); *George v. Kraft Foods Global, Inc.,* Case Nos. 1:08-cv-3799; 1:07-cv-1713, 2012 U.S. Dist. LEXIS 166816, at *8 (N.D. Ill. June 26, 2012) ("'[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the Class counsel accepts a substantial risk of nonpayment."); *McDaniel v. Qwest Commc'ns. Corp.*, Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11-12 (N.D. Ill. Aug. 29, 2011) ("As decisions of the Seventh Circuit have confirmed, the real-world market range for contingent fee cases is 33% to 40%."); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *18-19 (citing cases and describing a 32.7% common fund fee as "well within the market rate and facially reasonable."); *Schulte*, 805 F. Supp. 2d at 598 ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range."); *In re Ready-Mixed Concrete Antitrust Litig.,* No. 1:05:CV-00979, 2009 U.S. Dist. LEXIS 132343, at *34 (S.D. Ind. Mar. 31, 2009) ("[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered");

---

[8] Courts in other jurisdictions have awarded a similar percentage of the common fund in TCPA settlements. *See, e.g., Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. v Verizon Wireless,* No. 03-CV-161, 2007 U.S. Dist. LEXIS 97153, at *6-7 (M.D. La. 2007) (awarding in excess of 35% of the common fund plus costs).

*Meyenburg v. Exxon Mobil Corp.*, Case No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 52962, at *5 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Will v. Gen. Dynamics Corp.*, Civ. No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *9 (S.D. Ill. Nov. 22, 2010) (finding that "the market for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing that "a one-third fee is consistent with the market rate.").[9]

The customary fee arrangement with private litigants and their attorneys in this Circuit is 33% to 40% of the total recovery. *See Kirchoff v. Flynn,* 786 F. 2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,* Case No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, at *11 (N.D. Ill. Dec. 6, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding Class counsel the requested one-third of the common fund) (citation omitted). Indeed, this 33.33% to 40% range is precisely the range of fees in Plaintiff Mills' signed retainer agreement. Under these circumstances, the Court should give weight to the judgment of the parties and their counsel regarding reasonable fees. *See Stumpf v. PYOD, LLC*, 12 C 4688, 2013 U.S. Dist. LEXIS 165854, at *5-6 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone,* 206 F.R.D. at 226 (requiring weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms). As shown above, the parties' private, arm's length negotiation has yielded a result fully consistent with the market for legal fees.

---

[9] In addition, this Court recently preliminarily approved a 33% fee request in *Harris v. Comscore, Inc. See* Selbin Decl. Ex. D: No. 1:11-cv-05807 (N.D. Ill. June 6, 2014) (Dkt. No. 353).

## 2. The Requested Fee Reflects The Market Price For Legal Services.

In addition to analyzing the market price for legal services from analogous cases, courts within the Seventh Circuit may examine whether "'the risk of nonpayment a firm agrees to bear, . . . the quality of its performance, . . . the amount of work necessary to resolve the litigation, and . . . the stakes of the case.'" *See Sutton*, 504 F.3d at 691; *Silverman v. Motorola, Inc.*, 07 Civ. 4507, 2012 U.S. Dist. LEXIS 63477, at *4 (N.D. Ill. May 7, 2012) (noting that compensation may depend "on the quality of [counsel's] performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.") (citing *Synthroid*, 264 F.3d at 721.) (citation omitted). Each factor supports the requested fee.

### a. Class Counsel's Risk Of Nonpayment Supports the Requested Fee.

Prosecution of this action has involved significant financial risk. As noted above, Class counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery. (*See* Selbin Decl. ¶ 15-17.) Class counsel litigated this case aggressively for almost two years to the eve of class certification without even a hint that it might settle. (*See* Selbin Decl. ¶ 23.)

The risk of further protracted litigation — and ultimately of no recovery at all — was particularly high in this case, given various defenses potentially available to HSBC. The factual defense of consent loomed large, as HSBC argues that the majority of Class Members provided their cell phone numbers either on original credit applications or through subsequent dealings with HSBC. The parties disagree whether the TCPA allows prior express consent for calls to a cell phone to be given at any time after origination of a credit relationship. Plaintiffs assert, based on certain rulings from the Federal Communications Commission (the "FCC"), that consent may be given only at the time the line of credit was established. HSBC maintains that Plaintiffs' construction of the rulings is incorrect. In HSBC's view, the FCC could not have intended this construction in the context of credit relationships that last for many years. HSBC instead believes that the FCC rulings state that prior express consent can be given at any point in time during a credit relationship. To recover under the TCPA, Plaintiffs would need to convince

the Court to adopt their view that the FCC has clarified that "prior express consent" can only being given during "the transaction that resulted in the debt owed"; *i.e.* during the opening of Class Members' HSBC accounts. The Court could instead have adopted HSBC's view that consent may be given at any time and in any manner before the call was placed.

