**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL WILKINS and KENNETH
MILLS, on behalf of himself and others
similarly situated,

        Plaintiff,

   v.

HSBC BANK NEVADA, N.A. and HSBC
CARD SERVICES, INC.,

        Defendants.

No.  1:14-cv-190

**<u>PLAINTIFFS' RESPONSE TO OBJECTIONS TO SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................1

II. The Overwhelmingly Positive Response to the Settlement Supports Final Approval. ..............................................................................................2

III. The Four Serial Objectors Lack Credibility................................................2

    A. Joseph Darrell Palmer is a Serial Objector Whom the California State Bar Found Guilty of Moral Turpitude for Submitting False Declarations in Support of Prior Objections to Settlements. ......................3

    B. Christopher Bandas, who Represents Kelly Casey and Antonia Carrasco, Regularly Files Frivolous Objections to Enrich Himself. ..........6

    C. Laura Fortman and her Attorneys, Jonathan Fortman, Steve Miller, and John Kress, are Serial Objectors who Object to Settlements for their Own Financial Gain. ...........................................................8

    D. Erich Neumann, an Attorney-Objector Representing Himself, is a Serial Objector. ...........................................................................9

IV. The Untimely Objections Filed by Richard Mastnardo and Mailed by Morgan Lord Should Not be Considered............................................9

V. All of the Objections Lack Merit and Should be Overruled.................................10

    A. The $39,975,000 Settlement Fund is an Excellent Result for Class Members. ................................................................................10

    B. Basing Class Members' Awards on the Precise Number of Calls Received Was Not Feasible. .....................................................14

    C. The Requested Attorney Fee Award is Well-Supported Under Established Law. .......................................................................14

        1. 30% of the Common Fund is *Less* Than the Typical Market Price in the Seventh Circuit. ...........................................14

        2. A Lodestar Crosscheck is Not Required or Warranted.................17

        3. The Risk Involved Supports the Fee Request. ...............................20

        4. It is Appropriate to Include Administrative Costs as Part of the Fund when Calculating Attorneys' Fees.................................21

        5. The Presence of a Clear Sailing Clause Does Not Warrant Reducing the Fee Award.........................................................21

    D. The Notice Provided to the Class was Exemplary....................................22

    E. The Class Release is Limited. ...................................................24

    F. The Remaining Objections Provide no Basis to Decline to Approve the Settlement...........................................................................24

VI. CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) .............................. 14

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) .................................... 12

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ...................................................................................................... 20

*Armstrong v. Board of School Directors*,
616 F.2d 305 (7th Cir. 1980) ...................................................................................................... 11

*Arnett v. Bank of America, N.A.*,
No. 11-cv-01372, Dkt. No. 274 (D. Or. Sept. 2, 2014) .............................................................. 9

*Arthur v. Sallie Mae, Inc.*,
No. 10-cv-00198-JLR, 2012 U.S. Dist. LEXIS 132061 (W.D. Wash. Sept. 17, 2012) .......... 13

*Arthur v. Sallie Mae, Inc.*,
No. C10-198JLR (W.D. Wash.) .................................................................................................... 4

*Barnes v. FleetBoston Fin. Corp.*,
No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) .......................... 3

*Beesley v. Int'l Paper Co.*,
No. 06-cv-703, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan 31, 2014) .................................. 19

*Bellows v. NCO Financial Systems, Inc.*,
No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273 (S.D. Cal. Jan 5, 2009) .................... 14

*Blessing v. Sirius Xm Radio, Inc.*,
507 Fed. Appx. 1 (2d Cir. 2012) .................................................................................................. 9

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................................... 21

*Brown v. DIRECTV, LLC*,
No. 12-cv-08382, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) .......................... 21

*Cayanan v. Citi Holdings, Inc.*,
928 F. Supp. 2d 1182 (S.D. Cal. 2013) ...................................................................................... 21

*Chapman v. First Index, Inc.*,
No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556 (N.D. Ill. March 4, 2014) .............................. 12

*City of Roseville Empls. Ret. Sys. v. Orloff*,
484 Fed. Appx. 138 (9th Cir. 2012) ............................................................................................ 5

*Delgado v. US Bankcorp*,
12-cv-10313, Dkt. No. 12 (C.D. Cal. Jan. 17, 2013) ................................................................ 21

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ...................................................................................................... 11

*Elkins v. Medco Health Solutions, Inc.*,
No. 12-cv-2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) ............................ 21

*Embry v. ACER Am. Corp.*,
No. C 09-01808, 2012 U.S. Dist. LEXIS 127813 (N.D. Cal. Aug. 29, 2012) .......................... 8

*Embry v. ACER Am. Corp.*,
  No. C 09-01808, 2012 U.S. Dist. LEXIS 78068 (N.D. Cal. June 5, 2012) .............................. 10

*Evans v. Aetna Inc.*,
  No. 13-cv-01039 (E.D. Wisc. Nov. 20, 2013) ......................................................................... 21

*G.M. Sign, Inc. v. Brinks Manufacturing Company*,
  No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084 (N.D. Ill. March 4, 2014) ................................ 12

*Garner v. State Farm*,
  No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ................... 16

*Gaskill v. Gordon*,
  942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd* 160 F.3d 361 (7th Cir. 1998) .......................... 18

*Gonzalez v. Citigroup, Inc.*,
  No. Civ. S-11-0795 LKK/GGH, 2011 U.S. Dist. LEXIS 135421 ........................................... 13

*Gonzalez v. J.C. Penney Co., Inc.*,
  No. 2:11-cv-00794-KJM-EFB, Dkt. No. 18 (E.D. Cal. Sept. 21, 2011) ................................. 13

*Gonzalez v. JP Morgan Chase*,
  No. 11-cv-00796-GEB-EFB, Dkt. No. 30 (E.D. Cal. Nov. 16, 2011) ..................................... 13

*Greene v. DirecTV, Inc.*,
  No. 10-C-117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) ................................ 21

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ................................................................................................... 19

*Harper v. Credit Control Servs.*,
  863 F. Supp. 2d 125 (D. Mass. 2012) ...................................................................................... 13

*Higginbotham v. Hollins*,
  No. 14-cv-2087, 2014 U.S. Dist. LEXIS 85584 (D. Kan. June 24, 2014) .............................. 12

*Hudson v. Sharp Healthcare*,
  No. 13-cv-1807, Dkt. No. 56 (S.D. Cal. June 25, 2014) .......................................................... 21

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  No. 11-md-02221, Dkt. No. 467 (E.D.N.Y. June 6, 2014) ........................................................ 9

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) .............................................................................................. 11

*In re Capital One Telephone Consumer Protection Act Litigation*,
  Master Dkt. No. 12-cv-10064, MDL No. 2416 (N.D. Ill.) ................................................ 1, 17

*In re Cathode Ray Tube Antitrust Litig.*,
  281 F.R.D. 531 (N.D. Cal. 2012) ............................................................................................... 7

*In re Comdisco Sec. Litig.*,
  150 F. Supp. 2d 943 (N.D. Ill. 2001) ...................................................................................... 19

*In re Continental Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ................................................................................................... 18

*In re Dell Sec. Litig.*,
  No. A-06-CV-726-SS, Dkt. No. 342 (W.D. Tex. Jan. 11, 2011) ............................................... 5

*In re Fesco Plastics Corp.*,
  996 F.2d 152 (7th Cir. 1993) ................................................................................................... 21

*In re GE Co. Secs. Litig.*,
998 F. Supp. 2d 145 (S.D.N.Y. 2014) ....................................................................... 8

*In re GIB LLC Cases*,
J.C.C.P. No. 4657 (Cal. Super. Ct.) ....................................................................... 5

*In re Groupon, Inc.*,
No. 11-md-2238, 2012 U.S. Dist. LEXIS 185750 (S.D. Cal. Sept. 28, 2012) .......... 8

*In re HP Inkjet Printer Litig.*,
No. 05-cv-3580, 2011 U.S. Dist. LEXIS 65199 (N.D. Cal. June 20, 2011).............. 10

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09-cv-1088, 2013 U.S. Dist. LEXIS 133413 (S.D. Cal. Sept. 17, 2013)......................... 7, 8

*In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*,
No. 09-cv-07670, Dkt. No. 112 (N.D. Ill. Nov. 30, 2011) .................................. 10, 21

