**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL WILKINS and KENNETH MILLS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK NEVADA, N.A. and HSBC CARD SERVICES, INC.,<br><br>Defendants. | No. 1:14-cv-190 |

**SUPPLEMENTAL DECLARATION OF JONATHAN D. SELBIN IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

1205501.5

I, Jonathan D. Selbin, declare as follows:

1. I am a member of the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), counsel of record for Plaintiffs in this matter.[1] I am admitted to this Court's general bar and am a member in good standing of the bars of the States of California and New York, and the bar of the District of Columbia. I respectfully submit this supplemental declaration in support of Plaintiffs' Motion for Attorneys' Fees. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2. While Class Counsel continue to believe that an award of attorneys' fees based of a percentage of the settlement fund is appropriate and is preferred under the market approach adopted by the Seventh Circuit, in light of the Court's November 17, 2014 Order (Dkt. No. 89) and this Court's comments during the October 30, 2014 hearing in *In re Capital One Telephone Consumer Protection Act Litig.*, No. 12 C 10064 (N.D. Ill.), I hereby set forth my firm's lodestar and a description of the work we have performed in the above-entitled action. I also hereby attach as **Exhibit A** my firm's detailed time records.

I. **Background and Experience**

3. LCHB is a national law firm with offices in San Francisco, New York, and Nashville. LCHB's practice focuses on complex and class action litigation involving product liability, consumer, employment, financial, securities, environmental, and personal injury matters. A fulsome summary of our firm's experience in prosecuting class actions generally, and class actions under the Telephone Consumer Protection Act specifically, as well as a copy of LCHB's firm resume, was submitted along with my declaration in support of preliminary approval (Dkt. No. 53-3) and my initial declaration in support of attorneys' fees (Dkt. No. 67).

---

[1] Plaintiffs are also represented by the following firms: Meyer Wilson Co., LPA; Terrell Marshall Daudt & Willie PLLC; Burke Law Offices; Kazerouni Law Group, APC; Law Offices of Douglas J. Campion; Hyde & Swigart; Reiling, Teder & Schrier, LLC; and Pearlman, Chosnek & Hopson, P.C. This Declaration shall refer to these firms and LCHB collectively as "Class Counsel."

**II.     Qualifications of LCHB Attorneys and Staff**

4.     LCHB attorneys and staff who have expended a substantial amount of time on this case include the following:

5.     Jonathan D. Selbin, a partner at LCHB.  I graduated magna cum laude from Harvard Law School in 1993 and clerked for The Honorable Marilyn Hall Patel of the U.S. District Court for the Northern District of California between 1993 and 1995.  I have worked at LCHB since 1995, starting as an associate and advancing through to partnership.  As set forth in detail in my prior declarations, I have extensive experience in litigating class actions and TCPA cases.  *See* Dkt. Nos. 53-3 & 67.  Together, cases in which I have played a lead role have resulted in court-approved class action settlements with a combined total recovery for class members exceeding $2 billion in non-reversionary cash, plus other relief, such as extended and enhanced warranties.

6.     Daniel M. Hutchinson, a partner at LCHB.  Mr. Hutchinson graduated from the University of California at Berkeley, Boalt Hall School of Law in 2005.  Since that time, Mr. Hutchinson has practiced with LCHB, and he became a partner in January 2011.  During his time at LCHB, Mr. Hutchinson has focused on consumer protection cases and representing plaintiffs in employment litigation.  For example, Mr. Hutchinson has served as co-lead counsel on all of the TCPA cases listed in paragraph three above.  Mr. Hutchinson also served as served, with co-counsel, as Lead Counsel in *Haley Paint Co. v. E.I. Dupont De Nemours and Co. et al.*, No. 10-cv-00318-RDB (D. Md.), a certified nationwide class action lawsuit on behalf of direct purchasers of titanium dioxide charging that defendants conspired to fix, raise, and maintain the price of titanium dioxide in the United States.  In December 2013, the Honorable Richard D. Bennett approved class settlements with four defendants totaling $163.5 million, and approved an attorneys' fee totaling one-third of the settlement fund.  Along with other attorneys from LCHB, Mr. Hutchinson served as chair of the Plaintiffs Executive Committee in multi-district litigation ("MDL") against Bank of America and FIA Card Services, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs.  In January 2013,