Plaintiffs also would face hurdles at class certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs*., 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.,* Case No. 12 C 3671, 2012 U.S. Dist. LEXIS 174222, at *14-15 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding that no evidence supported the view that issues of consent would be individualized).

Finally, there is the risk of losing a jury trial. And, even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal. Any potential statutory recovery in this case would likely be impossible to recover as a factual matter due in part to the fact that HSBC would have every incentive to litigate appeals of any such judgment as far as possible over many years. The Settlement provides substantial relief to Class Members without further delay.

Plaintiffs believe that they would have prevailed on these issues, bur concede that this is by no means assured, and that litigating these issues would have risked the significant additional expenditure of time, money, and resources for which Class counsel would not be compensated should it lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011) (finding Class counsel incurred significant risk of nonpayment where, among other reasons, Class counsel would have to overcome case dispositive defenses and certify a class); *see also Elkins v. Medco Health Solutions, Inc.,* Case No. 4:12CV2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) (granting summary judgment against Plaintiff in TCPA class case); *Jamison*, 290 F.R.D. at 102-09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Greene v. DirecTV, Inc. ,* 10 C 117, 2010 U.S. Dist. LEXIS

118270 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against Plaintiff in TCPA class case).

### b. The Quality Of Class Counsel's Performance Supports the Requested Fee.

Second, the fee award reasonably reflects the "market price" given the quality of Class counsel's performance. By applying their skills and experience in class action litigation generally, and particularly in TCPA litigation, Class counsel achieved an outstanding result in the face of a resolute defense. The settlement requires HSBC to pay $39,975,000 into a Settlement Fund, out of which all eligible Class Members will receive a pro rata share. The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to Class Members—no amount of the Settlement Fund, not a penny, will revert to HSBC. Plaintiffs conservatively estimate that each eligible Class member will receive approximately $20-40 per call. This is a good result for Class Members, particularly because TCPA damages are purely statutory damages in that Class Members have not suffered any significant out-of-pocket losses or other economic harm.

The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, on the brink of class certification briefing, after arm's length negotiations presided by an experienced mediator and former judge, and via a mediator's proposal made after the mediation had concluded. Further, the Settlement compares favorably to other TCPA class actions settlements. Indeed, courts have approved other TCPA class action settlements involving similarly large proposed classes that achieved much smaller pro rata monetary recoveries. The settlement fund is one of the largest ever achieved in a TCPA action and is the direct result of the dedication, skill, and experience of Class counsel. *See, e.g., Schulte*, 805 F. Supp. 2d at 598 ("[T]he quality of Class counsel's performance in th[e] litigation favors approval of the fees requested. Class counsel have navigated a complicated case and have negotiated a Settlement Agreement that provides significant benefits to the Class Members.")

1191423.4

- 12 -

### c. The Amount Of Work Invested By Class counsel Supports The Requested Fee.

Class counsel have devoted significant time to investigating, litigating, and settling this case and spent considerable outlays of time and money by, among other things, (1) investigating these actions; (2) conducting legal research; (3) conducting discovery, including a 30(b)(6) depositions of an HSBC employee; (4) negotiating the Settlement over many months, including by participating in a full-day mediation; (5) reviewing confirmatory discovery and data; (6) administering the Settlement; and (7) responding to Class Member inquiries. (*See* Selbin Decl. ¶¶ 18-26.)

Overall, Class counsel's efforts have been substantial and the amount of work supports the requested fee. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2009 U.S. Dist. LEXIS 132343, at *33 (approving one-third fee where counsel engaged in the amount of work necessary to resolve the litigation).[10]

### d. The Stakes Of The Case Support the Requested Fee.

This action involves millions of Class Members who allegedly received harassing, unlawful calls from HSBC. Although the TCPA provides for statutory damages, for most Class Members, the cost and risk of individual litigation is too daunting, and the costs to successfully prosecute even an individual action are so high, that a class action is realistically the only way that they would receive any relief. Those who wish to pursue such litigation can, of course, opt out of the class settlement. In light of the high number of class members who likely would not have received any relief without the assistance of Class counsel, the requested fee is reasonable. *See Silverman v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 63477, at *10-11 (granting requested fee award where "stakes of [a] complex securities fraud case were significant" and where counsel secured "what appears to be the third-largest settlement amount in a securities fraud class action in the Seventh Circuit.").