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
No. 09 C 7670; MDL 2103, 2011 U.S. Dist. LEXIS 157910 (N.D. Ill. Nov. 30, 2011).......... 19

*In re Law Office of Jonathan E. Fortman, LLC*,
No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903 (E.D. Mo. Feb. 1, 2013)............................ 3

*In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.*,
No. 08-md-01999, Dkt. Nos. 481 & 486 (E.D. Wis.)..................................................... 9

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
MDL No. 1532, 2011 U.S. Dist. LEXIS 40843 (D. Me. Apr. 13, 2011) .................. 8

*In re NVIDIA GPU Litig.*,
539 Fed. Appx. 822 (9th Cir. 2013)....................................................................... 8

*In re Oil Spill by Oil Rig Deepwater Horizon*,
MDL 2179, 2013 U.S. Dist. LEXIS 4595 (E.D. La. Jan. 11, 2013).......................... 5

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
No. 05-md-01720, Dkt. No. 3670 (E.D.N.Y. June 5, 2013)................................... 10

*In re Pre-Filled Propone Tank Marketing & Sales Prac. Litig.*,
No. 09-md-02086, Dkt. No. 311 (W.D. Mo. Nov. 20, 2012) ................................... 9

*In re Southwest Airlines Voucher Litig.*,
No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ................ 2

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ....................................................................... 15, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-md-1827, Dkt. Nos. 7807 & 9096 (N.D. Cal.) .............................................. 8

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
2011 U.S. Dist. LEXIS 154288 (N.D. Cal. Dec. 27, 2011) ...................................... 5

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods.
Liab. Litig.*,
No. 10-ml-2151, Dkt. No. 3602 (C.D. Cal. May 10, 2013)...................................... 9

*In re Uponor Inc. F1807 Plumbing Fittings*,
No.11-2247, Dkt. No. 132 (D. Minn.) ....................................................................... 5

*In re VMS Ltd. Pshp. Sec. Litig.*,
No. 90 C 2412, 1995 U.S. Dist. LEXIS 8079 (N.D. Ill. 1995)................................ 10

*In re Wal-Mart Wage and Hour Emp't Practices Litig.*,
  No. 06-cv-00225, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010) ................................ 7

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ..................................................................... 2, 11

*Kardonick v. JPMorgan Chase & Co.*,
  No. 10-cv-23235, Dkt. Nos. 354 & 450 (S.D. Fla.) .................................................... 8

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ........................... 16

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO (N.D. Cal. July 11, 2014) ..................................................... 6

*Maleksaeedi v. Am. Express Centurion Bank*,
  No. 11-cv-790, Dkt. No. 32 (S.D. Cal., Feb. 12, 2013) ........................................... 21

*Martin v. Caterpillar Inc.*,
  No. 09-cv-1009, 2010 U.S. Dist. LEXIS 145111 (C.D. Ill. Sept. 10, 2010) .......................... 18

*Martin v. Wells Fargo Bank, N.A.*,
  12-cv-06030, Dkt. No. 94 (N.D. Cal. Apr. 4, 2014) ................................................ 21

*McDaniel v. Qwest Communs. Corp.*,
  No. 5 C 1008, 2011 U.S. Dist. LEXIS 154591 (N.D. Ill. Aug. 29, 2011) ............................. 18

*Mills v. HSBC Bank Nevada, N.A.*,
  No. 12-cv-04010 (N.D. Cal.) ....................................................................... 19

*Moore v. Chase Bank USA, N.A.*,
  No. 12-cv-10316, Dkt. No. 10 (C.D. Cal. Jan. 9, 2013) ........................................... 21

*Pappas v. Naked Juice Co.*,
  No. 11-cv-08276-JAK-PLA (C.D. Cal. Jan. 2, 2014) ................................................. 6

*Pavlik v. FDIC*,
  No. 10 C 816, 2011 U.S. Dist. LEXIS 126016 (N.D. Ill. Nov. 1, 2011) ............................. 15

*Poertner v. The Gillette Co.*,
  No. 12-cv-00803, Dkt. No. 127 (M.D. Fla. Feb. 27, 2014) ......................................... 10

*Redman v. Radioshack Corp.*,
  No. 14-1470, 2014 U.S. App. LEXIS 18181 (7th Cir. Sept. 19, 2014) ........................... 21, 22

*Rose v. Bank of America Corp.*,
  No. 11-cv-02390, Dkt. No. 84 (N.D. Cal. Mar. 31, 2014) ................................... 10, 13, 19

*Salina v. NCO Fin. Syst., Inc.*,
  No. 10-7496, Dkt. No. 44 (E.D. Pa. June 25, 2012) ................................................ 13

*Savanna Group, Inc. v. Trynex, Inc.*,
  No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013) ............................. 12

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................. 11

*Skelton v. General Motors Corp.*,
  860 F.2d 250 (7th Cir. 1988) ..................................................................... 19

*Steinfeld v. Discover Fin. Servs.*,
  No. C 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014) ....................................... 13, 20

*Steinhoff v. Star Tribune Media Co., LLC*,
　No. 13-cv-1750, 2014 U.S. Dist. LEXIS 38293 (D. Minn. Mar. 24, 2014) ............................ 21

*Swedish Hosp. Corp. v. Shalala*,
　1 F.3d 1261 (D.C. Cir. 1993) ................................................................................................. 18

*Taubenfeld v. Aon Corp.*,
　415 F.3d 597 (7th Cir. 2005) ................................................................................................. 15

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
　No. 02-cv-1109, 2004 U.S. Dist. LEXIS 6363 (S.D. Ill. Mar. 19, 2004) ................................ 15

*The A.M.A., et al. v. Metropolitan Life, et al.*,
　00-cv-02800, Dkt. Nos. 462 & 564 (S.D.N.Y.) ........................................................................ 8

*Vollmer v. Selden*,
　350 F.3d 656 (7th Cir. 2003) ................................................................................................... 3

*Vought v. Bank of Am., N.A.*,
　901 F. Supp. 2d 1071 (C.D. Ill. 2012) ................................................................................... 22

*Warnick v. Dish Network Corp.*,
　No. 11-cv-00615-MSK-CBS, Dkt. No. 14 (D. Colo. May 20, 2011) ...................................... 13

*Will v. Gen. Dynamics Corp.*,
　No. 06-698, 2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) ................................... 19

*Williams v. Gen. Elec. Capital Auto Lease*,
　No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179 (N.D. Ill. Dec. 20, 1995) ............................... 19

## **TREATISES**

Michael O'Rielly, FCC Commissioner, <u>TCPA: It is Time to Provide Clarity</u>, FCC Blog
　(Mar. 25, 2014) .......................................................................................................................12

Newberg on Class Actions
　§ 14:6 (4th Ed. 2002) ..............................................................................................................18

I.      **INTRODUCTION**

After thoroughly evaluating these claims through months of disputed discovery efforts and engaging in hard-fought settlement negotiations, including a full-day mediation before the Honorable Edward A. Infante (Ret.) and extensive follow up discussions, Class Counsel negotiated a Settlement with Defendants HSBC Finance Corporation, successor by merger to HSBC Bank Nevada, N.A. and HSBC Card Services Inc. (together, "HSBC"), under which HSBC will pay $39,975,000 in cash to non-reversionary Settlement Fund.  Upon approval, the net proceeds of the Settlement Fund will immediately be distributed *pro rata* to every claimant; no money will revert back to HSBC.  The Settlement is a great result, particularly in light of serious litigation risks.

Of the approximately 9 million Class Members,[1] only nine of them timely objected to the settlement.[2]  Such an infinitesimal number, representing only 0.000001% of the class, demonstrates that the overwhelming majority of the Settlement Class approve of the Settlement, indicating that the Settlement is fair, reasonable, and adequate.  Moreover, half of these objections were put forth by counsel known to be "professional" objectors, who lack credibility.  These objectors have raised the ire of federal courts, including this Court, for playing no positive role in class action litigation and contributing no benefit to class members.  It comes as no surprise, then, that the objections submitted by the four professional objectors lack merit.  They are riddled with misunderstandings of the Settlement Agreement and basic class action jurisprudence.  In their efforts to shoot first and aim later by making boilerplate objections that

---

[1] Plaintiffs' Motion for Preliminary Approval originally estimated the Class size at 10,191,936, as this was based on the number of unique cell phone numbers to which HSBC made calls. However, after receiving the data regarding these cell phone numbers and removing duplicate records, the Class size is now more accurately estimated to be approximately 9,065,262 persons. *See* Dkt. No. 71-1, ¶ 16.