the Court approved a $20 million settlement including required practice changes. Mr. Hutchinson has received ample praise for his work. In approving a settlement in *Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.*, No. 01-0892-CRB (N.D. Cal.), another case in which Mr. Hutchinson served as co-lead counsel, U.S. District Court Judge Charles Breyer stated "I've never seen such litigation in eleven years on the bench that was more difficult than this one… Notwithstanding all of these issues that kept surfacing ... over the years, the plaintiffs persisted…And, in fact, they achieved a settlement of the case, which I find remarkable under all of these circumstances." In 2012, The Recorder named Mr. Hutchinson as one of "50 Lawyers on the Fast Track." He was recognized as a 2013 Northern California Super Lawyer and, from 2009 to 2012, was named as a Northern California Super Lawyer Rising Star.

7. <u>Nicole D. Sugnet</u> (formerly Nicole D. Reynolds), an associate at LCHB. Ms. Sugnet is a member in good standing of the bar of the State of California (2006) and is admitted to practice in the following federal courts: the U.S. Court of Appeals for the Ninth Circuit; the U.S. District Court, Central District of California; the U.S. District Court, Eastern District of California; the U.S. District Court, Northern District of California; and the U.S. District Court, Eastern District of Wisconsin. Ms. Sugnet graduated from the University of California, Hastings College of the Law in 2006, and graduated *magna cum laude* from Lewis & Clark College in 2000. Since graduating from law school in 2006, Ms. Sugnet has focused her practice exclusively on consumer class action litigation, and has litigated several cases involving the banking and financial industries. She has played an active role in several of LCHB's TCPA cases listed in paragraph three above. She was recently a panelist and the 2014 Consumer Rights Litigation Conference hosted by the National Consumer Law Center. Ms. Sugnet is the co-author of "Consumer Protection and Employment Cases after Concepcion," published in the ABA Section of Litigation, Class Action & Derivative Suits Committee Newsletter (Summer 2011). In 2013 and 2014, she was recognized as a Northern California Super Lawyers Rising Star.

8. <u>Douglas Cuthbertson</u>, an associate at LCHB. Mr. Cuthbertson is a member in good standing of the bar of the State of New York (2008) and is admitted to practice in the following federal courts: U.S. District Court, Eastern District of New York (2008); U.S. District Court, Southern District of New York (2008); U.S. District Court, District of Colorado (2013). Mr. Cuthbertson graduated from Fordham University School of Law in 2007, and graduated *summa cum laude* from Bowdoin College in 1999. Mr. Cuthbertson has played an active role in several of LCHB's TCPA cases listed in paragraph three above. In 2013 and 2014, he was recognized as a Rising star for the New York Metro in Super Lawyers.

9. Staff of the firm who assisted in litigating this action include the following: senior paralegal <u>Jennifer Rudnick</u>, a 2003 graduate of Syracuse University; senior paralegal <u>Yun Swenson</u>, a 2003 graduate of Cornell Law School and a 1998 graduate of University of California, Berkeley; senior paralegal <u>Gregory Waskiewicz</u>, former LCHB paralegal <u>Lionel Lints</u>; litigation support manager <u>Kirti Dugar</u>; and litigation support staff who manage our document and call record databases <u>Scott Hedrick</u>, and <u>Cyrus Yamat</u>.