---

[10] Class counsel will, of course, provide the Court with a summary or detailed narrative of their work upon request.

### 3. The Named Plaintiffs' Service Awards Are Reasonable.

Service awards compensate named plaintiffs for work done on behalf of the class by attempting to account for financial, personal, or reputational risks associated with litigation, and encourage plaintiffs to step forward on behalf of unnamed class members. Modest incentive awards, such as those requests here, promote the public policy goals described above. The requested service awards of $5,000 for each of the two Names Plaintiffs are well justified and supported by case law in this District.

In addition to lending their names to this matter, and thus subjecting themselves to public attention, the Plaintiffs were actively engaged in this Action. Among other things, they (1) provided information to Class counsel for the complaints and other filings; (2) reviewed pleadings and other documents including the complaints; (3) communicated on a regular basis with Class counsel and kept themselves informed of progress in the litigation and settlement negotiations; and (4) reviewed and approved the proposed settlements. Their dedication to these actions is notable, particularly given the relatively modest size of their personal financial stake in this case. In such circumstances, a modest award is appropriate. S*ee, e.g.*, *Schulte*, 805 F. Supp. 2d at 601-02 ("Class Representative's willingness to publically place their names on this suit and open themselves up to scrutiny and attention is certainly worth some remuneration.").

Moreover, the amount requested here, $5,000 for each Named Plaintiff (totaling $10,000, or .00025% of the Settlement Fund), is substantially lower than amounts frequently approved by federal courts in Illinois and elsewhere. *See, e.g., Cook,* 142 F.3d at 1016 (upholding award of $25,000 to class representative); *In re Sw. Airlines Voucher Litig.*, Case No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *32 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*, No. 07 CV 2898; No. 09 C 2026, 2012 U.S. Dist. LEXIS 25265, at *59 (N.D. Ill. Feb. 28, 2012) (a $25,000 incentive award is a reasonable one); *Kraft Foods Global, Inc.,* 2012 U.S. Dist. LEXIS 166816, at *8 (awarding

1191423.4

- 14 -

$15,000 each to four named plaintiffs). It is also in line with – and actually well below – many of the service awards frequently awarded in TCPA cases.[11]

Accordingly, Class counsel respectfully request that the Court approve service awards of $5,000 each to Plaintiffs Wilkins and Mills.

## V.     CONCLUSION

For the foregoing reasons, Class counsel respectfully request that the Court grant their motion and award Class counsel attorneys' fees of 30% of the settlement fund. Class counsel further requests that the Court approve the incentive awards of $5,000 each to Mr. Wilkins and Mr. Mills for a total of $10,000.

---

[11] *See* Selbin Decl. Ex. C: *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding a $5,000 and a $2,500 incentive award to the named plaintiffs); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding $20,000 incentive award to named plaintiff); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding named plaintiff a $25,000 incentive award); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving incentive awards of $30,00 each to two named plaintiffs); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (Dkt. No. 116) (awarding $9500 incentive payment to named plaintiff); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) ($25,000 incentive award to named plaintiff); *Saf-T-Gard Int'l, Inc., v. Seiko Corp. of Am.*, No. 1:09-cv-00776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (approving $12,000 incentive award to named plaintiff); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (awarding $9,500 incentive payment to named plaintiff); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) ($7,500 each awarded to two named plaintiffs); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (named plaintiff awarded $5,000 incentive award); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (awarding $9500 incentive payment to named plaintiff).

Dated: September 5, 2014          Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


By:    */s/ Jonathan D. Selbin*
            Jonathan D. Selbin

Jonathan D. Selbin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hutchinson
Nicole D. Sugnet
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile:  (415) 956-1008

Matthew R. Wilson
Michael Joseph Boyle, Jr.
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, IL 60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Beth E. Terrell
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 40
Seattle, WA 98103
Telephone:  (206) 816-6603
Facsimile:   (206) 350-3528

*Attorneys for Plaintiffs and the Proposed Class*