[2] Supplemental Declaration of Lael Dowd Concerning Claims, Opt-Outs, and Objections ("Dowd Decl."), ¶ 4.  For the purpose of this Response, Plaintiffs treat the three *timely* objections that were not filed with the Court—as required by the Settlement Agreement—as valid objections.  Plaintiffs provide the Court herewith the previously unfiled objections, including the objection of Morgan Lord that was both late and unfiled, by attaching them as Exhibit A to the Declaration of Jonathan D. Selbin in Support of Final Approval ("Selbin Decl.").

do not apply to *this* Settlement, the professional objectors ignore the fact that Class Counsel obtained an excellent result for the Class despite the very real risks of facing an adverse ruling at class certification or on the merits. The remaining objectors fail to state any valid reason for declining to approve the settlement as fair, reasonable, and adequate.

Plaintiffs respectfully submit that each objection should be overruled and request that the Court to grant final approval of the Settlement.

## II.     The Overwhelmingly Positive Response to the Settlement Supports Final Approval.

Class Members' reaction to a proposed settlement is a factor in determining whether the settlement is fair, adequate, and reasonable. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Courts often infer that a settlement is fair, adequate, and reasonable when few class members object to it. *See, e.g., Isby* 75 F.3d at 1200 (affirming final approval of settlement where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

Here, Class Members' response has been overwhelmingly positive. Only nine of the over 9 million class members timely objected, representing approximately 0.000001% of the Class.[3] And, only 27 timely opted out, representing approximately 0.000003% of the Class.[4] Particularly given the excellent class notice program, upon which Class Counsel insisted, these scant numbers demonstrate broad, class-wide support for the Settlement, especially when combined with the much larger numbers of claims that continue to be made.[5]

## III.    The Four Serial Objectors Lack Credibility.

Class Counsel recognize that objectors can provide genuine assistance to the parties, the Court, and class members by identifying problems in a proposed settlement. At times, however, "serial" or "professional" objectors or their counsel file objections either to advance their own

---

[3] Dowd Decl., ¶ 4.
[4] *Id.*, ¶ 3.
[5] *See id.*, ¶ 2.

ideological agenda or to extract payments for themselves from the parties or counsel by

threatening years of delay associated with unmeritorious settlement objections and appeals:

> Repeat objectors to class action settlements can make a living
> simply by filing frivolous appeals and thereby slowing down the
> execution of settlements. The larger the settlement, the more cost-
> effective it is to pay the objectors rather than suffer the delay of
> waiting for an appeal to be resolved (even an expedited appeal).
> Because of these economic realities, professional objectors can
> levy what is effectively a tax on class action settlements, a tax that
> has no benefit to anyone other than to the objectors. Literally
> nothing is gained from the cost: Settlements are not restructured
> and the class, on whose behalf the appeal is purportedly raised,
> gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, *3-4 (D.

Mass. Aug. 22, 2006); *see also Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003) (improper

to file objection to "cause expensive delay in the hope of getting paid to go away"). Accordingly,

"when assessing the merits of an objection to a class action settlement, courts consider the

background and intent of objectors and their counsel, particularly when indicative of a motive

other than putting the interest of the class members first." *Dennis v. Kellogg Co.,* No. 09-cv-

1786-L (WMc), 2013 U.S. Dist. LEXIS 163118, at *11 n.2 (S.D. Cal. Nov. 14, 2013); *In re Law

Office of Jonathan E. Fortman, LLC,* No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *3

(E.D. Mo. Feb. 1, 2013) (same).

Four of the objectors and/or their counsel have widely and repeatedly been criticized as

serial, professional, or otherwise vexatious objectors. The Court should therefore give these

objections little weight.

### A. Joseph Darrell Palmer is a Serial Objector Whom the California State Bar Found Guilty of Moral Turpitude for Submitting False Declarations in Support of Prior Objections to Settlements.

Joseph Darrell Palmer, who represents objector Dawn Weaver, submitted an objection to

the Settlement. Dkt. No. 75. The objection fails to notify this Court that the California Bar

issued a decision on July 11, 2014 recommending that Mr. Palmer be placed on two years'

stayed suspension, two years' probation with conditions, and a ninety day actual suspension for

lying about a prior criminal conviction and corresponding discipline by three state bars on three

separate applications to appear *pro hac vice* to object to settlements filed in jurisdictions outside of California.[6]  Mr. Palmer is only eligible to practice law because the decision is tolled pending his appeal.[7]

In addition to Mr. Palmer's track record of making misrepresentations to courts regarding state bar disciplinary actions taken against him, Mr. Palmer has engaged in numerous vexatious and bad faith litigation and appeals in the class action settlement context, including in the following cases:

- *Arthur v. Sallie Mae, Inc.*, No. C10-198JLR (W.D. Wash.): In connection with his objection to a TCPA class action settlement, Judge Robart admonished Mr. Palmer for his "flat out" false representations to the court and granted the plaintiffs' motion for revocation of Mr. Palmer's *pro hac vice* application.  Judge Robart further noted that "many of [Mr. Palmer's] motions since the motion to intervene have been rejected by the court, suggesting that the actions were to disrupt and delay, which is consistent with the fact that Mr. Palmer is a, and I'll use the phrase 'professional' not in any favorable sense, objector."[8]

- *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-md-1827, Dkt. Nos.  7618 & 8759 (N.D. Cal.): Judge Illston held Mr. Palmer in contempt and imposed monetary sanctions for failure to comply with court orders regarding objector discovery.

- *In re Uponor Inc. F1807 Plumbing Fittings*, No.11-2247, Dkt. No. 132 (D. Minn.): Judge Montgomery held "that the Palmer Objectors have evidenced bad faith and vexatious conduct . . . . [T]he Palmer Objectors appear to be represented by an attorney who has not entered an appearance in this case and who is believed to be a serial objector to other class action settlements.  This attorney, Darrell Palmer, paid

---

[6] Selbin Decl., Ex. B, *available at* http://members.calbar.ca.gov/courtDocs/12-O-16924-2.pdf.  The California Bar found that, among other things, Mr. Palmer "committed three acts involving moral turpitude in three separate client matters" and, thus, "the magnitude of the misconduct is significant." *Id.* at 11.

[7] *Id.*, Ex. C.

[8] Selbin Decl., Ex. D, Transcript of Motion Hearing, at 16.

the appellate filing fee on behalf of the Palmer Objectors, and the documents filed on their behalf bear his California mailing address rather than the Texas address of the Palmer Objectors . . . . The Palmer Objectors' objections and subsequent appeal appear little more than dilatory tactics of questionable motivation."

- *In re GIB LLC Cases*, J.C.C.P. No. 4657, Dkt. No. 4657 (Super. Ct. Cal. Oct. 22, 2013): An objector who had been represented by Mr. Palmer withdrew her objection after she realized that Mr. Palmer had advanced objections that she did not authorize, agree with, or understand.[9]

*See also In re Oil Spill by Oil Rig Deepwater Horizon*, MDL 2179, 2013 U.S. Dist. LEXIS 4595, at *154 n.40 (E.D. La. Jan. 11, 2013) (noting that "Mr. Palmer has been deemed a 'serial objector'" with a history of "admitt[ed] . . . 'bad faith and vexatious conduct'"); *Heekin v. Anthem, Inc*., 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013) (finding "bad faith and vexatious conduct on the part of . . . attorney Darrell Palmer" and noting his reputation as "a serial objector").

The courts have additionally admonished Mr. Palmer for making frivolous objections. *See, e.g., In re Dell Sec. Litig*., No. A-06-CV-726-SS, Dkt. No. 342 (W.D. Tex. Jan. 11, 2011) (describing Mr. Palmer's objection as "absurd" and showing "little respect for the intelligence of this Court."); *City of Roseville Empls. Ret. Sys. v. Orloff*, 484 Fed. Appx. 138, 141 (9th Cir. 2012) (finding Mr. Palmer's appeal of an award of attorneys' fees to be "meritless" and based on misapprehensions of the law).