### III. LCHB's Billing Rates

10. The following table lists the LCHB attorneys and professional personnel and their current hourly rates. The hourly rate shown for any attorney or paralegal who: (a) is no longer employed with LCHB or (b) has been promoted, reflects the last rate that applied at the time of their employment in that position.

| Name and Position | Rate |
|---|---|
| Jonathan D. Selbin<br>Partner at LCHB<br>Harvard Law School, 1993 | $775 |
| Daniel M. Hutchinson<br>Partner at LCHB<br>Boalt Hall School of Law, 2005<br>University of California, Berkeley, 2005 | $550 |
| Douglas Cuthbertson<br>Associate at LCHB<br>Fordham University School of Law, 2007<br>Bowdoin College, 1999 | $465 |

| Name and Position | Rate |
|---|---|
| Nicole D. Sugnet<br>Associate at LCHB<br>University of California,<br>Hastings College of the Law, 2006<br>Lewis & Clark College, 2000 | $435 |
| Kirti Dugar<br>Litigation Support Manager | $410 |
| Scott Hedrick<br>Litigation Support Staff | $385 |
| Cyrus Yamat<br>Litigation Support Staff | $320 |
| Jennifer Rudnick<br>Senior Paralegal at LCHB<br>Syracuse University, 2003 | $305 |
| Yun Swenson<br>Senior Paralegal at LCHB<br>Cornell Law School, 2003<br>University of California, Berkeley, 1998 | $305 |
| Gregory Waskiewicz<br>Senior Paralegal at LCHB | $305 |
| Lionel Lints<br>Former Paralegal at LCHB | $275 |

11. LCHB sets its rates for attorneys and staff members based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in similar matters; and the experience, reputation and ability of the attorneys and staff members.

12. These rates are my firm's current commercial billing rates and are supported by our extensive and specialized experience in these types of cases and recognized expertise. LCHB's rates reflect the market rates in the markets within which LCHB's primary offices are located and from which this matter has been handled: San Francisco and New York. LCHB's hourly rates were negotiated with and are paid on an hourly basis by a sophisticated commercial entity, BlackRock (f/k/a Merrill Lynch Mutual Funds) and Charles Schwab & Co., Inc. LCHB does not bill at different rates for different clients or different types of cases.

13. A sample of courts that have expressly approved LCHB's standard billing rates

and attorneys' fees as reasonable are:

      a.    *In re Ocwen Federal Bank FSB Mortgage Serv. Litig.*, No. 04-C-2714, Dkt. No. 476 (N.D. Ill. July 1, 2011) (awarding requested attorneys' fees);

      b.    *Yarger v. Capital One, N.A.,* No. 11-154, Dkt. No. 259 (D. Del. Oct. 7, 2014) (awarding requested attorneys' fees);

      c.    *Steinfeld v. Discover Financial Services, et al.*, No. 3:12-cv-01118-JSW, Dkt. No. 98 (N.D. Cal. Mar. 31, 2014) ("Class counsel have submitted declarations that show the hourly rates that they have requested are reasonable and have provided the Court with information about other cases that approved their rates.");

      d.    *Nwabueze v. AT&T Inc.,* No. C 09-01529 SI, 2014 U.S. Dist. LEXIS 11766, at *8 (N.D. Cal. Jan. 29, 2014) ("[T]he Court also finds that the rates requested are within the range of reasonable hourly rates for contingency litigation approved in this District.");

      e.    *Ross v. Trex Co., Inc.*, No. 09-cv-00670-JSW (N.D. Cal. Dec. 16, 2013) (awarding requested attorneys' fees);

      f.    *Walsh v. Kindred Healthcare,* No. C 11-00050 JSW, 2013 U.S. Dist. LEXIS 176319, at *9 (N.D. Cal. Dec. 16, 2013) ("The Court concludes Plaintiffs have shown that the requested rates are reasonable");

      g.    *Moore v. Verizon Communs., Inc.*, No. 09-1823 SBA (JSC), 2013 U.S. Dist. LEXIS 170027, at *28 (N.D. Cal. Nov. 27, 2013) ("The Court concludes that the hourly rates for the attorneys who billed time on this case are reasonable given the geographic location and experience of counsel.");

      h.    *In re: Imprelis Herbicide Mktg., Sales Practices and Prods. Liability Litig.*, No. 11-md-02284, Dkt. No. 244 (E.D. Pa. Oct. 17, 2013) (awarding requested attorneys' fees);

      i.    *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 149692, at *1 (N.D. Cal. Jan. 14, 2013) (awarding requested attorneys' fees);

      j.    *In re AXA Rosenberg Investor Litigation,* No. 11-00536-JSW (N.D. Cal.