Mr. Palmer's client, Dawn Weaver, is also not new to objecting to class action settlements. Mr. Palmer previously represented Ms. Weaver in pursuing an unsuccessful objection in *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO (N.D. Cal. July 11, 2014). In the order finally approving the settlement, the court noted that "Dawn Weaver is represented by Attorney Darrell Palmer, who courts have 'widely and repeatedly criticized as a serial, professional, or otherwise vexatious objector. . . . Ms. Weaver's objections are similar to

---

[9] Selbin Decl., Ex. E.

boilerplate objections made by Darrell Palmer that have been rejected by other courts." *Id.*, Dkt. No. 121 at n.3. Mr. Palmer appealed this order on August 6, 2014. *Id.,* Dkt. No. 124. Mr. Palmer also represented Ms. Weaver in an unsuccessful objection in *Pappas v. Naked Juice Co.*, No. 11-cv-08276-JAK-PLA (C.D. Cal. Jan. 2, 2014). The Court overruled Ms. Weaver's objections, finding that it did not "provide substantial evidence to support a finding that the settlement is unfair, inadequate, or unreasonable . . . ." *See id.*, Dkt. No. 184 at 2. In line with his usual conduct of creating delay to extort money from class counsel and the class, Mr. Palmer appealed this order as well. *Id.*, Dkt. No. 193. The appeal was voluntarily dismissed prior to any briefing on April 22, 2014. *Pappas v. Naked Juice Co.*, No. 14-55289, Dkt. No. 11 (9th Cir. Apr. 22, 2014). Mr. Palmer himself has admitted, at the 15th Annual National Institute on Class Actions that objecting to class actions is his "hobby" and that he has accepted "a lot" of money to "sell appeals" over the preceding decade.[10]

Mr. Palmer's and Ms. Weaver's demonstrated history of objecting to, and then appealing, class action settlements for their own financial gain warrants giving Ms. Weaver's objection little or no consideration.

### B. Christopher Bandas, who Represents Kelly Casey and Antonia Carrasco, Regularly Files Frivolous Objections to Enrich Himself.

Objectors Kelly Casey and Antonia Carrasco are represented by Christopher Bandas. (*See* Dkt. No. 73). Mr. Bandas is considered by courts to be a professional objector who files objections not "to effectuate changes to settlements, but . . . for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube Antitrust Litig.,* 281 F.R.D. 531, 533 (N.D. Cal. 2012). Another court found that Mr. Bandas had submitted objections that were "not supported by law or the facts and are indeed meritless" and that he had "a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated

---

[10] Selbin Decl., Ex. F at 21:16-22:6; 47:8-9; 59:3-16 & 61:17-21. *See also* Paul Karlsgodt, Notes From the 15th Annual National Institute on Class Actions (Oct. 17, 2011), *available at* http://classactionblawg.com/2011/10/17/notes-from-the-15th-annual-national-institute-on-class-actions/ (last visited on Oct. 14, 2014).

by the settling class or counsel for the settling class." *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 06-cv-00225, 2010 U.S. Dist. LEXIS 21466, at *16-17 (D. Nev. Mar. 8, 2010).

Mr. Bandas has a demonstrated history of jointly working with Mr. Palmer to employ the "scheme" of presenting objections "for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-cv-1088, 2013 U.S. Dist. LEXIS 133413, at *72 (S.D. Cal. Sept. 17, 2013) (striking an objection submitted by Mr. Palmer for lack of standing).[11]  The court held an evidentiary hearing and required the testimony of the objector and defense counsel.  *Id.* at *61.  Based on that testimony, the court found the following:

> Mr. Bandas said that he didn't care about changing one word of the settlement and that he filed the objections because it was a large settlement and Plaintiff's counsel stood to make millions of dollars.  Mr. Bandas said that he was willing to wager that [the defendant] would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away - otherwise, he could hold the settlement process up for two to three years through the appeal process. . . . Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away.  Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made.

*Id.* at *70-71.

Yet another court found Mr. Bandas's objections to be so frivolous it imposed a $54,000 appeal bond.  *Embry v. ACER Am. Corp.*, No. C 09-01808, 2012 U.S. Dist. LEXIS 127813, at *7 (N.D. Cal. Aug. 29, 2012).  Similarly, one court imposed sanctions on Mr. Bandas for failing to pay an appeal bond of $70,650.  *In re GE Co. Secs. Litig.*, 998 F. Supp. 2d 145, 157 (S.D.N.Y. 2014).

Accordingly, Class Counsel respectfully submit that Kelly Casey's and Antonia Carrasco's objection should be given little or no weight.

---

[11] In *Hydroxycut*, Mr. Bandas teamed with Mr. Palmer to act behind the scenes in demanding payment while Mr. Palmer, acting as counsel of record, claimed he was above such methods. *See id.* at *69 ("Mr. Palmer indicated that it was Mr. Bandas's 'show.'").

**C.    Laura Fortman and her Attorneys, Jonathan Fortman, Steve Miller, and John Kress, are Serial Objectors who Object to Settlements for their Own Financial Gain.**

Objector Laura Fortman (Dkt. No. 72) has a history of objecting to settlements. *See, e.g., Kardonick v. JPMorgan Chase & Co.*, No. 10-cv-23235, Dkt. Nos. 354 & 450 (S.D. Fla.) (objection overruled and subsequent appeal voluntarily dismissed); *The A.M.A., et al. v. Metropolitan Life, et al.*, 00-cv-02800, Dkt. Nos. 462 & 564 (S.D.N.Y.) (same).  Ms. Fortman is represented by her husband, Jonathan Fortman, who has previously banded together with Ms. Fortman's other attorneys, Steve Miller and John Kress, in representing other objectors to class action settlements. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, Dkt. Nos. 7807 & 9096 (N.D. Cal.) (Fortman, Miller, and Kress appealed the court's order overruling their objection, which they voluntarily dismissed over a year later without having obtained anything for the class).  All three attorneys are known to be serial objectors who regularly make meritless objections to settlements. *See, e.g., In re Groupon, Inc.,* No. 11-md-2238, 2012 U.S. Dist. LEXIS 185750, at \*26 (S.D. Cal. Sept. 28, 2012) (overruling objection submitted by Miller, Fortman, and Kress as having no merit); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* MDL No. 1532, 2011 U.S. Dist. LEXIS 40843, n.22 (D. Me. Apr. 13, 2011) (rejecting Miller's "specious" argument made in connection with objection).  Once their objections are overruled, they file frivolous appeals. *See, e.g., In re NVIDIA GPU Litig.*, 539 Fed. Appx. 822, 824 (9th Cir. 2013) (settlement upheld); *Blessing v. Sirius Xm Radio, Inc.*, 507 Fed. Appx. 1, 3 (2d Cir. 2012) (same).  Typically, they voluntarily dismiss the appeals—often for undisclosed consideration—without having gained anything beneficial for the class. *See, e.g., In re Pre-Filled Propone Tank Marketing & Sales Prac. Litig.*, No. 09-md-02086, Dkt. No. 311 (W.D. Mo. Nov. 20, 2012) (Miller and Fortman filed notices of appeal of a final approval order overruling their objections, which they later agreed to voluntarily dismiss without having gained any benefit for the class); *In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.*, No. 08-md-01999, Dkt. Nos. 481 & 486 (E.D. Wis.) (Fortman, Kress, and Miller (on behalf of a different

objector) filed notices of appeal on September 14, 2010, which they voluntarily dismissed in February 2011 without having gained any benefit for the class).

The well-established history of Ms. Fortman's counsel in filing losing objections to settlements, appealing courts' orders approving those settlements, and subsequently voluntarily dismissing those appeals—often prior to any briefing of the merits of their objections and without obtaining anything for the class—demonstrates that they are serial objectors whose motive is to cause delay of settlement payments in order to extract money from class counsel for their own pecuniary gain. The Court should therefore give Ms. Fortman's objection little consideration.

      **D.**     **<u>Erich Neumann, an Attorney-Objector Representing Himself, is a Serial Objector.</u>**

Objector Erich Neumann is an attorney who has previously made boilerplate objections to several class actions settlements on behalf of himself. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 10-ml-2151, Dkt. No. 3602 (C.D. Cal. May 10, 2013) (objection overruled at 2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013)); *Arnett v. Bank of America, N.A.,* No. 11-cv-01372, Dkt. No. 274 (D. Or. Sept. 2, 2014) (objection overruled and final approval granted on September 18, 2014); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, No. 11-md-02221, Dkt. No. 467 (E.D.N.Y. June 6, 2014) (pending final approval). Mr. Neumann has also previously, and unsuccessfully, objected to a TCPA class action settlement. *Rose v. Bank of America Corp.,* No. 11-cv-02390, Dkt. No. 84 (N.D. Cal. Mar. 31, 2014) (objection overruled). Based on this record, the Court should view Mr. Neumann's objection with skepticism.