April 2, 2012) ("The Court has also reviewed Lead Counsel's hourly rates and concludes that these rates are appropriate for attorneys in this locality of Lead Counsel's skills and experience.");

      k.    *Vedachalam v. Tata Consultancy Services, Ltd.*, No. C-06-0963-CW (N.D. Cal. July 18, 2013) (Wilken, J.) ("Class Counsel's hourly rates are reasonable in light of their experience (as reflected in their declarations and the declarations of their peers in the field of class action litigation), and the rates charged are comparable to other attorneys in this field.");

      l.    *Wehlage, et al. v. Evergreen at Arvin, LLP*, et al., No. 4:10-cv-058390-CW (N.D. Cal. Oct. 4, 2012) (Wilken, J.) ("[T]he billing rates used by Class Counsel to calculate their lodestar are reasonable and in line with prevailing rates in this District for personnel of comparable experience.");

      m.    *Arthur, et al. v. Sallie Mae, Inc.*, No. C10-0198 JLR, Dkt. No. 265 (W.D. Wash. Sept. 17, 2012) (awarding requested attorneys' fees);

      n.    *Holloway v. Best Buy Co., Inc.*, No. C-05-5056 PJH (MEJ) (N.D. Cal. Nov. 9, 2011) (Hamilton, J.) ("The rates used by Class Counsel are reasonable.");

      o.    *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio Mar. 31, 2010) ("Class Counsel consists of experienced attorneys with expertise specific to complex class actions on a national scale. [] With this in mind, although the rates listed above are high compared to the average attorney, based on this Court's knowledge of attorneys' fees in complex civil litigation and multi-district litigation, the requested rates are reasonable for this case considering the experience and expertise these particular lawyers have in this particular area of law.");

      p.    *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 144437, at *10 (N.D. Cal. Mar. 5, 2010) (Chesney, J.) ("The Court further finds that Plaintiff's Counsels' hourly rates are reasonable for their skill and the work they performed.");

      q.    *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. Civ.A. 99-20593, MDL No. 1203, 2003 WL 21641958, at *9 (E.D. Pa. May 15,

2003);

    r. *Higazi v. Cadence Design Systems, Inc.*, No. 07-2813-JW (N.D. Cal. July 7, 2008);

    s. *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP (N.D. Cal. Feb. 28, 2008) (Docket No. 177) (Order Granting Application for Attorneys' Fees and Costs, at 5) (Patel, J.) ("The Court has reviewed the hourly rates used by Class Counsel in calculating their lodestar fees and concludes that these rates are appropriate for attorneys in this locality of Class Counsel's skill and experience.");

    t. *Fleming v. Kemper Nat. Services, Inc.*, 373 F. Supp. 2d 1000, 1012 (N.D. Cal. 2005);

    u. *Chaid v. Glickman*, No. C98-1004-WHO (JCS), 1999 WL 33292940, at *6 (N.D. Cal. Nov. 17, 1999).

**IV. Work Preformed and Lodestar**

  14. To provide the Court with an overview of the work done by LCHB in this case, without repeating what is contained in our time records themselves, I divide my firm's work into specific phases that track the progress of the litigation from our initial investigation through settlement below.

  15. In total, LCHB spent **945.60** hours on the below efforts, resulting in a total lodestar of **$466,134.00**, and an overall blended billing rate (lodestar divided by total hours) of **$492.95** per hour.

  **B. Initial Case Investigation, Filing the *Mills* Action, and Continuing Case Management**

  16. LCHB thoroughly investigated the claims at issue prior to filing the *Mills v. HSBC* action in the Northern District of California on July 30, 2012, Case No. 12-cv-04010-JST, which was voluntarily dismissed so that Plaintiff Mills could be added to the above-entitled action and so that the parties had sufficient time to negotiate a settlement. Specifically, LCHB thoroughly researched HSBC's practices and the legal claims prior to filing suit by, among other

things, conducting extensive factual and legal research into the merits of the TCPA claims, discussing the facts with our clients, interviewing several Class Members, reviewing Class Members' pertinent document and information including credit applications and recorded messages from HSBC's prerecorded/automated calls, and conducting research on the Defendant including whether Defendant had been investigated for any prior TCPA violations. This information was critical to Class Counsel's understanding of the nature of the problem, the scope of potential damages and remedies, and the potential risks and benefits of continued litigation.