**IV.**    **<u>The Untimely Objections Filed by Richard Mastnardo and Mailed by Morgan Lord Should Not be Considered.</u>**

Morgan Lord's un-filed objection was postmarked October 7, 2014, after the October 6, 2014 objection deadline. Richard Mastnardo filed his objection on October 8, 2014. Class Counsel received Mr. Mastnardo's objection only through notification of the electronic filing.

Despite being represented by an attorney,[12] Mr. Mastnardo not only has not sought permission from the Court to file his objection after the October 6, 2014 deadline, he provides no explanation as to the reasons for his untimely objection. *See* Fed. R. Civ. Proc. 6 (permitting extension of time by which an act may be done only "on a motion made after the time has expired if the party failed to act because of excusable neglect"). *See also In re VMS Ltd. Pshp. Sec. Litig.,* No. 90 C 2412, 1995 U.S. Dist. LEXIS 8079, at *7-8 (N.D. Ill. 1995) (fact that class member never received notice of settlement due to defendant's failure to update address did not constitute "excusable neglect" sufficient to permit late opt-out).

Per the Preliminary Approval Order, neither Mr. Mastnardo's nor Mr. Lord's objections may be considered, and they are foreclosed from objecting at the Final Approval Hearing as well as from seeking review of the Settlement by appeal or other means. Dkt. No. 59 at ¶ 19.

## V. All of the Objections Lack Merit and Should be Overruled.

### A. The $39,975,000 Settlement Fund is an Excellent Result for Class Members.

A few objectors argue that Class Members are not receiving enough money. These objectors complain that more money should have been obtained, without acknowledging the risks involved in the litigation. It is well-established, however, that since "the essence of settlement is compromise . . . courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales*

---

[12] Mr. Mastnardo's attorney, Sam Cannata, is also a serial objector. *See, e.g., Embry v. ACER Am. Corp.,* No. C 09-01808, 2012 U.S. Dist. LEXIS 78068, at *5-6 (N.D. Cal. June 5, 2012) (requiring Cannata to post an appeal bond of $70,650, finding that his objections were "lacking in merit"); *In re HP Inkjet Printer Litig.,* No. 05-cv-3580, 2011 U.S. Dist. LEXIS 65199, at *2, 4 (N.D. Cal. June 20, 2011) (denying Cannata's fee application in connection with objecting to a settlement both because it was "untimely" and because the objections did not confer "a substantial benefit on the class"); *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.,* No. 09-cv-07670, Dkt. No. 112 (N.D. Ill. Nov. 30, 2011) (Holderman, J.) (this Court "disagree[d] with Cannata's argument that there is an insurmountable intra-class conflict" and was "likewise not persuaded by Cannata's argument regarding issues of predominance"; Cannata appealed on December 8, 2011 but voluntarily withdrew the appeal on February 1, 2012); *Poertner v. The Gillette Co.,* No. 12-cv-00803, Dkt. No. 127 (M.D. Fla. Feb. 27, 2014) (objection overruled on August 21, 2014; appeal filed on September 19, 2014); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* No. 05-md-01720, Dkt. No. 3670 (E.D.N.Y. June 5, 2013) (objection overruled on January 14, 2014; appeal filed on January 28, 2014).

*Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *EEOC v. Hiram Walker & Sons, Inc.*, 768

F.2d 884, 889 (7th Cir. 1985) and *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. Ind. 1996)) (internal

quotations omitted).  *See also Armstrong v. Board of School Directors,* 616 F.2d 305, 315 (7th

Cir. 1980) ("Judges should not substitute their own judgment as to optimal settlement terms for

the judgment of the litigants and their counsel."); *Schulte v. Fifth Third Bank,* 805 F. Supp. 2d

560, 584 (N.D. Ill. 2011) ("[S]imply because the proposed settlement amounts to a fraction of

potential recovery does not render the proposed settlement inadequate and unfair.") (quotations

and citation omitted).

      Class Counsel acknowledge that the plain terms of the TCPA allow for statutory damages

of $500 per call ($1,500 for willful violations), but attempting to obtain anything approaching

that amount for all Class Members on the merits would entail significant risk and delay.  First,

Class Members face the factual defense of consent, as HSBC argues that the majority of them

provided their cell phone numbers to it either on credit applications or through subsequent

dealings with HSBC.  To recover the full statutory damages, Plaintiffs would need to convince

the Court to adopt their view that the FCC has clarified that "prior express consent" can only

being given during "the transaction that resulted in the debt owed"; *i.e.* during the opening of

Class Members' HSBC accounts.  The Court could instead have adopted HSBC's view that

consent may be given at any time and in any manner.  If the Court adopted HSBC's view, Class

Members would also face a potential class certification problem.

      Courts are divided as to whether such consent issues predominate over common

questions in TCPA cases, depending on the circumstances of the case.  *Chapman v. First Index,*

*Inc.*, No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing

cases).  *See also Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 U.S. Dist. LEXIS

1277, at *49 (N.D. Ill. Jan. 4, 2013) (granting class certification); *G.M. Sign, Inc. v. Brinks*

*Manufacturing Company*, No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084, at *7-10 (N.D. Ill.

March 4, 2014) (denying class certification).  Moreover, the FCC is currently considering

multiple petitions regarding the meaning of "consent" under the TCPA, and could issue rulings

at any time which might undermine Plaintiffs' interpretation. *See, e.g., Higginbotham v. Hollins*, No. 14-cv-2087, 2014 U.S. Dist. LEXIS 85584 (D. Kan. June 24, 2014) (staying litigation pending FCC's consideration of and rulings on TCPA petitions and citing cases granting similar stays). *See also* Michael O'Rielly, FCC Commissioner, <u>TCPA: It is Time to Provide Clarity</u>, FCC Blog (Mar. 25, 2014) (*available at* http://www.fcc.gov/blog/tcpa-it-time-provide-clarity) (asserting that "the FCC needs to address this inventory of petitions as soon as possible" as it has the "opportunity to answer important questions and much needed guidance on a variety of TCPA issues, including . . . whether consent can be inferred from consumer behavior or social norms . . . .").

Furthermore, at least some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

As serial objector Darrell Palmer has learned first-hand, TCPA violations are not easy to prove on the merits, particularly on a class basis. After unsuccessfully objecting to the TCPA settlement in *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198-JLR (W.D. Wash.), Mr. Palmer went on to bring his own unsuccessful TCPA actions, including one brought on behalf of the objector, Judith Harper, who he represented in the *Sallie Mae* case. Each of these actions was dismissed or compelled to arbitration, thereby providing *no* monetary recovery for Mr. Palmer's clients or the classes they purported to represent. *See, e.g., Harper v. Credit Control Servs*., 863 F. Supp. 2d 125, 127 (D. Mass. 2012) ("Because it would not be reasonable for a jury to conclude from the record that CCS placed calls to Harper's cell phone in violation of the TCPA, defendant's motion for summary judgment will be allowed."); *Gonzalez v. Citigroup, Inc*., No. Civ. S-11-

0795 LKK/GGH, 2011 U.S. Dist. LEXIS 135421, at *8 (compelling claims to arbitration); *Gonzalez v. J.C. Penney Co., Inc*., No. 2:11-cv-00794-KJM-EFB, Dkt. No. 18 (E.D. Cal. Sept. 21, 2011) (dismiss all claims with prejudice and imposing sanctions on plaintiff for failure to comply with a prior court order); *Salina v. NCO Fin. Syst., Inc.*, No. 10-7496, Dkt. No. 44 (E.D. Pa. June 25, 2012) (voluntarily dismissing class action case without having obtained a recovery for the class); *Warnick v. Dish Network Corp*., No. 11-cv-00615-MSK-CBS, Dkt. No. 14 (D. Colo. May 20, 2011) (same); *Gonzalez v. JP Morgan Chase*, No. 11-cv-00796-GEB-EFB, Dkt. No. 30 (E.D. Cal. Nov. 16, 2011) (same).