17. LCHB also participated in several case management conferences with the court in the *Mills* action and managed the *Mills* action for nearly two years prior to filing this action.

18. In addition, LCHB continuously kept in contact with the Plaintiffs and various Class Members regarding the status of the case and investigative factual matters.

19. LCHB's investigative efforts did not end with the filing of the *Mills* action. LCHB continued to interview Class Members throughout the course of the litigation, discussed joint prosecution of the action with counsel for the above-entitled action, and assisted in drafting the First Amended Complaint adding Plaintiff Mills to this action.

20. In total, LCHB spent **164.50** hours on the above efforts.

C. **Discovery**

21. In the context of the *Mills* action, LCHB drafted and served requests for production of documents and interrogatories on January 25, 2013. This classwide discovery sought the following information: (1) HSBC's policies and practices for making autodialed and/or prerecorded calls to cell phones, including how HSBC obtains consent to make such calls; (2) call data that would reflect the identities of persons to whom HSBC made autodialed and/or prerecorded calls to cell phones; (3) data showing whether HSBC obtained consent to make the calls to cell phones; and (4) information sought to discern whether HSBC "knowingly" or "willfully" violated the TCPA. HSBC initially objected to all of the discovery sought. LCHB thereafter drafted several meet and confer letters and engaged in several meet and confer calls with HSBC over the course of many months.

22. When the parties came to an impasse, LCHB drafted Plaintiff Mills's portions of the discovery dispute letter, the process used in the Northern District of California to compel discovery. LCHB filed the letter on June 6, 2013. Rather than issue an order on the letter, Magistrate Judge Joseph P. Spero required lead counsel for the parties to meet and confer in person in his chambers to resolve their disputes. LCHB spent a half-day meeting and conferring with HSBC in court, eventually resolving the disputes.

23. Following this lengthy process, HSBC served supplemental responses to interrogatories and produced thousands of pages of documents on a rolling basis, which LCHB attorneys reviewed.

24. Discovery efforts were complicated by the fact that, as of May 1, 2012, HSBC's credit card portfolio, along with the underlying infrastructure, was sold to non-party Capital One Financial Corporation ("Capital One"). Because HSBC did not possess data and documents (or even, in some cases, employees) that resided with Capital One, LCHB's attorneys were forced to continuously follow up with HSBC's attorneys through subsequent meet and confer letters and phone calls to ensure that HSBC produced *all* responsive documents and call record data. These follow up meet and confer efforts continued for many more months, up to and continuing after the dismissal of the *Mills* action and Plaintiff Mills's joinder in the above-entitled action.

25. On November 15, 2013, LCHB drafted and served interrogatories aimed at confirming the number of Class Members and determining the number of Class Members for whom HSBC possesses contact information. Just prior to the parties' January 14, 2014 mediation, HSBC provided call data showing the number of unique cell phone numbers HSBC called during the class period. LCHB and co-counsel hired and worked with an expert to analyze the call record data and to cross-check HSBC's representations regarding the number of Class Members. LCHB's co-counsel, Meyer Wilson, took the lead on a confirmatory 30(b)(6) deposition on June 3, 2014 regarding HSBC's call data and the class size.

26. LCHB also took the lead in revising and meeting and conferring regarding HSBC's proposed protective order and a proposed order regarding Electronically Stored Information.