Although the claims deadline has not yet passed, 218,063 Class Members have made claims thus far.[13]  Assuming another 22,000 make claims before the November 4, 2014 deadline (for a total or approximately 240,000 claims), Class Members stand to receive approximately $111 each.  Accordingly, the Settlement is in line with other TCPA settlements, including those upon which Palmer relies.  *See* Dkt. No. 75 at 1 (citing TCPA class settlements awarding between $85 and $100 each).  *See also Rose v. Bank of America Corp.,* No. 11-cv-02390, Dkt. No. 86-1 at ¶ 7 (N.D. Cal. Apr. 1, 2014) (payments estimated to be between $20 and $40; actual payments between $55 and $60 for each credit card call or mortgage call, or between $110 and $120 for class members who received both types of calls); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (payments estimated to be between $20 and $40; actual payments were $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc*., No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (class members received $40 each); *Bellows v. NCO Fin. Sys.,* No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *12 (S.D. Cal. Dec. 2, 2008) (class members received $70 each).[14]

---

[13] Dowd Decl., ¶ 2.

[14] In the very next sentence after he acknowledges that the Class Notice estimated that Class Member payments would be between $20 and $40, Mr. Palmer strangely asserts that Class Counsel should have estimated the amount Class Members will receive under the Settlement. Dkt. No. 75 at 1.  Presumably, he faults the estimates for not providing the *exact* amount of payments Class Members will receive.  This shows a fundamental lack of understanding of the claims process in class action settlements—there is no way to know the precise amount that

Thus, objectors' subjective and speculative belief that this case could have settled for more money is without merit.

**B.      Basing Class Members' Awards  on the Precise Number of Calls Received Was Not Feasible.**

Some objectors argue that Class Members should be able to make a claim under the Settlement for each call received.  While HSBC reported to the Court the total number of calls made to unique cell phone numbers, determining the number of calls made to each individual Class Member and then determining whether, when, and in what manner those individuals may have provided HSBC with consent to make such calls would be substantially difficult, unduly burdensome, and economically unfeasible.  Dkt. No. 64.  Such a process has been made even more difficult by the fact that all such call data and consumer records now resides with non-party Capital One.  The parties therefore concluded that allocating such relief regardless of the number of calls each Class Member may have received is reasonable and fair, and is in keeping with the structure in numerous other TCPA settlements.  The Settlement Agreement affords all potential Class Members the opportunity to make a claim for monetary relief.  Moreover, any Class Member who believed that the cash payments do not adequately compensate his or her for the number of calls received had the opportunity to opt out and pursue individual relief.

**C.      The Requested Attorney Fee Award is Well-Supported Under Established Law.**

Most of the objections focus on the amount of attorneys' fees requested.  None of these objections have merit.

**1.      30% of the Common Fund is *Less* Than the Typical Market Price in the Seventh Circuit.**

Several objectors argue that an award based on 30% of the common fund is too high.  But, as detailed in Class Counsel's Motion for Attorneys' Fees, a fee based on 30% of a common fund is *less than* the attorney fee of one-third of the common fund that is typically awarded in

---

Class Members will receive until the precise number of claims, as well as the amount of attorneys' fees and incentive payments that the Court awards, are known.

TCPA class actions in this district. *See* Dkt. No. 65 at 7-8 (citing multiple cases). *See also Taubenfeld v. Aon Corp.*, 415 F.3d 597, 598, 600 (7th Cir. 2005) (approving lower court's consideration of "thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund" and affirming its award of "30% of the settlement fund plus $111,054.06 in expenses"). Moreover, objectors ignore the fact that Class Counsel do *not* seek reimbursement of their costs on top of this fund, and thus the amount requested in fees is actually *less* than 30%.

While acknowledging that the Seventh Circuit determines fees in common fund cases by looking at fees negotiated and awarded in the market, Palmer asserts that Class Counsel's retainer agreement with Plaintiff Mills—which calls for a fee of between 33.33% and 40%—may not be used to support Class Counsel's fee request. This is erroneous. Under the Seventh Circuit's market approach, "[t]he first benchmark is actual agreements." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 719 (7th Cir. 2001). *See also Pavlik v. FDIC,* No. 10 C 816, 2011 U.S. Dist. LEXIS 126016, at *11 (N.D. Ill. Nov. 1, 2011) ("Based on the actual contingency fee agreements Plaintiffs' counsel signed with the two named plaintiffs, as well as the market data for fees in cases of this size, the Court finds that Plaintiffs' counsel are entitled to attorneys fees in the amount of 33 1/3% of the common fund."); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc*., No. 02-cv-1109, 2004 U.S. Dist. LEXIS 6363, at *2 (S.D. Ill. Mar. 19, 2004) (acknowledging that the "first" benchmark "is the actual agreements negotiated by the named Plaintiffs and the Class Counsel prior to commencement of the litigation" and awarding 33 1/3% of the common fund).

Some objectors argue, without any legal support, that this Court should apply the Ninth Circuit's benchmark of 25% of the common fund here. There is no rationale supporting this Court following out-of-jurisdiction law rather than Seventh Circuit law here; indeed, Seventh Circuit law expressly disapproves of such an approach. *See In re Synthroid Mktg. Litig.,* 264 F.3d at 718 (criticizing lower court for following out-of-jurisdiction law in deciding to award lower fees because the settlement involved a so-called "megafund."). Even if there were a basis

for following Ninth Circuit law, objectors fail to acknowledge that, while 25% is indeed the "benchmark" in the Ninth Circuit, most Ninth Circuit courts award *more* than the benchmark of 25% in fees. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) ("[I]n most common fund cases, the award exceeds th[e] benchmark."). *See also Garner v. State Farm*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (awarding 30% of TCPA common settlement fund class); *Knight v. Red Door Salons, Inc*., No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009) (same). It is therefore simply not accurate, as objectors Casey and Carrasco assert, that had the *Mills* case remained in the Ninth Circuit, "the likelihood of obtaining a 30% fee would have been close to zero." Dkt. No. 73 at 7.

Certain objectors speculate that Class Counsel "forum-shopped" by re-filing Plaintiff Mills' claims in this district, after having initially filed in the Northern District of California on July 30, 2012, purportedly in order to gain more in fees. This is nonsensical given that—as noted above—the vast majority of fees awarded in the Ninth Circuit *exceed* the 25% benchmark. It is also without factual support. As Class Counsel candidly explained to the Court in their Motion for Preliminary Approval, Class Counsel dismissed Plaintiff Mills' action and refiled in this district only *after* seeking multiple extensions of time to extend the class certification deadline imposed by the California court, with the goal of enabling HSBC to obtain the necessary call data residing with third party Capital One and to allow the parties to engage in settlement negotiations. In its November 1, 2013 order granting an extension of time, the California court warned that it was "very unlikely to continue" the then-pending March 14, 2014 class certification deadline. Two months later, on January 10, 2014, Plaintiff Wilkins filed the instant action, which was assigned to Your Honor. At that time, the *In re Capital One Telephone Consumer Protection Act Litigation,* Master Dkt. No. 12-cv-10064, MDL No. 2416 (N.D. Ill.) (Holderman, J.) ("*Capital One* Action") was (and is currently) pending before Your Honor. Since Capital One possesses all of the call record and class member data for this action against HSBC, and because such data necessary to confirm the adequacy of the settlement could not be

fully retrieved and analyzed prior to the class certification deadline set in the *Mills* action,

counsel for Plaintiff Mills determined that it made logical sense to coordinate the *Mills* and

*Wilkins* actions and accordingly dismissed the *Mills* action on March 6, 2014 and filed an

Amended Complaint in this action on March 7, 2014.[15]  These facts simply do not support the

accusation that Class Counsel engaged in "forum-shopping."

In sum, Seventh Circuit law and the market price amply supports awarding 30% of the

fund as attorneys' fees.

### 2.   A Lodestar Crosscheck is Not Required or Warranted.

The fairest and most efficient way to calculate a reasonable fee where, as here,

contingency fee litigation has produced a common fund is by awarding class counsel a

percentage of the total fund.

There is an important policy reason behind choosing to apply the percentage-of-the-fund

method, rather than the lodestar method, in common fund cases such as this one:

> Unlike the lodestar method which can encourage class counsel to devote
> unnecessary hours to generate a substantial fee, under the [percentage-of-the-fund]
> method, the more the attorney succeeds in recovering money for the client, and
> the fewer legal hours expended to reach that result, the higher dollar amount of
> fee the lawyer earns.  Thus, one of the primary advantages of the [percentage-of-
> the-fund] method is that it is thought to equate the interests of class counsel with
> those of the class members and encourage class counsel to prosecute the case in
> an efficient manner.