27. In total, LCHB spent **217.3** hours on the above efforts.

### D. Motions Practice

28. LCHB spent time and effort engaging in motion practice in the *Mills* action. For example, upon reviewing HSBC's multiple affirmative defenses set forth in its answer, LCHB researched the law on affirmative defenses, drafted a meet and confer letter asking HSBC to withdraw some of their affirmative defenses, and met and conferred via telephone with HSBC's counsel on this issue. When HSBC initially refused to withdraw its affirmative defenses, LCHB drafted a motion to strike the affirmative defenses. Prior to filing the motion to strike, however, HSBC filed an amended answer which alleged more facts in support of its affirmative defenses. In light of this, the motion to strike was not filed.

29. In addition, prior to dismissing the *Mills* action, LCHB drafted a motion for class certification. After having granted the parties' first request for an extension of time on the class certification briefing deadline pending HSBC's production of outstanding discovery, including critical call record data, the *Mills* court had warned the parties that it was unlikely to grant any further extensions of time of the then-pending March 14, 2014 deadline. Accordingly, LCHB has already drafted a class certification motion prior to voluntarily dismissing the *Mills* action on March 6, 2014 and filing an Amended Complaint the next day in the above-entitled action adding Plaintiff Mills. The motion was not filed due to Plaintiff Mills's dismissal.

30. In total, LCHB spent **56.7** hours on the above efforts.

### E. Settlement Negotiations and Mediation

31. LCHB attorneys participated in a full-day, formal mediation session before the Honorable Edward A. Infante (Ret.) on January 14, 2014. LCHB took the lead on drafting and submitting a detailed mediation brief to Judge Infante. Prior to and following the mediation, LCHB spent considerable time discussing settlement and mediation with HSBC's counsel,

discussing the Plaintiffs' mediation strategy with co-counsel, and conducting settlement related research such as analyzing other TCPA class action settlements.

32. The parties did not come to an agreement at the mediation. Instead, LCHB and co-counsel participated in several subsequent negotiations with HSBC's counsel, as well as several follow up calls with Judge Infante. The case settlement only after the parties accepted Judge Infante's mediation proposal made on March 24, 2014.

33. In total, LCHB spent **59.1** hours on the above efforts.

### F. Drafting the Settlement Agreement and the Motion for Approval Papers

34. Following the mediation and acceptance of the mediator's proposal, LCHB, along with co-counsel, spent months negotiating and finalizing the settlement terms and drafting a settlement agreement.

35. In addition, LCHB took the lead on drafting the Motion for Preliminary Approval, the Amended Motion for Preliminary Approval, the Motion for Final Approval, and Plaintiffs' Response to Objectors to the settlement.

36. In total, LCHB spent **245.1** hours on the above efforts.

### G. Overseeing Settlement Administration

37. LCHB took the lead on obtaining bids from settlement administrators. LCHB, along with co-counsel, met and conferred with HSBC and the settlement administrator regarding the notice plan and revised the proposed forms of notices and claim form. LCHB also proposed and oversaw the administration of a "reminder" notice sent to Class Members via email, reminding them to fill out a claim form. LCHB, along with co-counsel, continues to oversee the settlement administration.

38. In addition, LCHB's paralegals have responded to hundreds of Class Member inquiries and assisted Class Members with filing claims forms.

39. In total, LCHB spent **100.6** hours on the above efforts. These efforts will continue throughout the administration of the Settlement and, based on experience in prior cases, will entail many dozens of additional hours.

### H. Drafting Motions for Attorneys' Fees

40. LCHB took the lead on drafting the Motion for Attorneys' Fees and for Service Awards to the Class Representatives. LCHB also spent time carefully reviewing time records and drafted declarations in support of counsel's motion for attorneys' fees.

41. In total, LCHB spent **102.3** hours on the above efforts.

## V. Careful Assignment of Work

42. Tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity. The work performed by associate attorneys and paralegals was work that required sufficient knowledge of legal concepts and that I or another partner would have had to perform absent such assistance. The paralegals identified were all qualified to perform substantive legal work based on their training and past experience working for attorneys, including attorneys outside of LCHB's offices. I and other Class Counsel therefore made every effort to litigate this efficiently by reducing duplication of effort and assigning work to the lowest billing timekeepers where feasible.