Newberg on Class Actions § 14:6 (4th Ed. 2002).  *See also Gaskill v. Gordon*, 942 F. Supp. 382,

386 (N.D. Ill. 1996), *aff'd* 160 F.3d 361 (7th Cir. 1998) (explaining that "the percentage of the

fund method provides a more effective way of determining whether the hours expended were

reasonable" because "courts can expect attorneys to make cost-efficient decisions about whether

certain expenses are worth the win").  In addition, the percentage-of-the-fund method comports

with the legal marketplace, where counsel's success is frequently measured in terms of the

results counsel has achieved.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir.

1993) (in common fund cases "the monetary amount of the victory is often the true measure of

---

[15] Selbin Decl., ¶ 17.

[counsel's] success"). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id.* at 1269. It also comports with the established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium for successfully resolving contingency fee cases. *See McDaniel v. Qwest Communs. Corp.,* No. 5 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11 (N.D. Ill. Aug. 29, 2011) ("Risk cannot be overlooked, for it is considerable even in a relatively simple class case. As Judge Posner recognized, '[t]he lawyers for the class receive no fee if the suit fails.'") (quoting *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992)); *Martin v. Caterpillar Inc.,* No. 09-cv-1009, 2010 U.S. Dist. LEXIS 145111, at *5 (C.D. Ill. Sept. 10, 2010) ("As observed by the Seventh Circuit in *Gaskill v Gordon*, 160 F.3d 361 (7th Cir. 1998), 'it is common place to award the lawyers for the class a percentage of the fund in recognition of the fact that most suits for damages in this country are handled in the plaintiff's side on a contingency fee basis.'"). Finally, it saves the Court the time it would need to spend reviewing billing records. *Gaskill,* 942 F. Supp. at 386.

For these reasons, while courts in the Seventh Circuit have the discretion to elect either the percentage-of-the-fund or the lodestar methods in determining reasonable fees, the percentage-of-the-fund method is utilized more often. *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.,* No. 09 C 7670; MDL 2103, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011) (Holderman, J.) (rejecting objector's request to review billing hours, noting that "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class") (quoting *Williams v. Gen. Elec. Capital Auto Lease,* No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179, at *29 (N.D. Ill. Dec. 20, 1995) (citations omitted)). Further, employing a lodestar cross-check "has fallen into disfavor" in the Seventh Circuit. *Beesley v. Int'l Paper Co.*, No. 06-cv-703, 2014 U.S. Dist. LEXIS 12037, at *10-11 (S.D. Ill. Jan 31, 2014) (citations omitted). *See also Will v. Gen. Dynamics Corp.,* No. 06-698, 2010 U.S. Dist.

LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *In re Comdisco Sec. Litig.,* 150 F. Supp. 2d 943, 948 n.10 (N.D. Ill. 2001) ("To view the matter through the lens of free market principles, [lodestar analysis] (with or without a multiplier) is truly unjustified as a matter of logical analysis.").[16] Accordingly, it is appropriate to award 30% of the fund as fees here without engaging in a lodestar cross-check.[17]

A few of the objectors point to the attorney fee order in *Rose v. Bank of Am. Corp.*, No. 11-cv-02390, Dkt. No. 108 (N.D. Cal. Aug. 29, 2014), in which the judge reduced the requested fee of 25% of the fund to less than 7.5% of the fund after applying a lodestar analysis. Respectfully, Class Counsel submit that this order represents a radical departure from the typical fees awarded in the Ninth Circuit for TCPA class action cases. *See, e.g., Steinfeld v. Discover Fin. Servs.,* No. C 12-01118, 2014 U.S. Dist. LEXIS 48540 (N.D. Cal. Mar. 31, 2014) (awarding the requested 25% of the fund). The order was also premised on several errors of fact, including: (1) the amount of *pro rata* payments class members would receive; (2) the different types of calls at issue and the different entities sued in each of the separate TCPA cases that were covered by the settlement; (3) the years-long separate efforts of counsel in litigating each separate case up until they ultimately coordinated their efforts in seeking a settlement; (4) the risks involved; and (5) the numbers of hours worked and the types of work performed by class counsel. For these reasons, the order is currently pending a motion for reconsideration. *Id.* at Dkt. No. 110

---

[16] Palmer's reliance on *Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) is misplaced, as class counsel there asked the court to award fees based on their lodestar. And, *Harman v. Lyphomed, Inc.,* 945 F.2d 969 (7th Cir. 1991) simply affirmed the district courts' discretion to use either the percentage-of-the-fund or the lodestar method in determining fees, although it found error in the lower court's refusal to apply a multiplier.

[17] As stated in their Motion for Attorneys' Fees, Class Counsel are happy to provide the Court with a summary or detailed records of their work performed upon request. Such records would include years of discovery efforts and litigation in *Mills v. HSBC Bank Nevada, N.A.,* No. 12-cv-04010 (N.D. Cal.) that occurred prior to *Mills'* dismissal and subsequent coordination of efforts here, as detailed in the declaration of Jonathan D. Selbin in support of the attorney fee motion (Dkt. No. 63). Such work included (1) contested discovery efforts that were resolved only through multiple meet and confers, a discovery dispute letter, and an in-court conference between the parties; (2) reviewing HSBC documents and call record data; and (3) drafting motions such as a motion to strike affirmative defenses and a motion for class certification. *Id.* at ¶¶ 20-21.

(attached as Exhibit G to the Selbin Decl.).  Objectors provide no reasoned basis that would justify following this out-of-jurisdiction order that is based on facts specific to that case.

In addition, Palmer mistakenly construes the Settlement to be a "claims made" settlement in arguing for application of the lodestar method.  A claims made settlement, like the one at issue in *Americana Art China Co. v. Foxfire Printing & Packaging, Inc*., 743 F.3d 243, 245 (7th Cir. 2014)—the case upon which Palmer relies— requires the defendant to pay only "up to" the total settlement fund, with the total amount paid determined by the number of actual claims made and with any remaining funds reverting back to the defendant.  The Settlement at issue here, however, requires HSBC to pay $39,975,000 ***no matter how many claims are made***.  The entirety of this fund will be distributed proportionally among the Class Members who make claims, with no amount reverting back to HSBC.  Thus, *Americana Art* is inapposite and Palmer's argument is groundless.

### 3.    The Risk Involved Supports the Fee Request.

Remarkably, Palmer construes this action as an "easy" case without a "high risk of no return," notwithstanding his own failures in prosecuting TCPA class actions as detailed above. Class Counsel have also, unfortunately, lost a number of TCPA cases without having gained a single penny in fees.[18]  Palmer's argument is therefore unfounded, and the risk of undertaking this action supports the fee request.

---

[18] *See, e.g., Hudson v. Sharp Healthcare*, No. 13-cv-1807, Dkt. No. 56 (S.D. Cal. June 25, 2014) (granting summary judgment against Plaintiff in TCPA class case); *Elkins v. Medco Health Solutions, Inc.*, No. 12-cv-2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) (same); *Martin v. Wells Fargo Bank, N.A.*, 12-cv-06030, Dkt. No. 94 (N.D. Cal. Apr. 4, 2014) (dismissing case with prejudice); *Steinhoff v. Star Tribune Media Co., LLC*, No. 13-cv-1750, 2014 U.S. Dist. LEXIS 38293 (D. Minn. Mar. 24, 2014) (granting defendant's motion for judgment on the pleadings on the issues of prior express consent); *Evans v. Aetna Inc.*, No. 13-cv-01039 (E.D. Wisc. Nov. 20, 2013) (dismissing case), *Brown v. DIRECTV, LLC*, No. 12-cv-08382, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (compelling claims to arbitration on an individual basis); *Cayanan v. Citi Holdings, Inc*., 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013) (same); *Maleksaeedi v. Am. Express Centurion Bank*, No. 11-cv-790, Dkt. No. 32 (S.D. Cal., Feb. 12, 2013) (same); *Delgado v. US Bankcorp*, 12-cv-10313, Dkt. No. 12 (C.D. Cal. Jan. 17, 2013) (dismissing case); *Moore v. Chase Bank USA, N.A*., No. 12-cv-10316, Dkt. No. 10 (C.D. Cal. Jan. 9, 2013) (dismissing case); *Greene v. DirecTV, Inc*., No. 10-C-117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against Plaintiff ).