43. The following chart details the time each of these attorneys and the primary litigation assistants worked on this case and their contribution to LCHB's total lodestar:

| Attorney/Staff | Total Hours | % of Total Hours | Billing Rate | Lodestar |
|---|---|---|---|---|
| Jonathan D. Selbin | 116.8 | 12% | $775 | $90,520.00 |
| Daniel M. Hutchinson | 290.2 | 31% | $550 | $159,610.00 |
| Douglas Cuthbertson | 101.5 | 11% | $465 | $47,197.50 |
| Nicole D. Sugnet | 256.8 | 27% | $435 | $111,708.00 |
| Kirti Dugar | 8.0 | 1% | $410 | $3,280.00 |
| Scott Hedrick | 18.1 | 2% | $385 | $6,968.50 |
| Cyrus Yamat | 20.0 | 2% | $320 | $6,400.00 |
| Jennifer Rudnick | 77.6 | 8% | $305 | $23,668.00 |
| Yun Swenson | 6.8 | 1% | $305 | $2,074.00 |
| Gregory Waskiewicz | 8.0 | 1% | $305 | $2,440.00 |

| Lionel Lints | 18.9 | 2% | $275 | $5,197.50 |

44. In addition to time billed by the above primary billers on this litigation, several other staff persons assisted on the case when needed. Each of these staff persons individually spent five or fewer hours on the matter, for a collective total of 22.9 hours, a collective lodestar of $7,070.50, and a blended hourly rate of $308.76.

## VI. Careful Review of LCHB's Lodestar and Deletion of Duplicative Work

45. Under my supervision and guidance, Ms. Sugnet personally reviewed the time reported for all attorneys, law clerks, paralegals, and other personnel listed in the schedules set forth above. We reduced or eliminated 15.4 hours in the time reported to ensure that LCHB is not seeking reimbursement for time unnecessarily or inappropriately billed, such as time spent on clerical matters or duplicative efforts. I can therefore confidently assert that the lodestar and hours reported in this declaration are reasonable, particularly in light of our efforts and accomplishments in this litigation.

## VII. Efforts to Avoid Duplication Among Co-Counsel

46. I, along with Daniel M. Hutchinson, have worked closely with co-counsel to divide tasks, ensure efficient case management, and prevent duplication of efforts. By assigning specific tasks among firms, we were able to avoid replicating work. Only where it was necessary to have involvement from all of the firms, such as during the mediations, did such involvement occur.

## VIII. LCHB's Costs

47. LCHB maintains all books and records regarding costs expended on each case in the ordinary course of business, which books and records are prepared from expense vouchers and check records. I have reviewed the records of costs expended in this matter.

48. LCHB has incurred $20,550.52 in expenses, which includes LCHB's travel costs associated with my participation in the mediation and my and Daniel Hutchinson's participation in hearings ($13,969.41); filing fees ($305.00); other hard costs such as research on LEXIS ($2,754.33) and Federal Express, messenger, or process server charges ($1601.18); and overhead

1205501.5
- 14 -

costs such as printing, copying, postage, and telephone charges ($1,920.60). LCHB is not seeking reimbursement of these costs.

49. In addition, LCHB and co-counsel voluntarily incurred the costs of approximately $10,000 associated with sending out a reminder email to the approximately 5.8 million Class Members for whom we possessed valid email addresses reminding them to submit claims. These reminder emails were sent between October 31, 2014 and November 3, 2014—just prior to the claims deadline of November 4, 2014—and had the intended result of encouraging more Class Members to submit claims. Class Counsel is not seeking reimbursement of this cost.

## IX. Total Number of Claims

50. The total number of timely claims submitted by Class Members is 286,433. Assuming the Court awards the requested attorneys' fees and service awards, and further assuming that the total cost of settlement administration is 1.3 million, Class Counsel expect individual Class Member payments to be approximately $93 each.

I declare under penalty of perjury of the laws of Illinois and the United States that the foregoing is true and correct, and that this declaration was executed in New York, NY on November 18, 2014.

                                              */s/ Jonathan D. Selbin*
                                              Jonathan D. Selbin

# EXHIBIT A

# To be filed under seal