**4.    It is Appropriate to Include Administrative Costs as Part of the Fund when Calculating Attorneys' Fees.**

As explained in Class Counsel's Supplemental Memorandum in Support of Motion for Attorneys' Fees (Dkt. No. 71), it is appropriate to include administrative and notice costs—as is the norm in the Seventh Circuit—when calculating fees based on a percentage-of-the-fund. *See In re Fesco Plastics Corp.,* 996 F.2d 152, 157 (7th Cir. 1993) (the common fund doctrine "holds that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole") (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *17 ("Because the costs of class action litigation necessarily include the costs of notice, administration of the settlement fund, incentive awards, and attorneys' fees, and because the settling defendants in these types of lawsuits have agreed to pay these costs in exchange for release of [their] liability, the court finds that such costs are reasonably viewed as having been paid for the benefit of the class.") (quotations and citation omitted).

The recent opinion in *Redman v. Radioshack Corp.*, No. 14-1470, 2014 U.S. App. LEXIS 18181 (7th Cir. Sept. 19, 2014) does not undermine this principle, as it is inapposite to the facts of this case. Unlike the typical "common fund" case, *Redman* involved a coupon settlement under CAFA's requirement that attorneys' fees be paid in relation to the total amount of coupons redeemed. Unlike *Redman*, Class Members will receive *pro rata* cash payments from a non-reversionary fund. In addition, the notice reached more than twice the percentage of class members at about half the cost as compared with the notice program in *Redman.* Thus, an award of 30% of the entire settlement fund is warranted, and the objections premised on this ground should be overruled.

**5.    The Presence of a Clear Sailing Clause Does Not Warrant Reducing the Fee Award.**

Some objectors argue, again citing *Redman*, that the presence of a "clear sailing clause"—in which a defendant agrees not to contest class counsel's motion for attorneys' fees—

warrants heightened scrutiny of the fee request and/or a reduction of the fee request. But, *Redman* was clear that the potential problems with clear sailing clauses arise in situations where, unlike here, "the value of the settlement to the class members is uncertain because it is not a cash settlement." *Redman*, 2014 U.S. App. LEXIS 18181, at *37. Such clauses are also problematic where, unlike here, the settlement fund is *reversionary. See Vought v. Bank of Am., N.A.,* 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) (noting that "[t]he combination of a reversionary fund settlement and a clear sailing clause has given [] courts reason to pause"). Because any dollar that does not go to the class would go to the defendant in the case of a reversionary settlement, a clear sailing clause could give rise to collusion between the defendant and class counsel at the expense of the class. But here, the amount of the Settlement fund is certain and is non-reversionary, and thus the concerns with clear sailing clauses do not apply.

### D. The Notice Provided to the Class was Exemplary.

The Settlement administrator provided direct notice to nearly 80% of the class. Dkt. No. 71-1, ¶ 16. Combined with the publication and internet notice programs, approximately 86% of Class Members received notice. *Id.*, ¶ 21. The direct and publication notices provided Class Members with the following information: (1) the name of the case and a general description of the claim; (2) a description of the Class; (3) the total amount of the Settlement Fund; (4) the estimated amount of individual Class Member payments; (5) the requested attorneys' fees; (6) Class Members' rights to submit a claim, to opt-out out of the Settlement, to object to the Settlement, or to do nothing, and the consequences of exercising such rights; (7) the deadlines for taking such actions; (8) the final approval hearing date; and (9) where to get more information, including the URL for the Settlement Website and the number for the toll-free settlement hotline. *Id.*, Exs. A-C.

Palmer argues that the Settlement Website URL should have included the word "HSBC" to "enable class members to easily find it" (Dkt. No. 75 at 2), at but as noted above, all forms of notice provided Class Members with the URL. Moreover, the Settlement Website is the fourth

result rendered by a simple Google search for "HSBC settlement." Thus, there is no basis to believe Class Members had trouble locating the Website.

Palmer additionally argues that the notice should have informed Class Members of "other entities" that "might make calls on behalf of HSBC." Dkt. No. 75 at 2. But, as confirmed by the confirmatory discovery, HSBC Card Services is the entity that made the autodialed calls to cell phones that are the subject of this litigation. As such, all forms of notice informed Class Members that "HSBC's records indicate that you may be a member of a class in this action . . . because HSBC Card Services, Inc. . . . . placed an automated call to your cellular telephone . . . ." Dkt. No. 71-1, Exs. A-C. Based on records of such calls actually made, direct notice was provided to nearly 80% of the Class. *Id.*, ¶ 16. Palmer's laundry list of other "HSBC entities," apparently downloaded from the internet, does not show that any other entity made automated calls to cell phones on HSBC's behalf.

Objector Neumann erroneously argues that "[t]he notice directs would-be objectors to mail a letter to 'the court' (and provides no address)," but the notice in fact directs objectors to *file* with the court—not mail to the court—their objections. Dkt. No. 71-1, Exs. A-C. Neumann also complains that, while the notice directs objectors to mail their objections to "the attorneys listed on the Settlement Website," it does not provide the attorneys' addresses. The reality is there is only so much information that can be, or should be, placed within a postcard, email, or publication notice. For this reason, the notice directed objectors to the Settlement Website, wherein Class Counsel's and HSBC counsel's addresses were set forth in the "Frequently Asked Question" titled "How do I tell the Court that I do not agree with the settlement?" Neumann provides no basis for why this was insufficient.

Finally, while acknowledging that the Settlement Website includes links to download the (1) Supplemental Memorandum in Support of Motion for Attorneys' Fees; (2) Motion for Attorneys' Fees; (3) Memorandum in Support of Motion for Attorneys' Fees; (4) Declaration of Jonathan D. Selbin in Support of Motion for Attorneys' Fees; (5) Preliminary Approval Order; and (6) Settlement Agreement, Palmer argues that the Website should have included a link to

download the Complaint.  Palmer provides no explanation as to how the Complaint was necessary for Class Members to effectively evaluate the Settlement.[19]

### E.    The Class Release is Limited.

Objector Fortman argues that the release is overbroad on the mistaken ground that it prohibits Class Members from making any claim based on the unlawful collection of debts, while reserving HSBC's right to continue to collect on debts owed by Class Members.  In making this argument, Fortman fails to understand that the release is expressly limited to claims that *arise out of* the fact that the cell phone calls at issue were made by "the use of an 'automatic telephone dialing system' or an 'artificial or prerecorded voice.'"  Settlement Agreement at III.R. Thus, claims for unlawful collection of debts arising from different or additional facts—such as claims under the Fair Debt Collection Practices Act arising out of autodialed calls made at prohibited times of day—are not released.  Illustrating the point, HSBC has stipulated that privacy claims alleged in two cases based on the unlawful recording of confidential telephone conversations are not released by this Settlement.[20]  Moreover, to the extent any Class Member believes he has a claim, other than a TCPA claim, for an unlawful collection of debts arising out of the sole fact that HSBC made autodialed or prerecorded calls to his cell phone, he may opt-out of the Settlement.

### F.    The Remaining Objections Provide no Basis to Decline to Approve the Settlement.

The remaining objections are equally without merit.  Palmer finds fault with the Settlement for not including injunctive relief, but at the same time acknowledges that "injunctive relief was not an option as HSBC no longer owns the companies that violated the TCPA with their call policies."  Dkt. No. 75 at 2.  Objectors Davis and Staten simply want the Court to award more money for themselves.  And objector Pethtel demonstrates a misunderstanding of her obligations or rights under the Settlement in arguing that she doesn't "remember dealing with

---

[19] Palmer also argues that the website should include the final approval motion, but that motion had not been written at the time of his objection and was filed for the first time today.
[20] Selbin Decl., Exs. H & I.

HSBC" and "can't take time off from work."  None of these objections undermine a finding that the Settlement is fair, reasonable, and adequate.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the objections are all without merit and should be overruled, and that the Settlement should be approved as fair, adequate, reasonable, and in the best interests of the Class.

Dated: October 28, 2014                    Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:*/s/Jonathan D. Selbin*
        Jonathan D. Selbin

Jonathan D. Selbin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hutchinson
Nicole D. Sugnet
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Matthew R. Wilson
Michael Joseph Boyle, Jr.
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, IL 60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Beth E. Terrell
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 40
Seattle, WA 98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiffs and the Settlement Class*

1199989.3